Douglas A. Wain, Pro Per, Elisa Wain, Pro Per
P.O. Box 7473, Westlake Village, CA 91359
douglaswain@gmail.com 859.494.3677

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

In re

Douglas Alan Wain, Elisa Wain,

      Debtors,

**CASE NO. 1:24-bk-11814-MB**

**CHAPTER 13**

**JUDGE: HON. Martin R. Barash**

**DEBTORS' OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AS TO THE PROOF OF CLAIM OF CENTRAL BANK & TRUST CO. (CLAIM NO. 19)**

**Hearing Date**: June 4, 2026
**Time:** 9:30 AM
**Courtroom:** 303
**Address:** 21041 Burbank Blvd.
Woodland Hills, CA 91367

**DEBTORS' OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AS TO THE PROOF OF CLAIM OF CENTRAL BANK & TRUST CO. (CLAIM NO. 19)**

**TABLE OF CONTENTS**

**I. INTRODUCTION** ...........................................................................................................................5
**II. THERE WAS NO DEFICIENCY ON FEBRUARY 8, 2021** ...............................................7
   A. The Math Forecloses CBT's Claim.........................................................................................8
   B. Kentucky Law Required CBT to Obtain a Separate Deficiency Judgment — Which It Never Did........................................................................................................................................9
   C. Judge Bunnell's Conditional Language Was Never Triggered .........................................11
   D. CBT's Junior-Lien-Priority Shortfall Is Not a Deficiency.................................................11
   E. KRS 382.365: Confirmation Constituted Payment to the Extent of Proceeds ..................12
**III. THE KENTUCKY CASE WAS FINALIZED ON MARCH 7, 2024** ..............................**12**
   A. The March 7, 2024 Distribution Order Is the Final Word................................................12

1

B. The Kentucky Case Has Been Closed and Final for Over Two Years ............................... 13

C. CBT Cannot Now Receive a Second Bite at the Apple in Federal Bankruptcy Court ....... 14

**IV. THERE ARE NO PRECLUSION ARGUMENTS AVAILABLE TO CBT .................. 15**

A. The Framework: 28 U.S.C. § 1738 and Harmon v. Kobrin ................................................. 15

B. Rooker-Feldman Does Not Apply .................................................................................... 15

C. Claim Preclusion (Res Judicata) Fails on Two Independent Grounds ............................. 16

D. Issue Preclusion (Collateral Estoppel) Fails Because the Issue Was Never Actually Decided
................................................................................................................................................ 17

E. The Three 2025 Kentucky Supreme Court Orders Are Void Under 11 U.S.C. § 362 ....... 17

F. CBT's Failure to Brief Kentucky Preclusion Law Is Itself Telling .................................. 18

**V. CBT'S BAD FAITH FROM THE BEGINNING OF THIS CHAPTER 13 ..................... 18**

A. CBT Filed a POC Inflated by Approximately 22% ......................................................... 18

B. CBT Included Approximately $84,000 in Interest That Judge Bunnell Expressly Denied 19

C. CBT Falsely Characterized Its Claim as "Secured" .......................................................... 21

D. CBT's Underlying 2019 Conduct Was Coercive From the Outset .................................... 21

E. CBT Charged Off the Disputed Loan Twice — In June 2019 and Again in June 2023 .... 23

F. CBT's Counsel's Persistent Non-Compliance With This Court's Orders .......................... 25

G. CBT Has Filed Zero Pages of Substantive Opposition Evidence .................................... 25

H. The Bank of America Comparison .................................................................................... 26

I. CBT's Own Public Definition of Elder Financial Abuse Condemns Its Conduct .............. 26

**VI. DEBTORS HAVE ACTED IN GOOD FAITH AND BEEN PATIENT ......................... 28**

A. Pre-Petition Good Faith ................................................................................................... 28

B. Post-Petition Good Faith ................................................................................................. 29

C. Debtors Exhausted Kentucky Remedies Before Federal Recourse .................................. 29

**VII. THIS COURT HAS THE AUTHORITY TO DISALLOW CBT'S CLAIM ............... 30**

A. Section 502(b) Mandates Independent Determination ..................................................... 30

B. Claim Determination Is Not Appellate Review ............................................................... 31

C. The Burden Has Shifted, and CBT Has Not Met It .......................................................... 32

D. Confirmation Must Be Suspended Until June 4, 2026 ..................................................... 32

**VIII. RELIEF REQUESTED ............................................................................................... 33**

**IX. CONCLUSION ............................................................................................................... 34**

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

**TABLE OF AUTHORITIES**

*CASES*

Butner v. United States, 440 U.S. 48 (1979) .................................................................. 31

Choate v. Bank of Cadiz & Trust Co., No. 2014-CA-001853-MR (Ky. App. 2015) ............... 8, 10

Commonwealth v. Duvall, 669 S.W.3d 869 (Ky. 2023) ....................................... 8, 13, 20

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) ................................... 15, 32

Harmon v. Kobrin (In re Harmon), 250 F.3d 1240 (9th Cir. 2001) .............................................. 15

Harvest Homebuilders LLC v. Commonwealth Bank & Tr. Co., 310 S.W.3d 218 (Ky. App. 2010) ............................................................................................................... 8, 10

In re Diaz, 526 B.R. 685 (Bankr. S.D. Tex. 2015) ................................................................ 31

In re Goeb, 675 F.2d 1386 (9th Cir. 1982) .......................................................................... 18

In re Gruntz, 202 F.3d 1074 (9th Cir. 2000) (en banc) ........................................................ 16, 32

In re Kalter, 292 F.3d 1350 (11th Cir. 2002) ...................................................................... 16, 32

In re Lundell, 223 F.3d 1035 (9th Cir. 2000) ....................................................................... 32

In re Schwartz, 954 F.2d 569 (9th Cir. 1992) ..................................................................... 17

Kentucky Joint Stock Land Bank v. Farmers Exch. Bank, 274 Ky. 525, 119 S.W.2d 873 (1938) 10

Kurtsinger v. Bd. of Trustees, 90 S.W.3d 454 (Ky. 2002) .................................................... 8, 20

Miller v. Admin. Office of Courts, 361 S.W.3d 867 (Ky. 2011) ............................................ 15, 17

Owens v. First Com. Bank of Prestonsburg, 706 S.W.2d 414 (Ky. App. 1985) ...................... 8, 10

Pearman v. West Point Nat'l Bank, 887 S.W.2d 366 (Ky. Ct. App. 1994) ............................. 8, 9

River Valley Real Estate, Inc. v. Shelton, 2019 Ky. App. Unpub. LEXIS 276 ........................ 8, 11

Sparks v. Trustguard Ins. Co., 389 S.W.3d 121 (Ky. Ct. App. 2012) ........................................ 13

Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 549 U.S. 443 (2007) .................................. 31

Wain v. Bunnell, No. 25-5722 (U.S. filed May 14, 2026) (petition for writ of certiorari pending) 30

Yeoman v. Commonwealth, 983 S.W.2d 459 (Ky. 1998) .............................................. 15, 17, 18

*STATUTES*

11 U.S.C. § 362 ................................................................................................................ 17

11 U.S.C. § 502 ....................................................................................... 20, 30, 31, 33, 35

11 U.S.C. § 502(b) ..................................................................................................... passim

11 U.S.C. § 502(b)(1) ................................................................................................ 31, 33

11 U.S.C. § 502(b)(2) ................................................................................................ 20, 21

11 U.S.C. § 1322 ................................................................................................................ 5

11 U.S.C. § 1324 ................................................................................................................ 5

11 U.S.C. § 1325 ..................................................................................................... 18, 24, 28

11 U.S.C. § 1325(a)(3) ............................................................................................. 18, 24, 28

28 U.S.C. § 157(b)(2)(B) ................................................................................................... 31

28 U.S.C. § 1738 .............................................................................................................. 15

42 U.S.C. § 1983 .............................................................................................................. 30

Cal. Welf. & Inst. Code § 15610.27 ................................................................................... 27

Cal. Welf. & Inst. Code § 15610.30 ................................................................................... 27

Ky. Rev. Stat. Ann. § 382.365 ..................................................................................... 12, 22

*RULES*

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

Fed. R. Bankr. P. 3001(f) ........................................................................................... 32
Fed. R. Bankr. P. 3007 ............................................................. 5, 7, 26, 32, 33, 34
Fed. R. Bankr. P. 3015 ................................................................................................. 5
Fed. R. Evid. 801(d)(2)(A) ......................................................................................... 27
Ky. R. App. P. 3(A) ................................................................................................ 8, 20

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

TO THE HONORABLE MARTIN R. BARASH, UNITED STATES BANKRUPTCY JUDGE:

## I. INTRODUCTION

Debtors Douglas Alan Wain and Elisa Wain ("Debtors"), proceeding pro se, hereby object to confirmation of any Chapter 13 plan that treats, allows, or provides for payment of the Proof of Claim filed by Central Bank & Trust Co. ("CBT") on December 20, 2024 in the amount of $357,990.91 (Claim No. 19, the "POC"). This Objection is directed solely at CBT's POC and does not address the position of the Chapter 13 Trustee or any other party in interest. This Objection is filed pursuant to 11 U.S.C. §§ 502(b), 1322, 1324, and 1325, and Federal Rule of Bankruptcy Procedure 3015.

At the March 5, 2026 hearing before this Court, the Honorable Martin R. Barash expressly authorized Debtors to file an objection to confirmation of the Chapter 13 payment plan. This Objection is filed pursuant to that authorization and within the deadline set by this Court.

