DOUGLAS A. WAIN
ELISA WAIN
P.O. Box 7473
Westlake Village, CA 91359
Telephone: (859) 494-3677
Email: douglaswain@gmail.com
Debtors in Pro Per

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| **In re**<br><br>**DOUGLAS ALAN WAIN and ELISA WAIN,**<br><br>**Debtors.** | **Case No. 1:24-bk-11814-MB**<br><br>**Chapter 13**<br><br>**DEBTORS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM NO. 1 (DOC. 38), ADDRESSING AMENDED CLAIM NO. 1-2 (FORMERLY DOC. 82); EVIDENTIARY OBJECTIONS TO DECLARATION OF BECKY SLOCE-MULLINS**<br><br>**Hon. Martin R. Barash**<br><br>**Hearing on Doc. 38:**<br>**September 24, 2026, 2:30 p.m.**<br>**Courtroom 303**<br>**21041 Burbank Blvd.**<br>**Woodland Hills, CA 91367** |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 3

II. THE AMENDED CLAIM .......... 4

III. OBJECTIONS TO THE AMENDED CLAIM .......... 5

A. Doc. 82 is not entitled to prima facie effect. .......... 5

B. The amended claim repeats the amount CBT's counsel has called erroneous and the calculation CBT told the Court was still under evaluation. .......... 7

C. Exhibit C does not support the claim; it contradicts the declaration that sponsors it. .......... 8

D. Evidentiary objections to the Declaration of Becky Sloce-Mullins. .......... 10

E. The timing of the amendment, and the prejudice it causes, weigh against considering it without further proceedings. .......... 12

F. CBT's substitution of declarant concedes that the claim has never rested on competent evidence. .......... 12

G. Two events independently dispose of the claim: the February 8, 2021 sale, and the March 7, 2024 Distribution Order that CBT did not appeal. .......... 13

IV. RELIEF REQUESTED .......... 16

V. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Cases**

Harvest Homebuilders LLC v. Commonwealth Bank & Trust Co., 310 S.W.3d 218 (Ky. Ct. App. 2010) .......... 14

In re Heath, 331 B.R. 424 (B.A.P. 9th Cir. 2005) .......... 6

In re Hawkeye Entm't, LLC, 675 B.R. 595 (Bankr. C.D. Cal. 2025) .......... 15

In re Holm, 931 F.2d 620 (9th Cir. 1991) .......... 6

In re Roberts Farms, Inc., 980 F.2d 1248 (9th Cir. 1992) .......... 12

Kentucky Joint Stock Land Bank v. Farmers Exch. Bank, 119 S.W.2d 873 (Ky. 1938) .......... 14

Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035 (9th Cir. 2000) .......... 6

Pearman v. West Point Nat'l Bank, 887 S.W.2d 366 (Ky. Ct. App. 1994) .......... 14

**Statutes**

28 U.S.C. § 1738 .......... 15

**Rules**

Fed. R. Bankr. P. 3001(c)(2)(A) .......... 6

Fed. R. Bankr. P. 3001(c)(3) .......... 6, 16

Fed. R. Bankr. P. 3001(f) .......... 5, 16

Fed. R. Evid. 602 .......... 10

Fed. R. Evid. 803(6) .......... 11

Fed. R. Evid. 1006 .......... 11

LBR 9013-1 .......... 7

## I. INTRODUCTION

On September 18, 2026 — six days before the continued hearing on Debtors' Objection to Claim No. 1 (Doc. 38), one day after Debtors filed their reply papers in the related adversary proceeding (Adv. Docs. 92–94), and nearly twenty-one months after the original claim was filed — Central Bank & Trust Co. ("CBT") filed Doc. 82. The docket describes it as a "Motion to File Amended Proof of Claim." The document is not a motion: it contains no notice of motion, no memorandum, no proposed order, no hearing date, and no request for relief. It is an Official Form 410 marked as amending an earlier claim, a declaration, and exhibits — filed on the case docket rather than on the claims register, where it does not appear. The amendment changes the declarant, from CBT's Kentucky litigation counsel to a bank officer, and attaches a new "Exhibit C." It does

not change the amount. The claim is still $357,990.91 — the figure CBT's own counsel described in writing on August 13, 2026 as the product of a "clerical error," and the calculation CBT told this Court on September 10, 2026, in the adversary proceeding, "continue[s] to be evaluated." Debtors submit this supplemental objection so that the Court has their position on Doc. 82 before the September 24 hearing. The amended claim does not cure the defects in Claim No. 1. It confirms them, and it adds new ones.