Debtors further note that this is not their first objection to the payment plan as it pertains to CBT's claim. On May 29, 2025, Debtors filed a 144-page objection to the payment plan with respect to creditor Central Bank & Trust Co. in Bankruptcy Case No. 1:24-bk-11814-MB, which remains on the docket of this Court and is referenced for the convenience of the Court. The present Objection supplements and updates that prior filing in light of subsequent developments in this proceeding, including this Court's March 5, 2026 directives, the briefing on Debtors' Rule 3007 Objection to Claim (Doc 38) and Motion for Summary Judgment (Doc 8), and the present posture of the adversary proceeding (Adv. No. 1:25-ap-01026-MB).

Confirmation of any plan treating CBT's POC must be denied for seven independent and cumulative reasons, each of which is fully developed in the sections that follow:

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

1. **There was no deficiency on February 8, 2021.** The foreclosure sale generated $630,003 — exceeding CBT's judgment of $358,412.72 by a surplus of $271,590.28. A surplus and a deficiency cannot coexist as a matter of mathematics or Kentucky law.

2. **The Kentucky case was finalized on March 7, 2024.** Judge Kimberly N. Bunnell entered a final, appealable Distribution Order on that date — "GRANTED IN PART AND DENIED IN PART" — awarding CBT $66,884.60 from "remaining sale proceeds." CBT did not appeal. The Kentucky case has been closed and final for over two years.

3. **There are no preclusion arguments available to CBT.** Rooker-Feldman, res judicata, and collateral estoppel each fail. The Kentucky Court of Appeals expressly disclaimed any merits ruling on September 23, 2024, and all three Kentucky Supreme Court orders CBT may attempt to invoke were entered post-petition while the automatic stay under 11 U.S.C. § 362 was in force.

4. **CBT has acted in bad faith from the inception of this Chapter 13.** CBT filed a POC inflated by approximately 22% above any theoretical maximum, included approximately $84,000 in interest that Judge Bunnell expressly denied on August 25, 2023, falsely characterized its claim as "secured" when its mortgage was extinguished by the February 8, 2021 foreclosure sale, and charged off the same disputed loan twice — once in June 2019 at $363,351 and again in June 2023 at $420,131 — at progressively higher inflated balances.

5. **Debtors have acted in good faith and with patience throughout.** Debtors have made every Chapter 13 payment for over nineteen months, paid every court-ordered sanction within one week, filed over 1,100 pages of documentary evidence, repeatedly invited

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

cooperation, and exhausted every Kentucky judicial and administrative remedy before seeking relief in this Court.

6. **This Court has independent statutory authority to disallow CBT's claim.** Section 502(b) directs that this Court "shall determine" the amount of any claim. That is mandatory, not permissive. This Court's claim-allowance function is not appellate review of any state-court judgment — it is an independent federal bankruptcy function expressly preserved by Congress.

7. **Confirmation is procedurally premature.** Debtors' Rule 3007 Objection to Claim (Doc 38, BK Case) and the Sixth Claim for Relief in the adversary proceeding (AP No. 1:25-ap-01026-MB) are both set for hearing before this Court on June 4, 2026. Confirmation of any plan treating CBT's POC before that ruling would render those proceedings meaningless and create an irreconcilable conflict with any subsequent claim disallowance.

For each of these reasons — and for the cumulative weight of all seven — Debtors respectfully request that this Court deny confirmation of any plan that treats, allows, or provides for payment of CBT's POC, and instead disallow CBT's POC in full or, at minimum, suspend confirmation as to CBT's claim until the pending Rule 3007 Objection and adversary proceeding are adjudicated.

## II. THERE WAS NO DEFICIENCY ON FEBRUARY 8, 2021

At the January 30, 2026 hearing, this Court expressed several preliminary observations regarding the nature of the January 20, 2021 order and the status of CBT's claim. Debtors respectfully submit that each observation, while understandable given the framing CBT has supplied, is contradicted by controlling Kentucky authority. The summary below identifies each

preliminary view, the Kentucky-law answer, and the controlling authority that establishes that answer; Sections II.A through II.E develop each point in detail.

| Court's Preliminary View | Kentucky Law Says | Controlling Authority |
|---|---|---|
| 1/20/21 Order is a deficiency judgment | A deficiency cannot be calculated before the sale; the sale price was unknown on 1/20/21. A deficiency order must be entered after the sale. | Pearman, 887 S.W.2d at 368; River Valley Real Estate, Inc. v. Shelton, 2019 Ky. App. Unpub. LEXIS 276 |
| In personam judgment survived the sale | Sale price exceeded judgment = debt satisfied. Any in personam remedy required a separate post-sale motion for deficiency judgment, which CBT never filed. | Owens, 706 S.W.2d at 415; Harvest Homebuilders, 310 S.W.3d at 221 |
| Two orders together = deficiency process | Kentucky uses ONE post-sale motion for a deficiency judgment, not a two-order process assembled from unrelated orders years apart. | Owens, 706 S.W.2d at 415; Choate, No. 2014-CA-001853-MR |
| No surplus once U.S. Bank's lien is considered | Deficiency = sale price < debt of the creditor in question. Lien priority is a distribution issue, not a deficiency issue. The sale price of $630,003 exceeded CBT's $358,412.72 judgment. | Pearman, 887 S.W.2d at 368 |
| 3/7/24 Distribution Order does not supersede 1/20/21 Judgment | Debtors do not contend supersession; they contend satisfaction. Failure to appeal a "final and appealable" order constitutes acquiescence and forfeiture of post-judgment remedies. | Commonwealth v. Duvall, 669 S.W.3d at 876; Kurtsinger, 90 S.W.3d 454; Ky. R. App. P. 3(A) |

CBT has not cited, and cannot cite, a single Kentucky case establishing that (1) a pre-sale foreclosure judgment is itself a deficiency judgment; (2) an in personam judgment survives when sale proceeds exceed the judgment amount; (3) Kentucky recognizes a two-order deficiency process; or (4) a junior lienholder may claim a deficiency when the sale price exceeded the lienholder's judgment. The absence of any supporting Kentucky authority is itself dispositive.

**A. The Math Forecloses CBT's Claim**

This case begins and ends with elementary arithmetic. On February 8, 2021, the property at 2711 Barbados Lane, Lexington, Kentucky was sold at judicial foreclosure for $630,003.00. CBT's January 20, 2021 in-rem foreclosure judgment was for $358,412.72. The sale therefore generated a surplus of $271,590.28 over CBT's judgment.

**Sale price:**        **$630,003.00**

**CBT's judgment:**      **$358,412.72**

**SURPLUS:**          **$271,590.28**

A surplus and a deficiency cannot coexist. This is not a legal proposition that requires citation; it is a mathematical impossibility. Under Kentucky law, a deficiency arises only when net sale proceeds are insufficient to extinguish the mortgage debt. See Pearman v. West Point Nat'l Bank, 887 S.W.2d 366, 368 (Ky. Ct. App. 1994). Here, the proceeds exceeded the debt by more than 75% of the judgment amount.

CBT actually received $66,884.60 from the sale proceeds and $4,185.00 from garnishments of Mrs. Wain's wages between May and August 2021, for a total of $71,069.60. That CBT received less than the full judgment is a function of lien priority — U.S. Bank, the senior lienholder, was paid $538,150.82 first — not a function of any deficiency in the sale itself. As more fully addressed in Section II.D below, CBT's voluntarily-accepted junior lien position cannot be retroactively converted into a deficiency claim against Debtors.

**B. Kentucky Law Required CBT to Obtain a Separate Deficiency Judgment — Which It Never Did**

Kentucky judicial foreclosure operates on a two-judgment model:

1. The foreclosure judgment authorizes the sale and establishes the in-rem amount owed for sale purposes; and

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

2.  The deficiency judgment, if pursued, determines what (if anything) remains owed AFTER the sale by separate post-sale motion.

The January 20, 2021 judgment was a pre-sale debt determination. By definition, no deficiency judgment can exist before the sale occurs, because the existence and amount of any deficiency cannot be known until the sale concludes. After the February 8, 2021 sale generated surplus proceeds, CBT never filed a motion for deficiency judgment — because no deficiency existed.

Kentucky law has recognized this two-stage process for nearly ninety years. See Kentucky Joint Stock Land Bank v. Farmers Exch. Bank, 274 Ky. 525, 119 S.W.2d 873 (1938). The Kentucky Court of Appeals has affirmed it in Owens v. First Com. Bank of Prestonsburg, 706 S.W.2d 414 (Ky. App. 1985) — a case cited by CBT itself, in which the bank "filed a motion for deficiency judgment" after the foreclosure sale and judgment was "entered accordingly." Owens is CBT's own authority and it reflects the standard Kentucky two-stage process: a separate post-sale motion for deficiency judgment is the means by which Kentucky courts adjudicate any deficiency claim. CBT never filed one.

Harvest Homebuilders LLC v. Commonwealth Bank & Tr. Co., 310 S.W.3d 218, 219 (Ky. App. 2010), uses the word "necessity" to describe the requirement of obtaining a deficiency judgment when sale proceeds fail to satisfy the outstanding judgment. Choate v. Bank of Cadiz & Trust Co., No. 2014-CA-001853-MR (Ky. App. 2015), describes a deficiency judgment as a "legal fiction created to aid the parties in the enforcement of a judgment" — a fiction that does not exist automatically; it must be judicially created. CBT never created this legal fiction. There is no Kentucky deficiency judgment for this Court to enforce, defer to, or treat as preclusive. There is, in fact, nothing.

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

The Kentucky Court of Appeals stated this rule unequivocally in River Valley Real Estate, Inc. v. Shelton, 2019 Ky. App. Unpub. LEXIS 276: "[A]n order for deficiency must be entered after the sale." (Emphasis added.) The January 20, 2021 order was entered nineteen days before the February 8, 2021 foreclosure sale. It therefore cannot, as a matter of Kentucky law, constitute a deficiency judgment. No one on January 20, 2021 knew the property would sell for $630,003. No deficiency could be calculated. No deficiency judgment could be entered.