## II. THE AMENDED CLAIM

Claim No. 1-1 was filed on December 20, 2024 by Timothy R. Wiseman of Stoll Keenon Ogden PLLC, signing as CBT's attorney, in the amount of $357,990.91, supported by his own four-page declaration. Debtors listed the debt as "[d]isputed in its entirety" in the schedules filed with their petition (Doc. 1 at 12) and objected to the claim on April 27, 2025 (Doc. 38). The objection has been continued several times and is set for hearing on September 24, 2026.

Doc. 82 consists of a new Official Form 410 (3 pages), a two-page "Declaration of Becky Sloce-Mullins," and 30 pages of exhibits: the 2019 foreclosure complaint (Exhibit A), the January 20, 2021 judgment and order of sale (Exhibit B), and a new Exhibit C. Exhibit C is a six-line table headed "Payoff good through 12/19/2024" — Principal $273,899.64; Fees $145.00; Interest $83,900.27; Subtotal $357,944.91; LR Fee $46.00; Total $357,990.91; "Per Diem $0.00" — followed by a four-page Central Bank Visa credit-card statement for an account "Ending in 0385," with a statement closing date of March 28, 2024, showing a "Previous Balance" of $424,829.51, a single "Payment Thank You!" entry of $66,884.60 posted March 13, 2024, a "New Balance" of $357,944.91, a "Minimum Payment Due" of $11,555.14, the legend "YOUR ACCOUNT IS 210 DAYS PAST DUE," and "Interest Charged $0.00" and "Fees Charged $0.00" for 2024. (Doc. 82-2 at 25–30.)

The Form 410 is signed by Ms. Sloce-Mullins as CBT's "authorized agent" on September 15, 2026; her declaration is executed the same day. (Doc. 82 at 3; Doc. 82-1 at 2.) Neither the form nor the declaration mentions the March 7, 2024 Order of Distribution of Sale Proceeds entered in the Fayette Circuit Court, the $630,003 price at which the property sold, or the wage garnishments CBT collected. No motion for leave to amend accompanies the filing, and no explanation is offered for why the amendment comes six days before the hearing on the objection. The docket entry generated when CBT's counsel uploaded the document reads "Motion to File Amended Proof of Claim," but that is the electronic-filing event counsel selected, not the content of what was filed. Nothing in Doc. 82 asks the Court to do anything. On September 21, 2026, the Clerk issued a Notice to Filer of Error and/or Deficient Document (Doc. 83) stating that Doc. 82 "appears to be a proof of claim but was filed as a motion," that "NO ACTION TAKEN," and instructing CBT to withdraw the motion and refile the document under the correct event. It is the fourth time in these two cases that the clerk has had to advise CBT that a filing is not what its docket entry describes: the clerk issued deficiency notices when CBT filed a declaration under a motion event in the adversary proceeding (Adv. Doc. 60), when it filed a motion in the wrong case under the wrong event here (Doc. 78), and when it filed adversary papers in this case (Docs. 60, 62).

Debtors' Second Supplemental Declaration in the adversary proceeding, executed the morning of September 17, 2026, stated that as of a docket review that morning no amended Proof of Claim had been filed. (Adv. Doc. 93 ¶ 4.) That statement was accurate when made; Doc. 82 was filed the following afternoon.

## III. OBJECTIONS TO THE AMENDED CLAIM

### A. Doc. 82 is not entitled to prima facie effect.

A proof of claim "signed and filed in accordance with" the Bankruptcy Rules "is prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). In an individual debtor's

case, when a claim includes interest, fees, expenses, or other charges in addition to its principal amount, an itemized statement of those interest, fees, expenses, or charges must be filed with the proof of claim. Fed. R. Bankr. P. 3001(c)(2)(A). If the holder fails to provide that information, the Court may, after notice and a hearing, "preclude the holder from presenting the information in any form as evidence in any contested matter or adversary proceeding in the case — unless the court determines that the failure is substantially justified or is harmless," and may "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3001(c)(3)(A)–(B). A claim that does not comply with Rule 3001(c) is not entitled to the presumption of validity, and the claimant must prove the claim by a preponderance of the evidence once the objector has come forward with evidence tending to defeat it. In re Heath, 331 B.R. 424, 431–37 (B.A.P. 9th Cir. 2005); Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).