**C. Judge Bunnell's Conditional Language Was Never Triggered**

The January 20, 2021 foreclosure order itself confirms that no deficiency exists. It contains conditional language tying any deficiency liability to a specific contingency:

*"In the event the Property sells for less than the Judgment Amounts awarded to Central Bank herein, after payment of court costs, and fees, expenses, and costs of sales, the Defendants, Douglas A. Wain And Elisa Wain, shall jointly and severally [be] liable [to] Central Bank for any deficiency amount(s) which may remain after the sale of the Property and application of the net sale proceeds due to Central Bank."*

The condition was never satisfied. The property sold for $630,003 — $271,590 more than the judgment, not less. The contingent right that the order created "in the event" of a shortfall never came into existence because the antecedent event never occurred. CBT cannot now claim entitlement under a conditional clause whose condition was never met.

**D. CBT's Junior-Lien-Priority Shortfall Is Not a Deficiency**

Anticipating CBT's likely argument: CBT will assert that its judgment was $358,412.72, that it received only $66,884.60 from the Distribution Order, and that the resulting $291,528.12 "shortfall" constitutes a deficiency. This argument conflates two distinct legal concepts.

**Deficiency** (foreclosure law) arises when total *sale proceeds* are insufficient to pay the debt. The total sale proceeds here were $630,003. The debt was $358,412.72. The proceeds exceeded the debt by $271,590. No deficiency arose under Kentucky law.

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

**Lien-priority distribution shortfall** (secured-transactions law) arises when a junior lienholder receives less than its full claim because a senior lienholder is paid first. That is what occurred here: U.S. Bank, the senior lienholder, was paid $538,150.82 from the sale; CBT, the junior lienholder, received the remainder, $66,884.60. CBT accepted the junior lien position when it made a second-mortgage loan in 2006. That is its problem, not Debtors'.

If CBT's logic were correct, every junior lienholder in every Kentucky foreclosure would be entitled to a deficiency judgment regardless of sale price — even when the property sold for ten times the judgment. That is not the law, and Kentucky has never recognized such a rule. The in-personam component of the January 2021 judgment was satisfied by the foreclosure sale. CBT's only remedy for any perceived shortfall was a post-sale motion for deficiency judgment in Kentucky court. CBT never filed one. The in-personam judgment did not survive — it was satisfied.

**E. KRS 382.365: Confirmation Constituted Payment to the Extent of Proceeds**

Under KRS 382.365, confirmation of a foreclosure sale constitutes payment to the extent of the proceeds received. The sale here was confirmed by Judge Bunnell's March 12, 2021 Order of Sale Confirmation and Deed Transfer. As of that date, under Kentucky statute, CBT was paid to the extent of the proceeds — proceeds that exceeded its judgment. The debt is satisfied as a matter of Kentucky statutory law, regardless of the lien-priority distribution.

**III. THE KENTUCKY CASE WAS FINALIZED ON MARCH 7, 2024**

**A. The March 7, 2024 Distribution Order Is the Final Word**

On March 7, 2024, Judge Bunnell entered a five-page Distribution Order that finally resolved the foreclosure proceeding. The Order's operative language is dispositive of CBT's claim:

> *"IT IS FURTHER ORDERED that Central Bank's Motion for Distribution is GRANTED IN PART AND DENIED IN PART. The Motion is granted to the extent that the remainder of the sale proceeds shall be distributed as set forth herein. The Motion is otherwise denied."*

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

*"IT IS FURTHER ORDERED that after the distribution of the sales proceeds to U.S. Bank as set forth herein, the remaining sale proceeds of $66,884.60 shall be distributed to Central Bank on its second mortgage lien as adjudicated in the Partial Summary Judgment on the Pleadings, and Order of Sale."*

*"There being no just cause for delay, this is a final and appealable matter."*

Three findings follow from the four corners of this Order:

1. The phrase "remaining sale proceeds" is standard **surplus language** in Kentucky foreclosure practice. When a foreclosure generates surplus, the remainder after senior lienholders is distributed to junior lienholders from the surplus. The Kentucky court characterized the funds it awarded to CBT as "remaining sale proceeds" — that is, surplus. CBT received surplus, not deficiency.

2. **CBT's Motion was "GRANTED IN PART AND DENIED IN PART."** By the plain meaning of those words, CBT asked for more than $66,884.60 — and the Kentucky court denied the excess. Whatever CBT now claims it was entitled to, the Kentucky court of competent jurisdiction expressly rejected it. Applying CBT's own authority, Sparks v. Trustguard Ins. Co., 389 S.W.3d 121, 124 (Ky. Ct. App. 2012) ("In the absence of specific reasons, it is presumed that [the trial] court considered and rejected each of the opposing arguments offered in opposition."), this Court must presume that Judge Bunnell considered and rejected CBT's request for additional funds. CBT's own authority defeats CBT's claim.

3. **The Order was "final and appealable." CBT did not appeal.** Under Kentucky law, "[a] party's failure to appeal from an adverse ruling constitutes a waiver of that issue." Commonwealth v. Duvall, 669 S.W.3d 869, 876 (Ky. 2023). CBT's silence is acquiescence and waiver. CBT cannot now resurrect, in this federal bankruptcy proceeding, claims it abandoned in Kentucky in March 2024.

**B. The Kentucky Case Has Been Closed and Final for Over Two Years**

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

March 7, 2024 is also the date the Kentucky foreclosure case was closed. It remains closed. CBT had every opportunity in the three years between the February 8, 2021 sale and the March 7, 2024 Distribution Order to file a motion for deficiency judgment, to seek additional relief, or to appeal any adverse ruling. CBT did none of those things. Instead, CBT abandoned the Kentucky court system — twice — by failing to pursue distribution for over two years and then failing to appeal the partial denial of its Distribution Motion.

Judge Bunnell herself, on the record at the August 25, 2023 hearing, criticized CBT's protracted delay:

> *"I know but nobody did anything. I mean no one. I mean, all you had to do come to Court and go, two years ago, and say 'hey' let's make them do that, just do what you're doing right now…. And so had that happened then I could have been like oh yea like they deserve their fee, equity says you got to get your interest. But that's not what happened."*

At the conclusion of the August 25, 2023 hearing, counsel for U.S. Bank summarized the ruling on the record: "And so, your honor, just to clarify, the order would be granting my motion for summary judgment, granting his motion to distribute the funds, not the interest part." Judge Bunnell confirmed: "Correct." CBT's interest claim was expressly denied on the record. CBT did not appeal that denial either.

**C. CBT Cannot Now Receive a Second Bite at the Apple in Federal Bankruptcy Court**

What CBT seeks here is impermissible: to take the Kentucky court's denial of its interest motion, the Kentucky court's partial denial of its Distribution Motion, and CBT's own failure to appeal either ruling — and re-litigate all of it in federal bankruptcy court two years later by filing an inflated POC. The bankruptcy claim-allowance process is not a vehicle for state-court losers (or, more precisely, state-court ignorers) to escape final state-court rulings they chose not to appeal. The case ended in Kentucky on March 7, 2024. CBT must live with that.

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

## IV. THERE ARE NO PRECLUSION ARGUMENTS AVAILABLE TO CBT

### A. The Framework: 28 U.S.C. § 1738 and Harmon v. Kobrin

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state-court judgment in a subsequent federal bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued — here, Kentucky. The Ninth Circuit confirmed this rule in Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). This Court itself cited Harmon in its November 18, 2025 Tentative Ruling. Kentucky preclusion law accordingly governs.

Under Kentucky law, claim preclusion (res judicata) requires (1) identity of parties; (2) identity of causes of action under a transactional test; and (3) a prior action resolved on the merits. Yeoman v. Commonwealth, 983 S.W.2d 459, 464–65 (Ky. 1998). Issue preclusion (collateral estoppel) requires, among other elements, that the issue have been "actually litigated" and "actually decided." Miller v. Admin. Office of Courts, 361 S.W.3d 867, 872 (Ky. 2011). CBT cannot satisfy either standard.

### B. Rooker-Feldman Does Not Apply

The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Supreme Court in Exxon Mobil expressly narrowed the doctrine and emphasized it "does not otherwise override or supplant preclusion doctrine . . . ."

Debtors do not ask this Court to review or reject any Kentucky judgment. Debtors ask this Court to recognize that the only Kentucky judgment that exists — the January 20, 2021 in-rem foreclosure judgment — has been satisfied by surplus sale proceeds and a final, unappealed Distribution Order. The Ninth Circuit en banc has held that "[t]he Rooker-Feldman doctrine does

not preclude a bankruptcy court from exercising jurisdiction over a proceeding which is related to, but not a direct attack on, a state-court judgment." In re Gruntz, 202 F.3d 1074, 1079 (9th Cir. 2000) (en banc). The Eleventh Circuit reached the same conclusion in In re Kalter, 292 F.3d 1350, 1357 (11th Cir. 2002), holding that bankruptcy claim-allowance determinations do not implicate the Rooker-Feldman doctrine.

There is also a more fundamental defect in any Rooker-Feldman argument: the doctrine presupposes the existence of a state-court judgment to protect. There is no Kentucky deficiency judgment to protect, because none was ever entered. A doctrine designed to prevent federal courts from reviewing state-court judgments has no application where there is no judgment to review.

**C. Claim Preclusion (Res Judicata) Fails on Two Independent Grounds**

First, identity of causes of action is absent. A Kentucky judicial foreclosure proceeding is not the same cause of action as a federal § 502(b) claim determination. Different forums, different statutory authority, different remedies, different elements, different evidence. The Kentucky case sought to enforce a mortgage lien and obtain an order of sale; the bankruptcy case requires this Court to determine the allowed amount of CBT's claim as of the petition date. These are categorically different proceedings.