Exhibit C is not an itemized statement. It gives one undifferentiated interest figure, $83,900.27, with no rate, no period, no principal balance on which it was computed, and no computation. It lists "Fees $145.00" and "LR Fee $46.00" without saying what they are. It reflects no credit for the wage garnishments the declaration swears were "applied." (Doc. 82-1 ¶ 7.) It is, in short, the same conclusory number Claim No. 1-1 asserted, now with three sub-totals beneath it. The credit-card statement that follows it is not an itemization of the judgment debt at all; it is a consumer billing statement for a different kind of account. Doc. 82 was also filed on the case docket rather than on the claims register. As of the evening of September 18, 2026, the register shows Claim No. 1 as originally filed, with no amendment — in contrast to Claim No. 2, for which the register records the creditor's amendment (2-2). (Wain Decl. Ex. A.) It was not "signed and filed in accordance with" the rules, and it carries no presumption of validity. Nor does the docket's characterization of Doc. 82 as a motion help CBT. If Doc. 82 is a motion for leave to amend, CBT

has conceded that leave is required, and the motion is unnoticed and unsupported: it has no notice, no memorandum of points and authorities, no hearing date, and no proposed order, and it cannot be heard on September 24 or on any other date until it complies with LBR 9013-1 and Debtors have had the opportunity to oppose it. If Doc. 82 is instead an amended proof of claim, it was filed in the wrong place, is not on the claims register, and was filed without the leave CBT's own docket entry acknowledges it needs. On either reading, Doc. 82 is not before the Court as an amended claim entitled to prima facie effect at the September 24 hearing.

Debtors have long since come forward with the evidence that shifts the burden: the March 7, 2024 Distribution Order; the $630,003 sale price against a $358,412.72 judgment; CBT's own admission that it received $66,884.60 from the sale proceeds; and the sworn testimony of CBT's former Manager of Special Assets that no deficiency judgment was ever sought, discussed, or advised. (Adv. Doc. 80, Exs. 7, 15, 16; Adv. Doc. 93, Ex. EE (Hall Tr.) 31:1–3, 33:14–24, 34:5–8.) The burden is CBT's. Doc. 82 does not carry it.

**B. The amended claim repeats the amount CBT's counsel has called erroneous and the calculation CBT told the Court was still under evaluation.**

On August 13, 2026, CBT's counsel wrote that the March 7, 2024 Distribution Order "reduce[d] the amount owed" by $66,884.60, that the Proof of Claim "stated the amount" incorrectly "[d]ue to a clerical error," that the correct figure was $357,944.91, and that "CBT will amend its claim to correct the difference." (Adv. Doc. 80, Ex. 9.) The original claim was inconsistent on its face in the same way: its form stated $357,990.91 while the Wiseman declaration attached to it stated $357,944.91 as of April 8, 2024. (Claim 1-1, Wiseman Decl. ¶ 14.) And the attorney who verified that claim later swore that he "did not personally calculate the amounts underlying the proof of claim." (Adv. Doc. 64 ¶ 6.) On September 10, 2026, CBT told this Court that "the calculation of any remaining indebtedness involve[s] mixed questions of law and fact that continue to be

evaluated," and that it "does not object to a date certain being set for supplementation." (Adv. Doc. 91 at 7.) Eight days later CBT filed, under an officer's oath, the identical figure of $357,990.91, supported by a payoff table dated December 19, 2024. The amendment does not adopt even CBT's own corrected number. Either counsel's August 13 letter was wrong or the amended claim is; they cannot both be right, and CBT has not said which. Nor has anyone at CBT yet sworn to having computed the figure: the attorney who verified the original claim disclaimed the calculation, and the officer who verifies the amended claim adopted his text (see Part III.D.3 below).