Second, temporal impossibility. Debtors could not possibly have litigated the surplus argument in the January 20, 2021 foreclosure proceeding because the sale did not occur until February 8, 2021. The "could have been litigated" prong of Kentucky's transactional test applies only to claims that existed at the time of the prior action. A defense based on the post-judgment occurrence of a sale could not have been raised pre-judgment.

Debtors are not relitigating the Kentucky judgment. Debtors contend the Kentucky judgment has been satisfied — a post-judgment event that could not have been adjudicated in the pre-judgment proceedings.

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

**D. Issue Preclusion (Collateral Estoppel) Fails Because the Issue Was Never Actually Decided**

On September 23, 2024, the Kentucky Court of Appeals issued the four-page Order that defeats any preclusion argument by its own express terms:

*"Because the Wains do not meet the prerequisites for the issuance of a writ, we need not address their claims of error. Nothing contained in this Order should be construed as a ruling on the merits of the allegations."*

This single sentence is dispositive. Issue preclusion under Kentucky law requires that the issue be "actually litigated" and "actually decided." Miller, 361 S.W.3d at 872; Yeoman, 983 S.W.2d at 465. The Kentucky Court of Appeals could not have stated more clearly that it was not deciding the issues. There can be no issue preclusion where the controlling state appellate court explicitly disclaims having decided anything on the merits.

Whatever the Kentucky Court of Appeals' November 4, 2022 opinion may have addressed regarding lien priority — and Debtors have never disputed that U.S. Bank was the senior lienholder — that opinion has been superseded by the September 23, 2024 "no merits" disclaimer. Lien priority and deficiency are different issues; the 2022 opinion did not, and could not, decide the surplus-versus-deficiency issue presented here.

**E. The Three 2025 Kentucky Supreme Court Orders Are Void Under 11 U.S.C. § 362**

If CBT attempts to rely on any of the three Kentucky Supreme Court orders entered in 2025 — 2024-SC-0500 (January 5, 2025), 2024-SC-0508-I (January 27, 2025), or 2024-SC-0500-MR (March 26, 2025) — that reliance fails as a matter of law. Debtors filed this Chapter 13 petition on October 30, 2024. All three Kentucky Supreme Court orders were entered after the petition date, while the automatic stay under 11 U.S.C. § 362 was in full force. Post-petition state court activity cannot create new preclusive effect against the bankruptcy estate; such activity is void, not merely voidable. In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992).

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

Each of the three orders, in any event, was procedural rather than merits-based. None determined the existence or amount of any deficiency. None addressed the surplus, the Distribution Order, or the conditional language of the January 2021 foreclosure order. They cannot bear the weight CBT may attempt to place on them.

**F. CBT's Failure to Brief Kentucky Preclusion Law Is Itself Telling**

On November 18, 2025, this Court entered a tentative ruling expressly noting that "Central Bank's opposition to the Motion for Summary Judgment does not brief Kentucky preclusion law" and ordered supplemental briefing. CBT had over a year — and a direct order from this Court — to identify any Kentucky preclusion authority that supported its position. CBT's supplemental brief, when it finally appeared on January 8, 2026, was five pages, contained zero exhibits, and still failed to engage with Yeoman, Miller, or the September 23, 2024 KCOA "no merits" disclaimer. If a viable preclusion argument existed, CBT would have made it. CBT's continuing inability to articulate one is itself the answer.

**V. CBT'S BAD FAITH FROM THE BEGINNING OF THIS CHAPTER 13**

Section 1325(a)(3) requires that a Chapter 13 plan be "proposed in good faith and not by any means forbidden by law." The good-faith requirement is not limited to the debtor; courts examine the totality of circumstances surrounding the proceeding, including the conduct and posture of opposing creditors. See In re Goeb, 675 F.2d 1386, 1390 (9th Cir. 1982). CBT's posture in this Chapter 13 — and the underlying conduct that produced this bankruptcy — falls profoundly short of any defensible good-faith standard.

**A. CBT Filed a POC Inflated by Approximately 22%**

CBT's POC asserts $357,990.91. Even on CBT's own (legally erroneous) theory of liability — that its judgment of $358,412.72 minus the $66,884.60 distribution leaves an alleged "deficiency" of $291,528.12 — CBT's own arithmetic produces a maximum theoretical claim of

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

$291,528.12. Yet CBT filed for $357,990.91. That is $66,462.79 above CBT's own theoretical ceiling — a 22.8% inflation of the claim:

**$357,990.91 − $291,528.12 = $66,462.79**

**$66,462.79 ÷ $291,528.12 = 22.8%**

CBT has offered no explanation for this 22.8% inflation. There is none available, because — as developed below — the inflation consists almost entirely of interest that the Kentucky court already denied.

CBT's POC itemizes the $357,990.91 claim as follows: Principal $273,899.64; Fees $145.00; Interest (calculated through December 19, 2024) $83,900.27; LR Fee $46.00. The interest component alone — $83,900.27 — accounts for over 23% of the total claim and, as developed in subsection B below, consists almost entirely of charges accruing after the March 7, 2024 satisfaction date.

The principal figure itself contains an unexplained discrepancy. Even on CBT's own theory that the judgment was unsatisfied, the remaining principal should be the original judgment of $358,412.72 minus the $66,884.60 distribution to CBT minus the $4,185.00 garnished from Mrs. Wain's wages between May and August 2021 — producing a remaining principal of $287,343.12. CBT instead claims principal of $273,899.64, a difference of $13,443.48 that CBT has never explained on the record. CBT cannot reconcile its own numbers.

**B. CBT Included Approximately $84,000 in Interest That Judge Bunnell Expressly Denied**

At the August 25, 2023 hearing in Fayette Circuit Court, CBT moved for an award of post-judgment interest on its claim. Judge Bunnell denied the motion on the record. The colloquy concluded with this exchange:

*EGAN (Shannon Egan, Counsel for U.S. Bank): "And so, your honor, just to clarify, the order would be granting my motion for summary judgment, granting his motion to distribute the funds, not the interest part."*

*THE COURT (Judge Kimberly N. Bunnell): "Correct."*

CBT did not appeal that ruling. Yet CBT's POC includes approximately $84,000 in interest that the Kentucky court of competent jurisdiction expressly denied. A creditor who knowingly includes in a federal proof of claim amounts that a state court has already denied is not a creditor proposing or supporting a plan in good faith. CBT is asking this Court to allow recovery of money a Kentucky judge already told CBT, on the record, that it could not have.

CBT's calculation of interest through December 19, 2024 creates an irreconcilable inconsistency that defeats the claim under either possible characterization of the March 7, 2024 Distribution Order. Position A: If the Distribution Order did not satisfy the judgment, CBT was required to appeal that "final and appealable" Order within 30 days under Ky. R. App. P. 3(A). CBT did not appeal. By failing to appeal a final, appealable order, CBT acquiesced to its terms — including the partial denial — under Commonwealth v. Duvall, 669 S.W.3d 869, 876 (Ky. 2023), and forfeited its rights under Kurtsinger v. Bd. of Trustees, 90 S.W.3d 454 (Ky. 2002). Position B: If the Distribution Order did satisfy the judgment, then interest stopped accruing on March 7, 2024, and the $83,900.27 in interest CBT calculated through December 19, 2024 is unrecoverable as a matter of mathematics: a satisfied judgment does not continue to accrue interest. Either position defeats the claim. CBT cannot occupy both, yet its POC tries to.

There is an independent statutory ground for partial disallowance. Debtors filed their Chapter 13 petition on October 30, 2024. CBT's POC, filed December 20, 2024, calculates interest through December 19, 2024 — nearly two months past the petition date. Section 502(b)(2) of the Bankruptcy Code provides that a claim shall be disallowed to the extent it represents "unmatured interest" as of the petition date. Even if every other argument in this Objection failed, the post-petition portion of

CBT's interest calculation must be disallowed as a matter of statutory command under 11 U.S.C. § 502(b)(2).

### C. CBT Falsely Characterized Its Claim as "Secured"

CBT's POC asserts that its claim is "secured." That assertion is false. CBT's mortgage lien on the Barbados Lane property was extinguished by the foreclosure sale on February 8, 2021, and the sale was confirmed by Judge Bunnell's Order of March 12, 2021. The deed transferred. The property no longer exists as collateral for any CBT claim.

CBT cannot have it both ways. If CBT's mortgage lien survived the foreclosure (it did not), CBT had a duty to file a secured claim and seek stay relief. If the lien was extinguished by foreclosure (it was), the claim is unsecured at best — and, as Section II demonstrates, fully satisfied at worst. CBT's own filings reflect its confusion: in some places CBT asserts security; in others, including the credit-bureau reporting that resulted in three confidential FCRA settlements in summer 2023, CBT's records show the loan as charged off and unsecured. The Court is entitled to clarity, and CBT has not provided it.

### D. CBT's Underlying 2019 Conduct Was Coercive From the Outset

The genesis of this entire matter was CBT's bad faith in early 2019. When Debtors' arrearage on their Gold Equity Line of Credit was approximately $4,497 to $4,981, CBT's Special Assets officer Steve Hall sent a January 31, 2019 letter accelerating the entire principal balance of $355,982.42 and demanding payment within ten days. (Exhibit A.) Debtors acknowledged the letter promptly on February 11, 2019 (Exhibit B), and on February 19, 2019 sent a detailed three-page response with a complete 2018 payment history, offering to bring the account current and requesting confirmation that any cure payment would be applied to interest rather than principal. (Exhibit C.) Mr. Hall responded on February 22, 2019 by imposing three conditions on any reinstatement — full payment by March 15, 2019; future on-time payments; and "execution of an agreed judgment

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

between Central Bank & Trust and Douglas Wain and Elisa Wain." (Exhibit D.) Wain's, in a March 1, 2019 reply, asked for four reasonable accommodations. (Exhibit E.) The Proposed Agreed Judgment that CBT and its outside counsel at Stoll Keenon Ogden then transmitted under a seven-day signature deadline (Exhibit G) required Debtors at paragraph 2 to "admit all of the allegations of the Complaint" and to "waive any claims or defenses against Central Bank," and at paragraph 4 to confess judgment in the amount of $358,412.72 plus per-diem interest, attorneys' fees, and costs. (Exhibit F.) That was not debt collection. It was coercion.