The date on Exhibit C matters for a second reason. A calculation "good through 12/19/2024" existed on December 19, 2024 — the day before Claim No. 1-1 was filed — and therefore existed throughout the discovery period in the adversary proceeding. It was responsive to Interrogatories Nos. 5, 6, and 25 and to Request for Production No. 22, all served July 7, 2026; it was withheld under Rule 33(d) references to a 2019 production and under the assertion that the calculation was still being evaluated; and it was produced for the first time as an attachment to a claim filed after the discovery cutoff and after Debtors' reply. Debtors respectfully ask the Court to take that sequence into account at the hearing on Debtors' Motion to Compel (Adv. Doc. 80), set for the same date and time.

**C. Exhibit C does not support the claim; it contradicts the declaration that sponsors it.**

First, Exhibit C states a per diem of $0.00. The declaration states that the judgment bears interest "at the variable rate provided in the parties' agreement (then $52.70 per diem) from March 6, 2019, until paid" (Doc. 82-1 ¶ 6), and that the amount due is $357,990.91 "plus additional interest, costs, and fees" (id. ¶ 8). If interest stopped accruing, paragraph 8 is wrong; if it did not, Exhibit C is wrong. A zero per diem and a 2024 statement showing "Interest Charged $0.00" are consistent with one thing: an account that has been charged off — which, as CBT's former Special Assets

manager testified, is automatically reported to the credit bureaus as a charge-off (Adv. Doc. 93, Ex. EE ("Hall Tr.") 75:21–24), and which CBT has never disclosed.

Second, the principal figure cannot be reconciled to CBT's own terms. The judgment was $358,412.72. Less the $66,884.60 distribution, the balance is $291,528.12; less the $4,185.00 in garnishments CBT has admitted receiving, it is $287,343.12. Exhibit C states principal of $273,899.64. Nothing in Doc. 82 accounts for the $17,628.48 difference, and the garnishments appear nowhere in the exhibit despite paragraph 7's oath that they were applied.

Third, the interest figure is not derived from the terms CBT recites. At the $52.70 per diem the declaration itself states, interest from March 6, 2019 through March 13, 2024 alone — 1,834 days — would be $96,651.80, not $83,900.27, and interest from March 2024 through December 19, 2024 would not be zero. Whatever the correct number is, CBT has not computed it from CBT's own stated rate and dates.

Fourth, Doc. 82 introduces a fourth figure for this debt. The credit-card statement shows a "Previous Balance" of $424,829.51 as of March 2024 — a number that appears in no prior filing, discovery response, or letter. CBT has now put four different amounts before this Court and its own auditor: $357,990.91 (Claim No. 1 and Doc. 82); $358,412.72 (the judgment); $380,685.43, the amount CBT's counsel reported to Crowe LLP "as of July 8, 2020" in the fiscal-year 2021 and 2025 audit-inquiry letters (Adv. Doc. 85, Ex. CC, Crowe 000013, 000035–000040); and $424,829.51 (Doc. 82-2 at 27). A claim that changes with each document offered to support it is not proved by any of them.

Fifth, the only record CBT offers behind Exhibit C is a Visa statement. It carries a "Payment Due Date," a "Minimum Payment Due" of $11,555.14, a "Late Payment Warning," a "Minimum Payment Warning" addressed to "this card," and a "REWARD SUMMARY." It records the court-ordered distribution of $66,884.60 in surplus sale proceeds as a customer payment: "Payment Thank

You!” Whatever CBT’s internal reasons for carrying a foreclosure judgment on a credit-card platform, the statement is not a ledger of a judgment, and it establishes that CBT maintained, billed, and — on its own witness’s testimony — reported the account as a consumer credit account. That is the credit-reporting subject CBT insists is outside this case. (Adv. Doc. 91 at 5, 11.)

Sixth, what is absent from Doc. 82 is as telling as what is in it. The March 7, 2024 Distribution Order — which CBT’s own sworn Interrogatory Answer No. 4 calls “the most complete and accurate statement of the distribution” (Adv. Doc. 80, Ex. 5) — is not attached. (A copy is attached as Exhibit B to the accompanying Declaration of Douglas A. Wain.) Nothing shows the sale price. Nothing shows a deficiency judgment, because none exists. The amended claim presents the debt as a 2021 judgment minus a “payment,” and asks the Court to accept that framing on the word of a declarant who does not mention the order under which the “payment” was made. That is not new. On March 3, 2021 — three weeks after the property sold for $630,003 — CBT swore in its Affidavit for Writ of Non-Wage Garnishment that the amount due was the full $358,412.72 “plus interest, attorneys’ fees and costs,” acknowledging on the face of the affidavit that the sum was “subject to credit for proceeds from the sale of collateral, which have not yet been received,” and garnished Mrs. Wain’s wages on that basis. (Wain Decl. Ex. C.) Doc. 82 is the same approach five years later: the judgment, without the credit.