The coercion continued through 2021. After the February 8, 2021 foreclosure sale that generated the $271,590 surplus, CBT garnished funds directly from Mrs. Wain's teacher's pay at Fayette County Public Schools in Lexington, Kentucky: $1,198.00 on May 21, 2021; $1,198.00 on June 21, 2021; $1,190.00 on July 21, 2021; and $599.00 on August 21, 2021 — a total of $4,185.00. Those garnishments were improper for multiple, independent reasons: no deficiency judgment existed to enforce (Section II.B above); the foreclosure sale had generated a $271,590 surplus, not a deficiency; and the March 12, 2021 Confirmation Order had already released Debtors as "payment in full" under Ky. Rev. Stat. Ann. § 382.365. The financial harm to Mrs. Wain was concrete and substantial: the loss of monthly income from CBT's improper garnishments contributed materially to her decision to retire early from Fayette County Public Schools, ending her teaching career prematurely. CBT's conduct caused real, tangible harm to a public-school teacher in furtherance of a debt CBT was not legally entitled to collect. Compounding the bad faith, CBT garnished Mrs. Wain's wages in summer 2021 while $605,035.42 in sale proceeds sat with the Fayette Master Commissioner awaiting distribution — funds CBT could have moved to distribute "at any time after confirmation of the sale" (Exhibit N at 6), but did not move to distribute until May 2023. A creditor acting in good faith pursues available funds before garnishing a teacher's paycheck.

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

**E. CBT Charged Off the Disputed Loan Twice — In June 2019 and Again in June 2023**

CBT's credit-bureau furnishing history reveals a further pattern of bad faith and contradiction that independently undermines the validity of the POC. CBT charged off the disputed loan not once but twice — first in June 2019, and again in June 2023, four years apart, at progressively higher inflated balances. (Exhibit Q.)

**The June 2019 first charge-off.** On June 8, 2019 — only three months after CBT's January 31, 2019 acceleration letter (Exhibit A) demanded payment of the "accelerated balance," and well before any judgment had been entered in Fayette Circuit Court — CBT flagged Debtors' Home Equity Line of Credit account at Experian as "Charge-off" with a balance of $363,351. (Exhibit Q.) That figure exceeded CBT's own January 31, 2019 acceleration figure of $355,982.42 (Exhibit A) by approximately $7,369, and exceeded the figure CBT itself confessed in the Proposed Agreed Judgment ($358,412.72; Exhibit F) by approximately $4,938 — even though no Kentucky court had yet entered any judgment, no payments had been credited that would justify a higher balance, and the only intervening event was CBT's own internal interest accrual. CBT was already inflating the balance and reporting the loan as "charged off" in mid-2019, while simultaneously prosecuting the foreclosure as a live, performing claim in Fayette Circuit Court. Those two postures are mutually exclusive.

**The June 2023 second charge-off.** Four years later — long after the February 8, 2021 sale, the August 25, 2023 hearing in which Judge Bunnell denied interest (Exhibit J), and TransUnion's April 8, 2023 deletion of the same account in its entirety (Exhibit P) — CBT once again flagged Debtors' account at Experian as "Charge-off," this time with a balance of $420,131. (Exhibit Q.) Between the two charge-offs the reported balance had grown by $56,780, even though no payments were due, no judgment had been added, and the account had purportedly already been "charged off"

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

as uncollectible four years earlier. The only mathematically possible explanation for that growth is unauthorized interest accrual on a balance that CBT itself had already declared uncollectible.

**The mathematical and legal impossibility.** A creditor cannot lawfully charge off the same loan twice. By definition, a charge-off is the act of declaring an account uncollectible and removing it from the active receivables ledger. Once an account has been charged off, the creditor has accounting-recognized that the debt is uncollectible and is required under generally accepted accounting principles to cease accruing interest as if the account were performing. CBT's pattern of charging off, continuing to accrue interest on the charged-off balance, and re-charging-off the resulting inflated figure four years later — at a balance $56,780 higher than the first charge-off — is not legitimate credit reporting. It is precisely the kind of inflated and disputed furnishing that prompted Debtors' three-bureau FCRA actions in May of 2023, all three of which resulted in confidential settlements and the eventual removal of CBT-related furnishings from Debtors' files at TransUnion (Exhibit P), Equifax, and Experian — an absence independently confirmed across all three nationwide consumer reporting agencies as of mid-June 2024. (Exhibit R.)

**The connection to the POC.** The same pattern of inflated furnishing carried directly into this bankruptcy. CBT's POC of $357,990.91 includes the same kind of unauthorized interest accrual that drove the reported Experian balance from $363,351 in June 2019 to $420,131 in June 2023 — none of which any Kentucky court has approved, and the bulk of which Judge Bunnell expressly denied on August 25, 2023 (Exhibit J). A creditor that charges off the same loan twice, that publishes three different balances on the same account in three different forums ($363,351 to Experian in 2019; $420,131 to Experian in 2023; $357,990.91 to this Court in the POC), and that does all of this on an account the creditor itself has reported as "closed" and "charged off" cannot be said to have proposed or supported any plan in good faith under 11 U.S.C. § 1325(a)(3). The Court should disallow the POC for this independent reason as well.

24

**F. CBT's Counsel's Persistent Non-Compliance With This Court's Orders**

CBT's bad faith continues into this Chapter 13 through the conduct of its counsel, William E. Ireland, Esq., of Haight Brown & Bonesteel LLP. The pattern is documented:

1.  Mr. Ireland has failed to pay a $150 court-ordered sanction for over eleven months — from June 2025 to the present. Debtors paid their sanction within one week.

2.  Mr. Ireland filed no opposition to Debtors' Motion for Leave (Doc 30, filed February 10, 2026), forcing Debtors to file a Notice of Non-Opposition (Doc 33, February 23, 2026).

3.  Mr. Ireland failed to file the joint status report required before the March 5, 2026 hearing — on two separate occasions.

4.  Mr. Ireland failed to respond to Debtors' February 16, 2026 email requesting cooperation on the joint status report, forcing Debtors to proceed alone.

5.  Mr. Ireland failed to appear at all six plan-payment confirmation hearings in the underlying Chapter 13 case.

6.  CBT's January 23, 2026 supplemental brief carries the wrong-party header "SHEFFIELD'S STATEMENT OF GENUINE DISPUTES" — a recycled template from another case, demonstrating that CBT's counsel did not even proofread a five-page brief in a matter involving $357,990.91.

A creditor whose counsel serially ignores court orders, fails to appear at required hearings, and cannot proofread its own briefs is not a creditor proposing or supporting a plan in good faith. This conduct is not a procedural footnote — it is direct, ongoing evidence of CBT's bad-faith posture toward Debtors and toward this Court.

**G. CBT Has Filed Zero Pages of Substantive Opposition Evidence**

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

Across the life of this proceeding, CBT has filed thirteen total pages of briefs and zero exhibits. Its August 21, 2025 opposition to Debtors' Motion for Summary Judgment was eight pages with no exhibits. Its January 8, 2026 supplemental brief was five pages with no exhibits. Debtors filed over 1,100 pages of documentary evidence in support of their Motion for Summary Judgment.

More telling than what CBT has filed is what CBT has not contested. CBT does not dispute the sale price of $630,003. CBT does not dispute receiving $66,884.60 from surplus proceeds. CBT does not dispute that the March 7, 2024 Distribution Order was "GRANTED IN PART AND DENIED IN PART." CBT does not dispute the September 23, 2024 KCOA "no merits" disclaimer. CBT does not dispute Judge Bunnell's conditional "in the event" language. Under federal pleading standards, a party's failure to address material facts is admission. CBT has admitted every fact that defeats its claim.

### H. The Bank of America Comparison

In July 2025, this Court disallowed Bank of America's claim in this very Chapter 13 case for failure to appear at a single Rule 3007 hearing. CBT has missed five hearings, ignored a court-ordered sanction for nearly a year, and filed inflated and judicially-denied claims. If Bank of America's single hearing absence warranted disallowance, CBT's pattern of non-participation, non-compliance, and substantive bad faith warrants the same — and more.

### I. CBT's Own Public Definition of Elder Financial Abuse Condemns Its Conduct

CBT has continuously published on its public website, since June 14, 2019, an article titled "Protecting the Elderly From Financial Abuse." (Exhibit T.) That article — which remains on CBT's website as of the date of this filing, with a footer copyright reading "©2026 Central Bancshares" — defines elder financial abuse to include the "use of undue influence to gain control of an older person's money or property," and lists the following warnings, among others, that CBT directs to seniors:

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

1. "Never rush into a financial decision. Ask for details in writing and get a second opinion.";

2. "Consult with a financial advisor or attorney before signing any document you don't understand."; and

3. "You have the right not to be threatened or intimidated."

CBT's own published definitions are admissions against interest under Federal Rule of Evidence 801(d)(2)(A). The conduct CBT publicly condemns is the conduct CBT engaged in against Debtors:

1. CBT, through its Special Assets officer Steve Hall and its outside counsel at Stoll Keenon Ogden, transmitted the Proposed Agreed Judgment to Debtors with a seven-day signature deadline (Exhibits F and G) — exactly the rushed financial decision CBT now warns seniors to avoid.