**D. Evidentiary objections to the Declaration of Becky Sloce-Mullins.**

Debtors object to the declaration (Doc. 82-1) on the following grounds and ask that it be stricken or, at minimum, disregarded as to the matters identified.

1. Information and belief (preamble; ¶ 2). The declaration opens with the statement that the declarant testifies “upon information and belief,” and two sentences later asserts “personal knowledge as to all of the facts contained herein.” A declaration on information and belief is not evidence of the facts believed, and the two recitals cannot both be true. Fed. R. Evid. 602. This is

the same defect Debtors raised as to the declarant's prior declaration in the adversary proceeding. (Adv. Doc. 86.)

2. Lack of foundation for Exhibit C (¶¶ 3, 8). The declarant describes herself as "custodian of Central Bank's records," but lays no foundation for Exhibit C under Fed. R. Evid. 803(6): she does not say who prepared the payoff table, when, from what records, or whether it was made and kept in the regular course of CBT's business. The table bears no author, no preparation date, and no source. To the extent it summarizes voluminous records, the underlying records have not been produced — they were refused in discovery — and the summary is inadmissible under Fed. R. Evid. 1006.

3. Text copied from counsel (¶ 3). Paragraph 3 recites the 2019 debt as "$358,412.712," a figure with three decimal places. The identical figure, identically mistyped, appears in paragraph 3 of the Wiseman declaration filed with Claim No. 1-1. The "custodian's" declaration was not drawn from CBT's records; it was copied from the lawyer's.

4. Internal contradiction (¶¶ 7, 8). Paragraph 7 swears that garnishments were applied against the judgment; Exhibit C reflects none. Paragraph 8 swears the claim continues to accrue "additional interest, costs, and fees"; Exhibit C states a per diem of zero and the attached statement shows no interest or fees charged in 2024. A declaration contradicted by its own exhibit is not competent evidence of the contradicted facts.

5. Omission of the Distribution Order and the sale. The declaration purports to account for "any and all payments" on the account (¶ 4) and for how "the distribution of sale proceeds" was applied (¶ 7), yet it does not identify the order under which the distribution was made, the amount of the sale, or the disposition of the surplus. Testimony that omits the controlling court order is not a complete or accurate account of the transaction it describes.

**E. The timing of the amendment, and the prejudice it causes, weigh against considering it without further proceedings.**

Whether to permit amendment of a proof of claim is committed to the Court's discretion, exercised with attention to whether the amendment asserts a new claim, the reasons for delay, and prejudice to the objecting party. In re Roberts Farms, Inc., 980 F.2d 1248, 1251–52 (9th Cir. 1992). Doc. 82 was filed after the discovery cutoff in the adversary proceeding (August 31, 2026), after Debtors' reply papers, and six days before the hearing, with a new declarant who has not been deposed and whose deposition CBT has resisted. If the Court is inclined to consider Doc. 82 at all, Debtors are entitled to test it: the hearing on the claim objection should be continued to permit discovery directed to the amended claim, including the deposition of Ms. Sloce-Mullins as CBT's declarant and records custodian, coordinated with the relief Debtors have requested in the adversary proceeding (Adv. Docs. 47 and 80).

**F. CBT's substitution of declarant concedes that the claim has never rested on competent evidence.**

Claim No. 1 has been supported, from the day it was filed until September 18, 2026, by a single witness: CBT's Kentucky litigation counsel. On December 20, 2024, Mr. Wiseman declared that he had "personal knowledge of the statements contained herein," including that "as of April 8, 2024, the amount owed by the Wains to Central Bank was $357,944.91 plus additional interest and fees" and that "[t]he Judgment has not been satisfied." (Claim 1-1, Wiseman Decl. preamble, ¶¶ 14, 18.) On February 10, 2026, after the Court at the January 30, 2026 hearing asked CBT for evidentiary support, CBT filed a second declaration from the same attorney — "as requested by the Court," in CBT's words — repeating the same paragraphs "based on my own personal knowledge." (Adv. Doc. 31 at 1–5, preamble, ¶¶ 14, 21.)