2. CBT conditioned reinstatement on Debtors' execution of an Agreed Judgment without independent counsel — exactly the unconsulted document execution CBT now warns seniors to refuse.

3. CBT used the threat of accelerated foreclosure of Debtors' principal residence and the in-personam liability of $358,412.72 to extract Debtors' waiver of "any claims or defenses against Central Bank" (Exhibit F, paragraph 2) — exactly the threats and intimidation CBT now tells seniors they have a right to refuse.

The temporal connection between CBT's conduct and Debtors' EADACPA cause of action is direct. While CBT's coercion began in early 2019, CBT's enforcement of the Agreed Judgment, its filing of the inflated POC on December 20, 2024, and its ongoing prosecution of this matter all post-date Mr. Wain's 65th birthday on May 4, 2023, the date on which Mr. Wain became a protected elder under California Welfare and Institutions Code §§ 15610.27 and 15610.30. Mrs. Wain turned

65 on May 3, 2026 — seven days before the date of this filing — activating her own EADACPA coverage in time for the June 4, 2026 hearing. The Second Claim for Relief in the adversary proceeding (Doc 1, AP 1:25-ap-01026-MB) pleads CBT's elder financial abuse claim, and that claim is supported by the same record that supports the bad-faith analysis under § 1325(a)(3). The Court need not look beyond CBT's own publicly-published definition to recognize the record before it.

### VI. DEBTORS HAVE ACTED IN GOOD FAITH AND BEEN PATIENT

Section 1325(a)(3)'s good-faith requirement applies to debtors as well as creditors. Debtors' record is the inverse of CBT's at every turn.

**A. Pre-Petition Good Faith**

In February 2019 — before CBT accelerated and filed the foreclosure action — Debtors sent CBT a detailed letter offering to bring the account current. CBT refused. After being sued, Debtors offered again. CBT refused unless Debtors would execute an Agreed Judgment waiving all legal defenses. Debtors exercised their right to defend themselves in court — exactly as the legal system contemplates.

In May of 2023, Debtors brought claims against the three major credit bureaus under the Fair Credit Reporting Act and obtained confidential settlements with all three. The TransUnion settlement, paragraph 6, expressly named and required removal of "Central Bank and Trust #0385." By June 2024, CBT was absent from all three credit bureaus' files (Exhibit R) — independent confirmation that the underlying debt was uncollectable as a matter of credit-reporting fact.

Debtors filed this Chapter 13 on October 30, 2024 — one day before CBT's scheduled debtor's exam in Kentucky on October 31, 2024. The bankruptcy was a direct response to CBT's coercive collection campaign, not a strategic gambit. Debtors could no longer bear the financial and emotional burden of CBT's continuing pursuit of a debt the sale had already satisfied.

28

**B. Post-Petition Good Faith**

Since this Chapter 13 was filed, Debtors have made every plan payment on time for over nineteen consecutive months and paid every court-ordered sanction within one week of imposition. Debtors have filed comprehensive briefing on the issues now before the Court, including a 27-page Adversary Complaint (Doc 1, April 24, 2025); a 40-page Objection to Claim (Doc 38, April 27, 2025); a 178-page Motion for Summary Judgment with 17 exhibits (Doc 8, July 21, 2025); a 44-page Reply (August 28, 2025); a 70-page Supplemental Reply Brief addressing Rooker-Feldman, res judicata, and issue preclusion (Doc 27, January 22, 2026); a 106-page Motion for Leave to File Supplemental Brief documenting seven independent grounds for disallowance (Doc 30, February 10, 2026); and a 94-page Evidentiary Declaration rebutting the Wiseman Declaration paragraph by paragraph (Doc 32, February 23, 2026). Debtors have additionally invited cooperation repeatedly, including a February 16, 2026 email to Mr. Ireland requesting joint-status-report cooperation that went unanswered.

Debtors' record demonstrates patience, compliance, and good faith at every stage. Where CBT has filed thirteen pages and zero exhibits, Debtors have filed in excess of one thousand and one hundred pages of evidence and argument. Where CBT has missed hearings, ignored sanctions, and failed to engage in discovery, Debtors have appeared at every hearing, paid every sanction, and reached out repeatedly for cooperation that CBT has refused.

**C. Debtors Exhausted Kentucky Remedies Before Federal Recourse**

Before bringing matters before this Court, Debtors exhausted Kentucky judicial and administrative remedies. Debtors filed petitions and supplements with the Kentucky Judicial Conduct Commission in September and October 2024. Debtors pursued multiple matters in the Kentucky Court of Appeals, including 2024-CA-1090-OA (mandamus regarding Judge Bunnell's conflicts of interest), 2024-CA-0400, 2025-CA-0252-MR, and 2024-CA-0643. Debtors pursued

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

open-records requests under the Kentucky Open Records Act. The Kentucky Court of Appeals on January 29, 2026 placed all four pending matters in abeyance pending this Court's resolution — itself a recognition that this Court is the proper forum for these issues.

Debtors' exhaustion of remedies extends into the federal system. Following dismissal of Debtors' 42 U.S.C. § 1983 action against Judge Bunnell in the United States District Court for the Eastern District of Kentucky, the Sixth Circuit affirmed on February 13, 2026 on absolute judicial immunity grounds only, without reaching the merits of the constitutional claims. Mandate issued March 10, 2026. Debtors timely filed a Petition for Writ of Certiorari in the Supreme Court of the United States. Wain v. Bunnell, No. 25-5722 (filed May 14, 2026). The cert petition presents constitutional due-process questions concerning a state-court judge's adjudication of cases involving her own campaign depository bank, and is wholly independent of the bankruptcy claim-allowance issues before this Court. Debtors do not invoke the cert petition to seek review of any Kentucky judgment by this Court — Section IV.B above explains why Rooker-Feldman has no application here — and the bankruptcy arguments developed in this Objection stand on their own grounds regardless of any future action by the Supreme Court. Debtors cite the petition only as further evidence of their continued good-faith pursuit of the constitutional issues in the proper federal forum.

## VII. THIS COURT HAS THE AUTHORITY TO DISALLOW CBT'S CLAIM

### A. Section 502(b) Mandates Independent Determination

Section 502(b) provides that this Court "shall determine" the amount of any claim as of the petition date. The word "shall" is mandatory, not permissive. Congress did not direct this Court to defer to state-court calculations of pre-petition claims; Congress directed this Court to make its own independent determination, applying applicable non-bankruptcy law where appropriate. This Court is doing what Congress required when it adjudicates the validity and amount of CBT's POC.

Section 502(b)(1) provides that a claim "shall be disallowed" if it is "unenforceable against the debtor and property of the debtor under any agreement or applicable law." CBT's claim is unenforceable under Kentucky law for the reasons developed in Sections II and III: no deficiency exists, no deficiency judgment was obtained, the conditional language was never triggered, the in-personam component of the foreclosure judgment was satisfied by the sale, and the Kentucky court issued a final, unappealed Distribution Order "GRANTED IN PART AND DENIED IN PART."

This Court's exclusive jurisdiction over claim allowance is confirmed by 28 U.S.C. § 157(b)(2)(B), which designates "allowance or disallowance of claims against the estate" as a core proceeding. The Supreme Court's foundational decision in Butner v. United States, 440 U.S. 48, 55 (1979), holds that "[p]roperty interests are created and defined by state law" — and accordingly, creditors' entitlements in bankruptcy arise from underlying substantive state law. Here, Kentucky law defines CBT's rights, and Kentucky law does not support CBT's claimed entitlement to any deficiency. The Supreme Court reaffirmed in Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co., 549 U.S. 443, 450–51 (2007), that bankruptcy courts retain authority — indeed the obligation — to disallow claims that are "unenforceable . . . under applicable law."

Directly on point is In re Diaz, 526 B.R. 685 (Bankr. S.D. Tex. 2015), in which the bankruptcy court held that a secured creditor's failure to comply with state-law requirements for obtaining a deficiency judgment renders the deficiency claim unenforceable in bankruptcy and requires disallowance under § 502(b)(1). The Diaz court recognized the precise principle Butner and Travelers compel: when state law prescribes specific procedures for establishing a deficiency claim and the creditor fails to follow those procedures, the claim is unenforceable and must be disallowed. That is exactly this case. Kentucky law required CBT to obtain a post-sale deficiency judgment. CBT did not. CBT's claim is unenforceable. Section 502(b)(1) requires disallowance.

**B. Claim Determination Is Not Appellate Review**

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

What this Court is asked to do is not appellate review of any state-court judgment. It is the independent federal-bankruptcy function that Congress mandated in § 502(b). The Ninth Circuit, the Eleventh Circuit, and the Supreme Court have all confirmed that bankruptcy claim determinations are not Rooker-Feldman violations. See In re Gruntz, 202 F.3d at 1079 (en banc); In re Kalter, 292 F.3d at 1357; Exxon Mobil, 544 U.S. at 284. The Federal Rules of Bankruptcy Procedure expressly contemplate this function: Rule 3001(f) creates only a rebuttable presumption of validity, and Rule 3007 provides the procedural framework for objections.

**C. The Burden Has Shifted, and CBT Has Not Met It**

Under In re Lundell, 223 F.3d 1035, 1041 (9th Cir. 2000), "[t]he prima facie validity of a proof of claim may be overcome by a debtor who presents substantial evidence to rebut the claim." Once rebutted, the burden of proof shifts back to the claimant to prove validity by a preponderance of the evidence.

Debtors have presented over 1,100 pages of documentary evidence, including the Distribution Order, the conditional foreclosure language, the August 25, 2023 hearing transcripts, the September 23, 2024 KCOA "no merits" disclaimer, the credit-bureau settlements removing CBT, and the 2019 Steve Hall correspondence. CBT has presented zero exhibits in opposition. The prima facie presumption has been overcome. CBT has not carried its burden because it cannot.