On August 14, 2026, the same declarant swore that he "did not personally calculate the amounts underlying the proof of claim," that his knowledge is "limited to the authenticity and source of those court records," and that he has "no independent factual knowledge" of the matters at issue. (Adv. Doc. 64 ¶¶ 6, 8–11.) Those statements cannot be reconciled with the personal-knowledge recitals in the two earlier declarations. Whatever the explanation, the consequence is the same: the sworn support for Claim No. 1 in December 2024, and the sworn support CBT offered this Court in February 2026 when asked for evidence, consisted of statements their author has since sworn he lacked the knowledge to make.

CBT's response has been to change the witness. Doc. 82 withdraws Mr. Wiseman as the claim's declarant and substitutes Ms. Sloce-Mullins. That substitution is a concession that the prior declarations could not carry the claim; CBT would not otherwise have made it six days before the hearing. But the new declaration does not supply what the old ones lacked. It reproduces Mr. Wiseman's text — down to the "$358,412.712" in paragraph 3 — under a different signature, adds a preamble on "information and belief," and attaches a payoff table with no author and no foundation. The claim has gone from an attorney who swore to personal knowledge he did not have, to an officer who swears to personal knowledge of a lawyer's draft. Neither is evidence of the amount CBT is owed. The Court should give the December 2024 and February 2026 Wiseman declarations no weight on the amount or status of the debt, and should treat Doc. 82 as what it is: CBT's acknowledgment that, twenty-one months in, its claim still has no competent support.

**G. Two events independently dispose of the claim: the February 8, 2021 sale, and the March 7, 2024 Distribution Order that CBT did not appeal.**

Doc. 82 does not change the two facts on which Debtors' Objection has rested from the beginning, and it does not attempt to. First, the debt was satisfied at the sale. On February 8, 2021, at CBT's instance, the Master Commissioner sold the property for $630,003 — $271,590.28 more

than CBT's $358,412.72 judgment. CBT's own declarant swore that the March 5, 2021 confirmation order "left the remainder of the proceeds — $605,035.42 — with the Master Commissioner." (Claim 1-1, Wiseman Decl. ¶ 10; Adv. Doc. 31 ¶ 10.) Under Kentucky law, in "the usual case where a court ordered the sale of mortgaged property, and which order was executed by the court's commissioner in the usual and ordinary manner as prescribed by the law," "the sold security bec[omes] exhausted upon its sale, in the circumstances and conditions outlined," and the obligors remain liable for a deficit only where "the net proceeds of the sale were insufficient to extinguish the mortgage debt." Kentucky Joint Stock Land Bank v. Farmers Exch. Bank, 119 S.W.2d 873, 877 (Ky. 1938) (copy at Wain Decl. Ex. G). This was that usual case: a court-ordered sale, conducted by the Master Commissioner, confirmed by the court. A mortgagee that forces a sale is bound by the implied covenant of good faith and fair dealing "throughout the foreclosure proceedings," and a bank's failure to adopt "a course that would have liquidated its customer's debt in the entirety" results in "effacement of the deficiency." Pearman v. West Point Nat'l Bank, 887 S.W.2d 366, 367–68 (Ky. Ct. App. 1994) (copy at Wain Decl. Ex. E). When a Kentucky lender does believe the proceeds fell short, the procedure is a motion for a deficiency judgment in the foreclosure action — which is how the bank in Harvest Homebuilders LLC v. Commonwealth Bank & Trust Co., 310 S.W.3d 218, 219–20 (Ky. Ct. App. 2010) (copy at Wain Decl. Ex. F), obtained the deficiency the Court of Appeals affirmed while declining to extend Pearman to a bank that had not resold the collateral. CBT never made that motion. It garnished Mrs. Wain's wages in March 2021 without one, and it has not sought a deficiency judgment in the five years since. CBT forced this sale because, in its former Special Assets manager's words, it was "the only way we were going to get any of the money that was due us." (Hall Tr. 65:11–18.) The sale produced more than the debt. No one at CBT ever sought, discussed, or was advised to seek a deficiency judgment. (Id. 31:1–3, 33:14–24, 34:5–8.)