**D. Confirmation Must Be Suspended Until June 4, 2026**

Both Debtors' Rule 3007 Objection (Doc 38) and the Sixth Claim for Relief in the adversary proceeding (AP No. 1:25-ap-01026-MB) are set for hearing before this Court on June 4, 2026. Confirming any plan that incorporates CBT's POC before that hearing would:

1. Create an irreconcilable conflict between the confirmed plan and any subsequent ruling disallowing or reducing CBT's claim;

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

2. Lock Debtors into an invalid claim amount, requiring later plan modification proceedings;

3. Reward CBT for filing an inflated, contested POC by allowing it to be incorporated into a confirmed plan before it has survived legal challenge; and

4. Undermine judicial economy by requiring this Court to address the same claim-validity issues in multiple proceedings simultaneously.

The orderly course is to deny or, at minimum, suspend confirmation as to CBT's claim until this Court rules on the pending Rule 3007 Objection and adversary proceeding on June 4, 2026.

## VIII. RELIEF REQUESTED

WHEREFORE, for all of the foregoing reasons, Debtors respectfully request that this Court enter an Order:

1. **DENYING confirmation** of any Chapter 13 plan that treats, allows, or provides for payment of the Proof of Claim filed by Central Bank & Trust Co. in the amount of $357,990.91 (Claim No. 19), pending resolution of the Rule 3007 Objection to Claim (Doc 38) and the Sixth Claim for Relief in Adversary Proceeding No. 1:25-ap-01026-MB;

2. **DISALLOWING** the Proof of Claim filed by Central Bank & Trust Co. in full as unenforceable under applicable law pursuant to 11 U.S.C. § 502(b)(1).

3. **SUSPENDING** confirmation proceedings as to Central Bank & Trust Co.'s claim until this Court has ruled on the pending Rule 3007 Objection and the adversary proceeding;

4. **IMPOSING ADDITIONAL SANCTIONS** on William E. Ireland, Esq., for continued non-compliance with this Court's orders, including the unpaid $150 sanction outstanding since June 2025 and the pattern of non-compliance documented in Section V above; and

5. **GRANTING** such other and further relief as this Court deems just and proper.

## IX. CONCLUSION

The Proof of Claim filed by Central Bank & Trust Co. is legally invalid. It rests on a deficiency that does not exist, was never adjudicated, and could not have come into existence given a $271,590 surplus. It includes interest a Kentucky court already denied. It misclassifies an unsecured remainder as secured. It was filed in bad faith following years of coercive collection conduct, and it has been prosecuted by counsel who has missed hearings, ignored sanctions, failed to oppose Debtors' motions, and filed wrong-party recycled briefs in a matter involving over $357,000.

By contrast, Debtors have made every plan payment, paid every sanction, filed every brief on time, exhausted every Kentucky remedy, and presented over 1,100 pages of evidence in support of disallowance.

No preclusion doctrine can transform a $271,590 surplus into a deficiency. No jurisdictional argument can strip this Court of its § 502(b) authority. No prima facie presumption of validity can survive 1,100 pages of unrebutted documentary evidence.

Confirmation of any plan treating CBT's POC before this Court rules on the pending Rule 3007 Objection and adversary proceeding on June 4, 2026 would reward CBT's bad faith, prejudice Debtors irreparably, and undermine the integrity of these proceedings. Debtors respectfully request that this Court deny confirmation, disallow CBT's POC, and grant such further relief as set forth above.

Finally, and most respectfully, Debtors emphasize the following. Although Debtors are senior citizens and retired, they have demonstrated extraordinary patience while awaiting this Court's decision on their Rule 3007 Objection to Claim filed on April 27, 2025 (Doc 38) and their Motion for Summary Judgment filed on July 21, 2025 (Doc 8). During that period of waiting, Debtors have made nineteen (19) consecutive monthly payments under the strained Chapter 13

payment plan — every payment on time, without default, and without modification — despite the substantial financial and emotional burden those payments have imposed on two retirees, implore the Honorable Judge Barash to decide these long-pending issues as promptly and as properly as possible, so that Debtors may at last obtain the adjudication on the merits that the Federal Rules and 11 U.S.C. § 502(b) guarantee them.

Dated: May 21, 2026

Respectfully submitted,

**Douglas A. Wain, Pro Se**

Debtor

P.O. Box 7473

Westlake Village, California 91359

douglaswain@gmail.com

(859) 494-3677

**Elisa Wain, Pro Se**

Debtor

P.O. Box 7473

Westlake Village, California 91359

douglaswain@gmail.com

(859) 494-3677

DEBTORS' OBJECTION TO PLAN CONFIRMATION — CBT POC (CLAIM NO. 19)

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

*In re:*

DOUGLAS ALAN WAIN and
ELISA WAIN,

Debtors.

**Case No. 1:24-bk-11814-MB**

**Chapter 13**

Hearing Date: June 4, 2026
Hearing Time: 9:30 a.m.
Courtroom: 303
Judge: Hon. Martin R. Barash

### DECLARATION OF DOUGLAS A. WAIN

1.      I, Douglas A. Wain, am one of the Debtors in the above-captioned Chapter 13 bankruptcy case, No. 1:24-bk-11814-MB, and a plaintiff in the related Adversary Proceeding, No. 1:25-ap-01026-MB. I am over the age of eighteen years, am competent to testify to the matters set forth in this Declaration, and make this Declaration based on my own personal knowledge. If called upon as a witness, I could and would testify competently to the matters set forth herein.

2.      I make this Declaration in support of Debtors' Objection to Confirmation of Chapter 13 Plan as to the Proof of Claim of Central Bank & Trust Co. (the "Objection"), filed concurrently herewith, and to authenticate Exhibits A through T filed in support of the Objection. The Exhibits authenticated below have

been compiled into a single Exhibit Volume accompanying this Declaration, with each Exhibit separately marked for the convenience of the Court and the parties.

3.      I have been continuously involved in the underlying Kentucky foreclosure proceeding, *Central Bank & Trust Co. v. Wain*, Fayette Circuit Court Case No. 19-CI-00812, since its inception in 2019, and have personal knowledge of the correspondence, court filings, and other records described below. I personally received, sent, drafted, downloaded, or captured each of the documents authenticated below in the ordinary course of defending against Central Bank & Trust Co.'s collection activity and prosecuting my own affirmative claims against Central Bank & Trust Co.

## <u>GROUP 1 — 2019 PRE-LITIGATION CORRESPONDENCE<br>(EXHIBITS A–G)</u>

4.      **Exhibit A.** Attached as **Exhibit A** is a true and correct copy of the letter dated January 31, 2019, on Central Bank letterhead, signed by Steve Hall, Vice President, Collections Manager of Central Bank & Trust Co. ("CBT"), addressed to me at 2711 Barbados Lane, Lexington, Kentucky 40509. I received this letter via U.S. mail at that residence on or about February 2, 2019. The letter, on its face, states that the equity line loan was "currently past due" for the amount of $4,981.00. The letter then accelerates the entire principal balance of the Equity Line referenced on the loan (account ending in 0385) and demands payment of the "accelerated balance"

within ten (10) days. The letter contains an internally inconsistent figure for the accelerated principal balance, printed as "$355,9982.42," which I understand to be a typographical error in CBT's letter.

**[Pages: 1]**

5.    **Exhibit B.** Attached as **Exhibit B** is a true and correct copy of the email I sent from my personal email address, douglaswain@gmail.com, to Steve Hall at shall@centralbank.com on February 11, 2019 at 9:36 a.m., acknowledging receipt of the January 31, 2019 letter (Exhibit A) and committing to reply by Friday, February 15, 2019. I am the sender of this email and I have continuous custody of my sent-email folder containing this message.

**[Pages: 1]**

6.    **Exhibit C.** Attached as **Exhibit C** is a true and correct copy of my letter, dated February 19, 2019, that I personally authored and sent to Steve Hall at Central Bank & Trust Co., P.O. Box 1360, Lexington, KY 40588-1360, by U.S. mail and email. The letter includes my complete 2018 payment history on the Equity Line account, a multi-year history of interest paid as reflected on the IRS Forms 1098 that CBT had issued to me, and a good-faith offer to bring the account current upon confirmation that any cure payment would be applied to interest rather than the entire principal balance.

**[Pages: 3]**

7.      **Exhibit D.** Attached as **Exhibit D** is a true and correct copy of the email I received from Steve Hall, sent from shall@centralbank.com on Friday, February 22, 2019 at 12:16 p.m., in reply to my letter of February 19, 2019. The email imposes three conditions on any reinstatement of the loan: (i) payment of all past due amounts no later than March 15, 2019; (ii) future payments paid no later than the date due; and (iii) "the execution of an agreed judgment between Central Bank & Trust and Douglas Wain and Elisa Wain as acceptance of the two conditions above."

**[Pages: 2]**

8.      **Exhibit E.** Attached as **Exhibit E** is a true and correct copy of my letter, dated March 1, 2019, that I personally authored and sent to Steve Hall by U.S. mail and email, with the three conditions imposed in Exhibit D. No draft of any proposed "agreed judgment" had been provided to me at that time.

**[Pages: 2]**

9.      **Exhibit F.** Attached as **Exhibit F** is a true and correct copy of the Proposed Agreed Judgment in Fayette Circuit Court Case No. 19-CI-00812 that was drafted by Stoll Keenon Ogden PLLC, counsel for CBT, and transmitted to me and my wife in March 2019. Paragraph 2 of the Proposed Agreed Judgment requires the Defendants Douglas A. Wain and Elise [sic] Wain to "admit all of the allegations of

the Complaint" and to "waive any claims or defenses against Central Bank." Paragraph 4 confesses judgment in the amount of $358,412.72, plus per-diem interest, attorneys' fees, and costs.