Second, the order fixing CBT's distribution is final. CBT moved the Fayette Circuit Court for distribution of the sale proceeds; on March 7, 2024, the court granted that motion "IN PART AND DENIED [it] IN PART," and directed that, after distribution to the senior lienholder, "the remaining sale proceeds of $66,884.60 shall be distributed to Central Bank." (Wain Decl. Ex. B ¶¶ 8, 10.) The order recites that "[t]here being no just cause for delay, this is a final and appealable matter," and CBT's Kentucky counsel signed it "Have seen" before entry. (Id. ¶ 12 & at 4.) CBT did not appeal. (Hall Tr. 34:9–19.) It did not move to alter or amend. It sought no deficiency judgment thereafter. The Distribution Order is the order CBT's own sworn Interrogatory Answer No. 4 calls "the most complete and accurate statement of the distribution" (Adv. Doc. 80, Ex. 5), and it is the order CBT's amended claim does not attach. This Court has recently explained why that matters. "[F]ederal court orders carry the full force of law unless and until extinguished through appropriate processes" — a direct appeal, or a motion for relief from the order — and otherwise "collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper." In re Hawkeye Entm't, LLC, 675 B.R. 595, 2025 WL 3522466, at *11 (Bankr. C.D. Cal. Dec. 8, 2025) (Barash, J.) (copy at Wain Decl. Ex. D) (quoting In re Shoot the Moon, LLC, 642 B.R. 21, 23–24 (Bankr. D. Mont. 2022), and Mullis v. U.S. Bankr. Ct., 828 F.2d 1385, 1393 (9th Cir. 1987)). A collateral attack is one that "seeks, through the second suit, to avoid or evade the earlier judgment, or to deny its force and effect," and "[e]ven where the second action has an independent purpose and contemplates some other relief, it is a collateral attack if, in some fashion, it would overrule a previous judgment." Id. at *11 (quoting In re Am. Basketball League, Inc., 317 B.R. 121, 128 (Bankr. N.D. Cal. 2004)). The doctrine "applies equally in the bankruptcy context," id., and a state court's final order is entitled to the same respect here that the state's own courts would give it. 28 U.S.C. § 1738. A proof of claim asserting that CBT is owed $357,990.91 beyond the distribution the Fayette Circuit Court awarded — filed by a creditor that let that order become final without

appeal — is an effort "to deny its force and effect." It is the collateral attack this Court has said it will not entertain.

Either event is sufficient. Together they leave nothing for Doc. 82 to amend.

## IV. RELIEF REQUESTED

Debtors respectfully request that the Court: (1) sustain Debtors' Objection (Doc. 38) and disallow Claim No. 1, as amended by Doc. 82, in its entirety; (2) in the alternative, determine that Doc. 82 is not entitled to prima facie effect under Rule 3001(f), and preclude CBT under Rule 3001(c)(3)(A) from presenting Exhibit C, or the information it purports to summarize, as evidence in this case or in the adversary proceeding; (3) sustain the evidentiary objections set out in Part III.D and strike the Declaration of Becky Sloce-Mullins, or disregard paragraphs 2, 3, 4, 7, and 8 and Exhibit C, and give no weight, on the amount or status of the debt, to the Wiseman declarations of December 20, 2024 (Claim 1-1) and February 10, 2026 (Adv. Doc. 31), for the reasons stated in Part III.F; (4) in the further alternative, if the Court is inclined to consider Doc. 82, continue the hearing on the Objection and permit discovery directed to the amended claim, including the deposition of Becky Sloce-Mullins, coordinated with the relief requested in Adv. Docs. 47 and 80; and (5) grant such other relief as the Court deems just.

## V. CONCLUSION

Twenty-one months after filing a claim its own counsel later called erroneous, and eight days after telling this Court the calculation was still being evaluated, CBT has re-filed the same number under a new signature, supported by a payoff table that contradicts the declaration sponsoring it and a credit-card statement that introduces a fourth figure for the debt. The amended claim does not answer the objection. It is the objection's best evidence. Claim No. 1 should be disallowed.

DATED: September 22, 2026

Douglas A. Wain
Debtor, Pro Per

Elisa Wain
Debtor, Pro Per