**[Pages: 3]**

10. **Exhibit G.** Attached as **Exhibit G** is a true and correct copy of two related documents that I received in March 2019: (a) the email from Steve Hall, sent from shall@centralbank.com on Tuesday, March 12, 2019 at 4:49 p.m., transmitting the Proposed Agreed Judgment (Exhibit F) and stating that "the Bank will be willing to forbear further action only subject to the terms of an Agreed Judgment to be entered by the court"; and (b) the March 13, 2019 cover letter from Rhonda D. Houston, Paralegal at Stoll Keenon Ogden PLLC, addressed to me and Elisa Wain, enclosing the Proposed Agreed Judgment and stating, in bold, "please sign and return it to our office in the envelope provided within 7 days from the date of this letter."

**[Pages: 3]**

## GROUP 2 — KENTUCKY COURT ORDERS AND HEARINGS (EXHIBITS H–L)

11. **Exhibit H.** Attached as **Exhibit H** is a true and correct copy of the Partial Summary Judgment, Judgment on the Pleadings, and Order of Sale, entered on January 20, 2021 by Hon. Kimberly N. Bunnell, Judge of the Fayette Circuit

Court, Ninth Division, in Central Bank & Trust Co. v. Wain, et al., Case No. 19-CI-00812, attested by Vincent Riggs, Clerk of the Fayette Circuit Court. Paragraph 10 of the Order provides, in relevant part: "In the event the Property sells for less than the Judgment Amounts awarded to Central Bank herein … the Defendants, Douglas A. Wain and Elisa Wain, shall be jointly and severally liable to Central Bank for any deficiency amount(s) which may remain after the sale of the Property and application of the net sale proceeds due to Central Bank." I received this Order through then-counsel and have maintained it continuously since receipt.

**[Pages: 9]**

12.    **Exhibit I.** Attached as **Exhibit I** is a true and correct copy of the Order Confirming Report of Sale, for Delivery of Deed and Partial Distribution of Proceeds, entered on March 12, 2021 by Hon. Kimberly N. Bunnell in Fayette Circuit Court Case No. 19-CI-00812. The Order recites at Paragraph 1 that the Master Commissioner was directed to deliver a deed conveying fee simple title in the subject real property at 2711 Barbados Lane, Lexington, Kentucky to Pavel Moskvich, a third-party purchaser, "who has paid the Master Commissioner the full purchase price" of $630,003.00. The Order at Paragraph 2 deducts the Master Commissioner's costs and fees of $24,967.58 and orders that the balance of $605,035.42 be held by the Master Commissioner until further order of the Court. Paragraph 4 of the Order provides that "[t]he liens or interests of the parties hereto,

and their successors in interest, and any pendente lite lienholder or claimant, existing against the Property herein are hereby released and discharged; provided, however, the mortgage liens of Central Bank and NewRez LLC d/b/a Shellpoint Mortgage Servicing, assignee of Ditech Financial LLC, shall attach to the sale proceeds held by the Master Commissioner in the same priority order of the original mortgage liens of each lender." The Order was signed by Hon. Kimberly N. Bunnell as Judge of the Fayette Circuit Court and was tendered by Gregory D. Pavey of Stoll Keenon Ogden PLLC as counsel for Central Bank. I received this Order through then-counsel and have maintained it continuously since receipt.

**[Pages: 3]**

**13.     Exhibit J.** Attached as **Exhibit J** is a true and correct excerpt of the transcript of the hearing held on August 25, 2023 before Hon. Kimberly N. Bunnell in Fayette Circuit Court Case No. 19-CI-00812. The complete transcript was previously filed in the related Adversary Proceeding (No. 1:25-ap-01026-MB) on February 26, 2026 as Doc 34, accompanied by my prior Declaration Under Penalty of Perjury dated February 26, 2026, in which I attested that the transcript is a verbatim reproduction, without modification of any kind, of the transcription produced by TurboScribe.ai from the original video recording of the August 25, 2023 hearing. The original video recording is maintained by me and is available for inspection upon request. I incorporate that prior Declaration by reference and

reaffirm it here. The transcript records the following on-the-record colloquy at the conclusion of the August 25, 2023 hearing, in which Judge Bunnell expressly confirmed that her ruling denied Central Bank & Trust Co.'s request for post-judgment interest: EGAN (Shannon Egan, Counsel for U.S. Bank): "And so, your honor, just to clarify, the order would be granting my motion for summary judgment, granting his motion to distribute the funds, not the interest part." THE COURT (Judge Kimberly N. Bunnell): "Correct."

**[Pages: 10]**

**14.** **Exhibit K.** Attached as **Exhibit K** is a true and correct copy of the Entry Granting Summary Judgment and Order of Distribution of Sale Proceeds, entered on March 7, 2024 by Hon. Kimberly N. Bunnell in Fayette Circuit Court Case No. 19-CI-00812. Paragraph 8 of the Order disposes of CBT's Motion for Distribution "GRANTED IN PART AND DENIED IN PART." Paragraph 10 directs that, after distribution of $538,150.82 to U.S. Bank Trust National Association as senior lienholder, "the remaining sale proceeds of $66,884.60 shall be distributed to Central Bank on its second mortgage lien." Paragraph 12 recites that, "There being no just cause for delay, this is a final and appealable matter." I received this Order through then-counsel and have maintained it continuously since receipt.

**[Pages: 5]**

15.     **Exhibit L.** Attached as **Exhibit L** is a true and correct copy of the Order Denying Petitions for a Writ of Mandamus, entered on September 23, 2024 by Judge Audra J. Eckerle (signing for the panel of Judges Cetrulo, Eckerle, and Goodwine) of the Kentucky Court of Appeals in the consolidated proceedings styled Wain v. Hon. Kimberly Nell Bunnell, Action Nos. 2024-CA-0730-OA and 2024-CA-0850-OA. The Order states, in its concluding paragraphs, "Because the Wains do not meet the prerequisites for the issuance of a writ, we need not address their claims of error. Nothing contained in this Order should be construed as a ruling on the merits of the allegations." I received this Order in the ordinary course as a Petitioner and have maintained it continuously since receipt.

**[Pages: 8]**

### GROUP 3 — CBT'S ABANDONMENT OF THE KENTUCKY COURT SYSTEM (EXHIBITS M–O)

16.     **Exhibit M.** Attached as **Exhibit M** is a true and correct copy of the letter dated September 21, 2021, on Dinsmore & Shohl LLP letterhead, signed by Shannon O'Connell Egan, addressed jointly to me at P.O. Box 7473, Thousand Oaks, California 91359 (via U.S. mail) and to Hon. David W. Hemminger, my then-counsel (via electronic mail), in response to a Consumer Financial Protection Bureau Complaint I had submitted on September 16, 2021. The letter, written by counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing — the servicer for the senior

lienholder on the subject property — contains the following written admissions from NewRez/Shellpoint's own counsel: (a) "Shellpoint did not initiate the foreclosure, move for a foreclosure judgment or order of sale, or execute a foreclosure-related eviction or foreclosure sale"; (b) "Shellpoint is a defendant in a foreclosure action, which is entitled Central Bank & Trust Co. v. Douglas A. Wain, et al., and which is pending in the Fayette County, Kentucky Circuit Court under Case No. 19-CI-00812"; (c) "On January 20, 2021, a Partial Summary Judgment, Judgment On The Pleadings, And Order Of Sale … was entered in favor of Central Bank & Trust Co. in the foreclosure action. The Property was sold to a third party pursuant to the Judgment on February 8, 2021"; and (d) Shellpoint's cross-claim seeking a judgment against the Wains "was not filed in the foreclosure action until after the Property had been sold pursuant to the Judgment entered in favor of Central Bank & Trust Co., after the judicial sale was confirmed, after the deed was issued to the third-party purchaser at the sale, and after the Wains were allegedly locked out of the Property." I received this letter at the address shown.

**[Pages: 3]**

17.    **Exhibit N.** Attached as **Exhibit N** is a true and correct copy of the Proposed Substitute Defendant/Cross-Claimant U.S. Bank Trust National Association, Not in Its Individual Capacity But Solely as Owner Trustee for RCF 2 Acquisition Trust's Response and Objection to Motion for Distribution of Proceeds,

Page **10** of **17**

filed by Shannon O'Connell Egan and Nathan H. Blaske of Dinsmore & Shohl LLP

on June 1, 2023 in Fayette Circuit Court Case No. 19-CI-00812. The Response, at

page 6, contains U.S. Bank's assertion that "Central Bank could have moved for

distribution of the sale proceeds at any time after confirmation of the sale as there is

no Civil Rule or Local Rule that would prohibit it from doing so or that would require

the first lienholder to do so." I obtained this document from the Fayette Circuit Court

electronic file.

**[Pages: 8]**

**18.    Exhibit O.** Attached as **Exhibit O** is a true and correct copy of an email

chain between Gregory D. Pavey of Stoll Keenon Ogden PLLC, counsel for Central

Bank & Trust Co., and Shannon O'Connell Egan of Dinsmore & Shohl LLP, dated

November 9, 2022 and November 11, 2022, together with a related email from

Shannon O'Connell Egan to Gregory D. Pavey dated April 23, 2023. These emails

were filed in Fayette Circuit Court Case No. 19-CI-00812 on June 1, 2023 as

authenticated attachments to Exhibit N and bear the Fayette Circuit Clerk's

electronic filing stamp ("Filed 19-CI-00812 06/01/2023 Vincent Riggs, Fayette

Circuit Clerk"). The chain contains the following written admissions: (a) In his

November 9, 2022 email — sent nearly twenty months after the March 12, 2021

Confirmation Order released CBT's lien on the Property and attached it to the sale

proceeds — Mr. Pavey, writing on behalf of CBT, asked Ms. Egan to "advise me of