**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $________ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $________ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $________ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $________ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $________ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $________ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 12/20/2024
MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

Name: Timothy R. Wiseman
First name / Middle name / Last name

Title: Attorney

Company: Stoll Keenon Ogden PLLC
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 300 W. Vine St., Suite 2100
Number / Street

Lexington, KY 40507
City / State / ZIP Code

Contact phone: (859) 231-3000

Email: tim.wiseman@skofirm.com

**DECLARATION OF TIMOTHY R. WISEMAN**

*** *** *** *** ***

My name is Timothy R. Wiseman and I live in Fayette County, Kentucky. I am of sound mind and am fully competent to testify to the matters stated herein. I have personal knowledge of the statements contained herein, which statements are true and correct.

1. I am an attorney of the law firm Stoll Keenon Ogden PLLC, located at 300 W. Vine St., Suite 2100, Lexington, Kentucky 40507, ("SKO").

2. I have served as counsel for Central Bank & Trust Co. ("Central Bank") in litigation related to the Chapter 13 bankruptcy proceeding filed by Douglas A. Wain and Elisa Wain (the "Wains") on October 30, 2024, in the Central District of California and assigned the Case No. 1:24-BK-11814-MB.

3. In 2019, Central Bank initiated a foreclosure action against the Wains to collect the mortgage indebtedness owed to Central Bank in the then-due amount of $358,412.712, when the Wains failed to make payments due to Central Bank on a home equity line of credit and mortgage.

4. Under the mortgage, the Wains had granted Central Bank a lien on the real property located at 2711 Barbados Lane, Lexington, Fayette County, Kentucky (the "Property").

5. The foreclosure action against the Wains was filed in Fayette Circuit Court and styled as *Central Bank & Trust Co. v. Douglas A. Wain and Elisa Wain*, Case No. 19-812 ("Fayette Circuit Action"). A copy of the complaint filed in the Fayette Circuit Action is attached as Exhibit A.

6. Discovery was conducted, including Central Bank serving written responses and production of documents to the Wains' then-counsel on August 27, 2019.

7. With discovery concluded, after full briefing, and based on the record before it, including the Wains' own admissions, summary judgment was granted in favor of Central Bank on its claims against the Wains on December 11, 2020 in the Fayette Circuit Action. On January 20, 2021, Fayette Circuit Court entered partial summary judgment, judgment on the pleadings, and order of sale (the "Judgment"). A copy of the Judgment is attached as Exhibit B. The Judgment in favor of Central Bank awarded $358,412.72, plus interest at the variable rate provided in the parties' agreement (then $52.70 per diem) from March 6, 2019, until paid, plus costs expended and attorneys' fees. It further directed the Master Commissioner to sell the Property on February 8, 2021. The Judgment was final and appealable.

8. On February 17, 2021, the Wains filed a notice of appeal of the Judgment. The Wains did not post a supersedeas bond to stay enforcement or execution of the Judgment.

9. On February 24, 2021, the Court confirmed the Master Commissioner's sale of the Property. The Wains raised no objections to the process of the sale.

10. On March 5, 2021, the Court entered an order confirming the report of the sale, for delivery of the deed, and partial distribution of proceeds to the Master Commissioner for fees related to the sale. A copy of this order is attached as Exhibit C. This order left the remainder of the proceeds—$605,035.42—with the Master Commissioner.

11. On November 4, 2022, the Court of Appeals rendered an opinion affirming the Judgment. A copy of this opinion is attached as Exhibit D.

12. The Wains moved the Supreme Court of Kentucky to grant discretionary review. The Kentucky Supreme Court denied discretionary review on January 10, 2024. A copy of this order is attached as Exhibit E.

13. The Master Commissioner did not distribute proceeds from the sale of the Property until after the first lienholder adjudicated its first mortgage debt and received a judgment on March 7, 2024. A copy of this order is attached as Exhibit F.

14. With the application of that limited distribution, as of April 8, 2024, the amount owed by the Wains to Central Bank was $357,944.91 plus additional interest and fees.

15. Since the entry of the Judgment, the Wains have unsuccessfully attacked it in various courts. These include the appeal in which the Kentucky Court of Appeals affirmed the judgment in favor of Central Bank. (*See* Exhibits D and E). These also include two unsuccessful mandamus actions filed with the Kentucky Court of Appeals seeking orders compelling the Fayette Circuit Court to declare the judgment satisfied. In denying these petitions in September 2024, the Kentucky Court of Appeals stated:

> As to the Wains request that this Court declare their debt to Central Bank satisfied, they likewise have or had an adequate remedy by appeal. As an initial matter, the judgment in favor of Central Bank has already been the subject of an appeal, and this Court affirmed the Trial Court's judgment. … **As to their argument that the proceeds of the sale were sufficient to satisfy Central Bank's lien, it is not clear whether the Wains intended to mislead this Court, or whether they do not recognize that U.S. Bank as a senior lienholder, was entitled to have its judgment satisfied by the proceeds of the sale prior to the Central Bank being paid.** Regardless, any issues concerning U.S. Bank's lien could have been raised in the Wains' second appeal, had it been timely filed. Their failure to avail themselves properly to their sufficient remedies by appeal do not render them inadequate.

(Exhibit G at p. 7)(emphasis added).

16. Additionally, in the Fayette Circuit Action, the Fayette Circuit Court recently denied the Wains' *Motion To Vacate Or Stay Orders Dated April 19, 2024 And August 19, 2024, Still Designating The Wains As Debtors To Central Bank & Trust Co. Over Three Years After The "Order Confirming Report Of Sale, For Delivery Of Deed, And Partial Distribution On Proceeds."* A copy of this order is attached as Exhibit H. It also sanctioned the Wains for bringing

repetitive and frivolous filings. The Wains have since filed a lawsuit against the judge who entered that order. *See Wains v. Bunnell et al.*, Case No. 5:24-cv-305-GFVT (E.D. Ky.).

17. The Wains filed for bankruptcy protection hours before they were to appear for judgment debtor exams ordered in the Fayette Circuit Court Action.

18. The Judgment has not been satisfied, and the Wains remain indebted to Central Bank.

19. Further the Affiant sayeth naught.

Dated this December 20, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct. Executed on December 20, 2024.

Tim R. Wiseman

Timothy R. Wiseman

*4882-5580-4052.1*

# EXHIBIT "A"

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

CENTRAL BANK & TRUST CO. PLAINTIFF

V. **FIRST AMENDED COMPLAINT** NO. 19-CI-00812

DOUGLAS A. WAIN;
ELISE WAIN; and DITECH
FINANCIAL LLC, successor by merger
to GREEN TREE SERVICING LLC DEFENDANTS

**** **** **** ****

Comes the Plaintiff, Central Bank & Trust Co. (hereinafter "Central Bank", by counsel, and for its cause of action states as follows:

1. Central Bank is a Kentucky corporation with its principal office address being 300 W. Vine Street, Lexington, Kentucky 40507.

2. The Defendants, Douglas A. Wain and Elise Wain (hereinafter, the "Wains"), reside at 2711 Barbados Lane, Lexington, Fayette County, Kentucky 40509.

3. The Defendant, Ditech Financial LLC, successor by merger to Green Tree Servicing LLC (hereinafter "Ditech Financial"), is a foreign limited liability company, which is active and in good standing with the office of the Kentucky Secretary of State. Its principal office address is 1100 Virginia Drive, Suite 100A, Fort Washington, Pennsylvania 19034. Its registered agent is C. T. Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

4. On or about June 28, 2006, the Wains executed and delivered to Central Bank a Gold Equity Line Agreement (the "Agreement") in the principal amount of $350,000.00, with interest and payments as set out therein. A true copy of the Agreement is attached hereto, and designated as Exhibit A.

AMB : 000001 of 000013

NOT ORIGINAL
DOCUMENT
12/18/2024 04:32:06
PM
88890-103

5. On or about June 28, 2006, in order to secure payment of the Agreement, the Wains executed and delivered to Central Bank a certain Gold Equity Line Mortgage (the "Mortgage") by which the Wains mortgaged to Central Bank certain real property known as 2711 Barbados Lane, Lexington, Fayette County, Kentucky (the "Property"), which is more particularly described in the Mortgage, a true copy of which is attached hereto and designated as Exhibit B.

6. The Mortgage was lodged of record in the office of the Fayette County Clerk on July 5, 2006 in Mortgage Book 5765 at Page 593.

7. The Mortgage constitutes a lien upon the Property that is valid and enforceable to secure payment of the Agreement.

8. On or about March 5, 2008, Central Bank executed a certain Subordination Agreement by which it agreed to subordinate its Mortgage to that certain mortgage dated March 5, 2008 between Central Bank & Trust Co. d/b/a Central Bank Mortgage Co. and the Wains. A true copy of said Subordination Agreement is attached hereto and designated as Exhibit C.

9. The Defendants have defaulted under the terms of the Agreement leaving an unpaid balance due and owing thereon to Central Bank of $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

10. It is provided pursuant to the terms and conditions set forth in the Agreement and the Mortgage that Central Bank is entitled to recover its court costs and reasonable attorneys' fees in connection with enforcement of this obligation.

11. It is further provided in the Agreement and the Mortgage that upon default Central Bank may enforce same by foreclosure of the Mortgage and sale of the Property.

12. The Property cannot be divided without materially impairing its value and the interest of the parties thereto and the Property should therefore be sold in its entirety with the proceeds of such sale, after payment of court costs, expenses of sale and any unpaid

000002 of 000013

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

delinquent *ad valorem* taxes, being distributed to the lienholders herein, including Central Bank, by priority as determined by this Court.

13. Central Bank is informed and asserts that the following Defendants may be claiming an interest in the Property:

(a) The Wains, by virtue of that certain Deed recorded in the office of the Fayette County Clerk on April 1, 1991 in Deed Book 1580 at Page 347; and

(b) Ditech Financial (successor by merger to Green Tree Servicing LLC), by virtue of that certain Assignment of Mortgage recorded in the office of the Fayette County Clerk on April 27, 2014 in Miscellaneous Book 512 at Page 631, relative to that certain Mortgage originally held by Central Bank & Trust Co., d/b/a Central Bank Mortgage Co., recorded in the office of the Fayette County Clerk in Mortgage Book 6319 at Page 226, which was subsequently assigned to CitiMortgage, Inc.

14. The Defendants should be required to appear in this action and assert all claims they have in the Property, if any, or be forever barred.

**WHEREFORE** Central Bank demands as follows:

1. Judgment against the Defendants, Douglas A. Wain and Elise Wain, jointly and severally, in the amount of $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

2. That Central Bank be adjudged to have a valid and enforceable mortgage lien on the Property securing the indebtedness as set forth herein.

3. That the Property be sold under proper orders of this Court; that the mortgage lien of Central Bank be recognized, established and enforced by the sale of the Property and that the proceeds of such sale, after payment of court costs, expenses of sale and any unpaid delinquent *ad valorem* taxes, be distributed to the lienholders, including Central Bank, in accordance with their respective priorities as determined by this Court.

CME : 000003 of 000013

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

4. That the Wains be adjudged jointly and severally liable to pay to Central Bank any deficiency which may remain after the sale of the Property and the application of the sale proceeds to any Judgment awarded herein to Central Bank.

5. That the Defendants be ordered to come forth and assert their claims in and to the Property, if any, or be forever barred.

6. That it be awarded its reasonable attorneys' fees and its costs herein expended, together with all other relief to which it may appear entitled.

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
Phone: (859) 231-3000

By: ______________________
GREGORY D. PAVEY
ATTORNEYS FOR PLAINTIFF

**VALIDATION NOTICE**

Pursuant to 15 U.S.C. Section 1692g(a), take notice that:

1. The amount of the claimed debt is $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

2. The name of the creditor to whom the debt is owed is Central Bank & Trust Co.

3. Unless you dispute the validity of the above debt, or any portion thereof, within 30 days after your receipt of this Notice, the debt will be assumed to be valid by us.

4. If you notify our office in writing within 30 days of your receipt of this Notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any Judgment that may be of record against you. We will mail the verification or copy of Judgment to you.

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

5. Upon your written request to our office within 30 days of your receipt of this Notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed above.

6. This is a communication under the Federal Fair Debt Collection Practices Act. Stoll Keenon Ogden PLLC ("SKO") may be deemed a debt collector under said Act. SKO is attempting to collect the debts referred to herein, or collect information about the consumer-debtor. Any information obtained by SKO or the creditor will be used for such purposes.

rdh/ 100443.156618
Doc#8069946.1

AMB : 000005 of 000013

NOT ORIGINAL DOCUMENT
12/18/2024 04:32:06 PM
88890-103

GEL Agreement

| Borrower | Lender |
|---|---|
| Douglas A Wain<br>Elisa Wain<br>2711 Barbados Ln<br>Lexington KY 40509-9508<br>**Borrower's Name and Address**<br>"You" means each borrower above, jointly and severally. | **Central Bank**<br>Central Bank & Trust Co.<br>300 West Vine Street<br>Lexington, KY 40507<br>Member FDIC<br>**Lender's Name and Address**<br>"We" or "us" means lender named above. |
| No. [redacted]4885<br>Date June 28th, 2006<br>Line of Credit $ 350,000.00 | Maturity Date June 28th, 2021<br>Billing Cycle Ends 6th day of every month<br>Payment Date is 25 days from the end of each cycle |

## Gold Equity Line Agreement

**GENERALLY:** This is an agreement about your home equity line of credit. Many of the terms we use in this agreement have specific meanings. The term "loan account balance" means the sum of the unpaid principal of loans, fees, charges and advances made under this plan, plus unpaid but earned finance charges, plus any credit or mortgage insurance premiums that are due. "Line of Credit" means the maximum loan account balance we will ordinarily allow you to owe us under this plan at any time.

If any term of this agreement violates any law or for some other reason is not enforceable, that term will not be part of this agreement. This agreement is subject to the laws of the Commonwealth of Kentucky.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

**REQUESTING A LOAN:** You request a loan under this plan whenever you:

a. Write a check using one of the special checks you have for that purpose.
b. Use your GOLD EQUITY LINE card to make a purchase OR request a cash advance.

**HOW THE LOAN IS ADVANCED:** When you request a loan, subject to any limitations contained in this agreement, we will advance exactly the amount you request. We will advance the money directly to you, or pay a designated third person or account, via check or credit card, depending on how we agree to make the advance. We will record the amount as a loan in your loan account. We will not ordinarily grant any request for a loan which would cause your loan account balance to be greater than the Line of Credit listed above. Also, we will not ordinarily grant any request for a loan if payments on the Line of Credit are past due or if any other defaults exist under the terms of this agreement. We may at our option, grant such requests without obligating ourselves to do so in the future.

**HOW THE FINANCE CHARGES ARE COMPUTED:**
(A) Imposition of FINANCE CHARGES as to checks and purchases made with card (hereafter referred to as "Purchases") charged to your account:
(1) Application of FINANCE CHARGES begins on the date in which a Purchase posts to your account. The FINANCE CHARGE is imposed so long as the Purchase remains unpaid.
(2) ~~Average Daily Balance of Purchases (including New Purchases).~~ To figure and impose any FINANCE CHARGE, we will apply the daily periodic rate shown on the face of the Monthly Periodic Statement to the "Average Daily Balance of Purchases" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Purchases" we take the beginning balance of your Purchases each day, add any new Purchases and subtract payments or credits, unpaid Finance Charges, and any other charges. This gives us the daily balance of Purchases. Then, we add up all the daily balances of Purchases for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "Average Daily Balance of Purchases."
(B) Imposition of FINANCE CHARGES as to CASH ADVANCES charged to your account:
(1) Application of FINANCE CHARGES begins on the date in which a CASH ADVANCE transaction is made on your account. The FINANCE CHARGE is imposed so long as the CASH ADVANCE balance remains unpaid.
(2) Average Daily Balance of Cash Advances (including New Cash Advances). To figure and impose any FINANCE CHARGE, we will apply the daily periodic rate shown on the face of the monthly Periodic Statement to the "Average Daily Balance of Cash Advances" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Cash Advances" we take the beginning balance of Cash Advances each day, add any new Cash Advances and subtract any payments or credits, unpaid Finance Charges, and any other charges. This gives us the daily balance of Cash Advances. Then, we add up all the daily balances of Cash Advances for the billing cycle and divide the total by the number of days in the billing cycle. This gives the "Average Daily Balance of Cash Advances."

The daily periodic rate of FINANCE CHARGE is .0219 % which is equal to an ANNUAL PERCENTAGE RATE of 8.000 %. The Annual Percentage Rate includes interest and not other costs.

**VARIABLE RATE:** The ANNUAL PERCENTAGE RATE may change, and will be 00.00 percentage points above the following "base rate": the highest prime rate at large U.S. money center banks that is published in The Wall Street Journal. The ANNUAL PERCENTAGE RATE may increase if this "base rate" increases. An increase will take effect on the first business day of each billing period. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The ANNUAL PERCENTAGE RATE will not increase more often than once a month. A decrease will have the opposite effect of an increase disclosed above. Changes to the ANNUAL PERCENTAGE RATE will affect the entire loan account balance.

If the base rate changes more frequently than the ANNUAL PERCENTAGE RATE, we will always use the previous month's last published base rate to determine the new ANNUAL PERCENTAGE RATE. In such a case, we will ignore any changes in the base rate that occur between ANNUAL PERCENTAGE RATE adjustments.

The "ANNUAL PERCENTAGE RATE" referred to in this section is the annual rate which corresponds to the periodic rate applied to the balance as described above. This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 21%, and will never exceed the highest allowable rate for this type of agreement as determined by applicable state or federal law.

**HOW TO REPAY YOUR LOANS:** During the term of the agreement, you will receive monthly periodic statements detailing the activity in the account and the minimum payment required (due 25 days after the statement date). On or before each monthly payment date, you agree to make a minimum payment to reduce your debt. The minimum payment amount is 0 % of your loan account balance on the last day of the billing cycle or the accrued finance charges, whichever is greater. If you have been assessed an annual fee, late charge fee or if the account is overlimit or if there are any past due amounts, these amounts will be added to your minimum payment amount.

**FINAL PAYMENT:** On the maturity date listed above, you must pay the amount of any remaining loan account balance outstanding. Paying the minimum payment amount monthly may not fully repay the principal that is outstanding on your line. At that time you may be required to pay the entire balance in a single balloon payment. (The amount of your line of credit, the timing of your payments and your pattern of advances all affect whether you will have to make such a payment.)

If you have any loan account balance at that time, we are not obligated to refinance your account, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**ADDITIONAL REPAYMENT TERMS:** If your loan account balance on a payment date is less than the minimum payment amount, you must pay the loan balance plus fees that have been assessed.

If you fail to make a payment, we may, but are not required to, advance money to you to make the payment. All the terms of this agreement would apply to such a loan.

You can pay off all of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic minimum payment.

The amounts you pay will first reduce the finance charges associated with your account, then will reduce miscellaneous charges, cash advances, and purchases.

☐ **AUTOMATIC WITHDRAWAL:** If checked, you authorize us to automatically withdraw your payment from your personal checking account with us. The minimum payment amount indicated on your statement will be deducted two business days after the payment due date. If your checking account does not have enough money in it to make the minimum payment, we may, but are not required to, lend you money to make the payment. All terms of this agreement will apply to such a loan. If your loan account balance is less than the minimum payment amount, we will withdraw only the amount necessary to reduce your loan account balance to zero.

**SECURITY:** To secure the payment of what you owe, any extension or renewals thereof and all other existing and future indebtedness you may have to us (whether direct, indirect, absolute or contingent), you do hereby grant to us a security interest in all money and other property held by us on deposit, in safekeeping or otherwise for your account or to your credit or in which you have an interest. Collateral securing other loans you have with us may also secure loans under this agreement.

We have also secured your obligations under this plan by taking a mortgage lien dated 06/28/2006 on your personal residence located at:
2711 Barbados LN Lexington KY 40509

Filing Fees $ .00

**You may buy property insurance from anyone you want who is acceptable to us.**

**CHANGING THE TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this agreement. However, we may change the terms in the following circumstances:

- We may change the index and margin if the original index described above becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this agreement.

If we are required to send notice of a change in terms, we will send the notice to your address listed above (you should inform us of any change in address).

See reverse for information regarding suspension of credit and reduction of credit limit.

**ADDITIONAL CHARGES:** You agree to pay the following additional charges:

- A fee of $20.00 per year in order to participate in this plan.
- A late charge on any payment not paid when due of $5.00.
- Closing Costs

| | |
|---|---|
| Appraisal | $ .00 |
| Attorney/Title Fees | $ .00 |
| Flood Hazard Determination | $ .00 |
| Official Fees | $ .00 |
| Other | $ .00 |

**ATTORNEY'S FEES:** You agree to pay us, if you default, all court and other collection costs incurred by us, including reasonable attorney's fees (if we refer the collection to an attorney not a salaried employee of ours).

**NOTICE:** See the reverse side for additional terms and for information about your rights in the event of a billing error.

**SIGNATURES:** By signing below, you agree to the terms on both sides of this agreement and you promise to pay any amounts you owe under this agreement. You also state that you received a completed copy of the agreement on today's date.

Signature ______________________
Douglas A Wain

Signature ______________________
Elisa Wain

EXHIBIT
A

AMB : 000006 of 000013

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

HEL Agreement

## ADDITIONAL TERMS

**DEFAULT:** You will be in default on this agreement if any of the following occur. (1)You engage in fraud or material misrepresentation, by your actions or failure to act, in connection with any phase of this home equity line of credit; (2)You do not meet the repayment terms of this agreement; (3)Your action or inaction adversely affects the collateral or our rights in the collateral, including but not limited to, (a)failure to maintain required insurance on the dwelling, (b) your transfer of the property, (c) failure to maintain the property or use of it in a destructive manner; (d) commission of waste (e) failure to pay taxes on the property or otherwise fail to act and thereby cause a lien to be filed against the property that is senior to our lien; (f) death; (g) the property is taken through eminent domain,(h) if you die, (i) a judgment is filed against you and subjects you and the property to action that adversely affects our interest, or (j) a prior lien holder commences a foreclosure or forecloses on the property and as a result, our interest is adversely affected.

**REMEDIES:** We may terminate your account, require you to pay the entire outstanding balance in one payment and charge you fees related to the collection of the amount owing, including attorney's fees, if you are in default in any manner described above. In that instance, we may take other action short of termination. If you fail to maintain required property insurance and we purchase insurance, we will charge you the cost of the insurance by adding such to the principal balance of your account. If we elect to terminate and accelerate the amounts owing on your account, we may use our right of set-off, unless prohibited.

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

**SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:**
We may prohibit you from obtaining additional extensions of credit, or reduce your credit limit if:

(1) The value of the dwelling securing this home equity line of credit declines significantly below its appraised value for purposes of this line;
(2) We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances;
(3) You are in default of a material obligation of this agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
(4) A government action prevents us from imposing the annual percentage rate provided for in this agreement;
(5) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity line;
(6) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this plan; or
(7) A regulatory agency has notified us that continued advances would constitute an unsafe business practice.

In the event that we suspend your right to additional advances or reduce your credit line, we will send you notice of our decision at the address listed on the front of this agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this plan, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

**CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this plan. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us in Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve you rights.
In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't't make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### LIABILITY FOR UNAUTHORIZED
### USE OF THE GOLD EQUITY LINE CARD

You will notify Central Bank immediately upon discovering loss, theft, or unauthorized use of your GOLD EQUITY LINE CARD. You may be liable for the unauthorized use of your GOLD EQUITY LINE CARD. You will not be liable for unauthorized use that occurs after you notify us at the address on the other side of this form, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
(a)You must have made the purchase in your home state or if not within your home state within 100 miles of your current mailing address; and
(b)The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Foreign Transactions. The exchange rate between the transaction currency and the billing currency used for processing international transactions is a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government – mandated rate in effect for the applicable central processing date. The International Service Assessment (ISA) Fee, which takes effect April 2, 2005, will assess a fee equal to 1.0% of the transaction amount for all cross-currency transactions. Holder agrees to pay charges and accept credits for the converted transaction amounts in accordance with the terms of this paragraph.

AMB : 000007 of 000013

NOT ORIGINAL DOCUMENT
12/18/2024 04:32:06 PM
88890-103

BOOK 5765 PAGE 593

Central Bank

# GOLD EQUITY LINE MORTGAGE

THIS MORTGAGE is made this 28TH day of JUNE, 20 06 between the Mortgagor, Douglas A. Wain and Elisa Wain, husband and wife (hereafter singly or collectively called the "Borrower"), and the Mortgagee, Central Bank & Trust Co., a Kentucky corporation, whose address is 300 W. Vine Street, Lexington, Kentucky 40507 (herein "Lender"). Fayette County

WHEREAS, Borrower is indebted to Lender, pursuant to Borrower's Gold Equity Line Agreement and terms and conditions contained therein in which the maximum principal indebtedness is $ 350,000.00, which indebtedness is evidenced by Borrower's Gold Equity Line Agreement and terms and conditions dated 6/28/06 (herein "Note"), providing for installments of principal and interest and miscellaneous fees, with the balance of the indebtedness, if not sooner paid, due and payable fifteen (15) years from date, said maturity date being 6/28/2021

TO SECURE to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"), and (c) any other indebtedness owed to Lender, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Fayette, Commonwealth of Kentucky:

See Exhibit A attached hereto and incorporated herein by reference

which has the address of 2711 Barbados Lane, (Street) Lexington (City)
Kentucky 40509 (Zip Code) (herein "Property Address"):

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due principal and interest indebtedness evidenced by the Note and late charges, fees, costs and other charges as provided in the Note.
2. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement creating a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.
3. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

   The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement creating a lien which has priority over this Mortgage.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

   If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.
4. ***Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.*** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.
5. ***Protection of Lender's Security.*** If Borrower fails to perform the covenants and agreements contained in the Note or this Mortgage, or fails to pay any insurance, taxes, assessments and other charges, fines and impositions as required herein, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law

   Any amounts disbursed by Lender pursuant to this paragraph 5 with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder.
6. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.
7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.
8. ***Borrower Not Released; Forbearance by Lender Not a Waiver.*** Extension of the time for payment or modification or amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

RETURN TO:

McBRAYER, McGINNIS, LESLIE & KIRKLAND, PLLC

Form #08-0020 Rev. 6/00

EXHIBIT B



AMB : 000008 of 000013

NOT ORIGINAL
DOCUMENT
12/18/2024 04:32:06
PM
88890-103

9. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective heirs, personal representatives, successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14 hereof. All covenants and agreements of the Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

10. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

11. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the Commonwealth of Kentucky. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end, the provisions of the Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

12. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

13. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

14. **Transfer of the Property.** The Borrower will not, either directly or indirectly, convey or contract to convey the Property or any interest therein, to any other party, or further encumber the Property, or any interest therein, in any manner without first obtaining the written consent of the Lender. Should a creditor, receiver or trustee in bankruptcy obtain any interest in the Property, or should any party obtain an interest by levy, execution, attachment, or any means other than inheritance or devise, the entire principal balance of the Note secured by this Mortgage, together with interest and service charge accruing thereon, shall become immediately due and payable at the option of the Lender.

15. **Acceleration and Remedies.**
(a) Upon the Borrower's failure to promptly pay any taxes, assessments, and other charges or impositions as required herein, or effect insurance as provided herein, or upon Borrower's failure to pay any installment payment of principal or interest on said Note after the same shall become due or upon the Borrower's violation of any of the terms or conditions of said Note or of this Mortgage, then Lender may, at its option, declare all sums secured by this Mortgage to be immediately due and payable, and proceed forthwith to collect said Note and enforce this Mortgage. Once this Mortgage has been accelerated by virtue of this acceleration clause, subsequent payment of arrears shall not cure the default unless expressly agreed to in writing by the Lender. Lender shall be entitled to collect in any proceeding to enforce this Mortgage all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts, title reports and other costs allowed by law.
(b) If foreclosure proceedings of any first or second mortgage or any junior or senior lien or encumbrance shall be instituted, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable, and the Note evidencing same, as being immediately due and payable, and may start such proceedings as may be necessary or advisable to protect its interest in the premises, including the appointment of a receiver, and its lien herein granted upon rents, issues and profits shall be prior to the lien or of any junior encumbrancer or lien holder upon the rents, issues or profits collected or to be collected by a receiver appointed at the instance of any junior encumbrancer or lien holder.

16. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
Upon acceleration under paragraph 15 hereof or abandonment of Property, and at any time prior to the expiration of any period of redemption following sale of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

17. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage. Borrower shall pay all costs of recordation, and releasing, if any.

18. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

19. **Future Advances.** Upon request of Borrower, Lender at Lender's option prior to release of this Mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by separate promissory notes(s) or advanced pursuant to the Note. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the amount of the Note plus US $ -0- . All Future Advances secured by this Mortgage shall be due and payable on or before the maturity date of the indebtedness evidenced by the Note.

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

[signature] —Borrower
Douglas A. Wain

[signature] —Borrower
Elisa Wain

STATE OF KENTUCKY)
)SS
County of Fayette )

This foregoing instrument was acknowledged before me this June 28th 2006
(Date)

by Douglas A. Wain and Elisa Wain, husband and wife
(Person Acknowledging)

My commission expires 8/3/08 [signature]
Notary Public

This instrument was prepared by Mary E. Haggin of McBrayer, McGinnis, Leslie & Kirkland, PLLC
201 East Main Street, Suite 1000, Lexington, Kentucky 40507, (859) 231-8780

(Space Below This Line Reserved for Lender and Recorder)

AMB : 000009 of 000013

NOT ORIGINAL
DOCUMENT
12/18/2024 04:32:06
PM
88890-103

EXHIBIT A

Being all of Lot No. 17, Unit 1, of the Greenbriar Estates Subdivision, to the City of Lexington, Fayette County, Kentucky as shown by map or plat thereof of record in Plat Cabinet A, Slide 7, in the office of the Fayette County Clerk; said premises being known and designated as 2711 Barbados Lane, Lexington, Kentucky; and

Being the same property conveyed to Douglas A. Wain and Elisa Wain, husband and wife, by deed dated March 26, 1991 of record in Deed Book 1580, Page 347, in the office of the Fayette County Clerk.

NOT ORIGINAL DOCUMENT 12/18/2024 04:32:06 PM 88890-103

**MORTGAGE BOOK 5765 PAGE 596**

I, Donald W Blevins, County Court Clerk of Fayette County, Kentucky, hereby certify that the foregoing instrument has been duly recorded in my office.

Donald W Blevins

By: DOUG BRADLEY , dc

200607050120

July 5, 2006 9:15:40 AM

Fees $12.00 Tax $.00

Total Paid $12.00

**THIS IS THE LAST PAGE OF THE DOCUMENT**

4 Pages

593 - 596

AMB : 000011 of 000013

NOT ORIGINAL DOCUMENT
12/18/2024 04:32:06 PM
88890-103

SUBORDINATION AGREEMENT

For $1.00 and other good and valuable consideration the undersigned does hereby subordinate and make inferior that certain mortgage executed by Douglas A. Wain and Elisa Wain, husband and wife, dated June 28, 2006, and in the original principal sum of $350,000.00, in favor of Central Bank & Trust Co., with a principal address of 300 West Vine Street, Lexington, Kentucky, 40507, and recorded in Mortgage Book 5765, Page 593, of the Fayette County Clerk and the debt secured thereby; to that certain mortgage made by Douglas A. Wain and Elisa Wain, husband and wife, in favor of Central Bank & Trust Co., d.b.a. Central Bank Mortgage Co., with a principal address of 300 West Vine Street, Lexington, Kentucky, 40507, dated March 5, 2008, and recorded in Mortgage Book 6319, Page 226, in the office of the Fayette County Clerk securing a note in the amount of $417,000.00.

Fayette County Clerk Recording Related Documents
From 205
To 207

Dated in Lexington, Kentucky, this 5 day of March, 2008.

Central Bank & Trust Co., a Kentucky Banking Corporation
By: [signature]
Title: Branch Manager

STATE OF KENTUCKY)
COUNTY OF FAYETTE)

The foregoing instrument was acknowledged before me this 5 day of March, 2008, by Dayton Hatcher as Branch Manager of Central Bank & Trust Co., a Kentucky Banking Corporation, on behalf of said Corporation.

My Commission Expires: 8/9/09

Anabelle Bertrand
NOTARY PUBLIC, STATE OF KENTUCKY

NOTARY PUBLIC ANABELLE BERTRAND STATE AT LARGE KENTUCKY

This Instrument Prepared By: [signature]
Mary Estes Haggin
McBrayer, McGinnis, Leslie, & Kirkland PLLC
201 East Main Suite 1000
Lexington, Kentucky 40507
859-231-8780

RETURN TO:

McBRAYER, McGINNIS, LESLIE & KIRKLAND, PLLC
201 EAST MAIN ST., STE. 1000
LEXINGTON, KY 40507

CLERK'S NOTE:
Quality of book pages & scanned images reflects original document presented

EXHIBIT C

NOT ORIGINAL DOCUMENT
12/18/2024 04:32:06 PM
88890-103

I, Donald W Blevins, County Court Clerk of Fayette County, Kentucky, hereby certify that the foregoing instrument has been duly recorded in my office.

Donald W Blevins

By: DOUG BRADLEY , dc

200803110207

March 11, 2008 10:00:00 AM

Fees $13.00 Tax $.00

Total Paid $13.00

THIS IS THE LAST PAGE OF THE DOCUMENT

2 Pages

239 - 240

AMB : 000013 of 000013

Case 1:24-bk-11314-MB Claim 9-1 Part 4 Filed 10/16/24 Desc
Proof of Claim Page 2 of 5

# EXHIBIT "B"

RECEIVED
JAN 21 2021

ENTERED
ATTEST VINCENT R[illegible]
JAN 20 2021
FAYETTE CIRCUIT CLERK
BY ______ DEPUTY

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

CENTRAL BANK & TRUST CO. PLAINTIFF

V. NO. 19-CI-00812

**PARTIAL SUMMARY JUDGMENT, JUDGMENT ON THE PLEADINGS, AND ORDER OF SALE**

DOUGLAS A. WAIN;
ELISA WAIN; and DITECH
FINANCIAL LLC[1], successor by merger
to GREEN TREE SERVICING LLC DEFENDANTS

**** **** **** ****

THIS matter having been brought before the Court upon the motion of the Plaintiff, Central Bank & Trust Co. (hereinafter "Central Bank" or the "Bank"), for Partial Summary Judgment, Judgment on the Pleadings and Order of Sale (collectively the "Motion"), under Kentucky Civil Rules of Procedure 56 on the grounds, among others, that there is no genuine issue of material fact and it is entitled to judgment as a matter of law; the Court having conducted a hearing and heard arguments of counsel; and the Court being sufficiently advised and having thoroughly reviewed and considered the evidence, pleadings, papers and record herein, the Court finds, holds and rules as follows:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The following Defendants were each duly served with Summons according to law and service on each Defendant is approved:

[1] On May 1, 2020, Shannon O'Connell Egan and Nathan H. Blaske of Dinsmore & Shohl LLP, counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez"), assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC filed an entry of appearance, submitting NewRez to the jurisdiction of this Court.

| DEFENDANT | METHOD OF SERVICE | DATE SERVED | ANSWER FILED |
|---|---|---|---|
| Douglas A. Wain | Fayette Co. Constable | 03-26-19 | 04-19-19 and 12-04-19 |
| Elisa Wain | Fayette Co. Constable | 03-26-19 | 04-19-19 and 12-04-19 |
| Ditech Financial LLC, successor by merger to Green Tree Servicing, LLC | Certified Mail to Registered Agent | 11-18-19 | 12-02-19 |
| NewRez LLC d/b/a Shellpoint Mortgage Servicing, assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC | | | 05-01-20 (Entry of Appearance) |

Venue is proper as the real estate sought to be foreclosed lies within the Court's jurisdictional boundaries.

The Court finds that all necessary parties are properly before the Court and the Court has subject matter jurisdiction over the issues in this case.

Central Bank has met its burden of proof on its Motion and is entitled to judgment under Civil Rule 56 and an order of sale of the subject Property, as hereinafter defined, as herein awarded below.

**JUDGMENT**

**IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1. The Motion of Plaintiff, Central Bank is sustained in its entirety.

2. Central Bank is awarded Judgment *in personam* against the Defendants, Douglas A. Wain and Elisa Wain (collectively, the "Wains"), jointly and severally, in the amount of $358,412.72, with interest thereon at the variable rate provided by the subject equity line agreement from March 6, 2019 until paid (currently 3.25% per annum, $31.13 per diem), late charges and such other costs, expenses and damages, including collection expenses, incurred or to be incurred, and attorneys' fees in an amount to be determined by the Court (hereinafter referred to as the "Judgment Amounts").

3. Securing the Judgment Amounts, Central Bank is adjudged to have a valid, enforceable, second mortgage lien on the certain real property described in the Complaint, Amended Complaint and the mortgage attached thereto as 2711 Barbados Lane, Lexington, Fayette County, Kentucky, which is more particularly described in **Exhibit A** attached hereto and incorporated herein by reference (the "Property"), which is only subject to the valid first mortgage lien of the Defendant, Ditech Financial, LLC ("Ditech"), successor by merger to Green Tree Servicing LLC, and/or its assignee, NewRez; and unpaid, delinquent *ad valorem* taxes, if any. Neither Ditech nor NewRez has filed or asserted a counterclaim or cross-claim in this action and neither party responded or disputed the Bank's Motion.

4. The duties and obligations of the Wains under the Gold Equity Line Agreement and the Gold Equity Line Mortgage (attached as Exhibits "A" and "B," respectively, to the Bank's Amended Complaint) shall be fully enforced by this Judgment.

**ORDER OF SALE**

5. The Property is a single residential lot with improvements thereon that cannot be divided without materially impairing the value thereof or the interest of the parties thereto, and the Property shall be sold **AS IS, WITH FAULTS, WITHOUT WARRANTIES OF ANY KIND**, as a whole for the purpose of enforcing the Judgment and Central Bank's mortgage lien herein adjudged against the Property.

6. The Property shall be immediately referred to the Master Commissioner of this Court for sale and shall be sold by the Master Commissioner upon the conditions set forth in RFCC 26(b)(4), which are incorporated herein by reference, and as follows:

A. The Master Commissioner is authorized, ordered and directed to advertise and appraise the Property and to offer the Property and any improvements and fixtures thereon at public auction, on the 8th day of February, 2021, at or about the hour of N/A, local time. The auction shall be held in person or, due to Covid-19, on-line on a secure, designated auction website open to the public.

B The Property shall be sold as a whole to the highest bidder on terms of 10% of the purchase price paid at the time of the sale with the balance to be paid within thirty (30) days, and, pursuant to KRS 426.705, any purchaser shall be required to execute bond with surety thereon to be approved by the Master Commissioner to secure the unpaid portion of the purchase price, with the bond to bear interest at the rate the judgment bears (3.25% per annum) from date of sale until paid, and the bond shall have the same force and effect as a judgment and shall remain and be a lien on the Property until fully paid.

C. The purchaser shall have the privilege of paying the entire purchase price in cash at time of sale or paying said bond before maturity by paying the principal amount thereof together with all interest accrued thereon until the date of said payment.

D. Before making sale of the Property, the Master Commissioner shall advertise the aforesaid time, terms and on-line location of the sale, together with a description of the Property to be sold, approximately 7 to 21 days prior to the date of sale by inserting an advertisement in a newspaper having general circulation in Fayette County.

E. Before making sale of the Property, the Master Commissioner shall have the Property appraised by two intelligent disinterested housekeepers of Fayette County, Kentucky, not related to any of the parties of this action. The appraisers shall be sworn by the Master Commissioner before making such appraisal and they shall return their appraisals in writing to the Master Commissioner, same to be a part of the record in this case.

F. The Master Commissioner shall, after making said sale, report same to this Court for further action herein.

G. In the event the purchaser of the Property fails to comply with the above terms of sale, then in such event the Master Commissioner shall immediately resell the Property upon further order of this Court, upon the same terms and conditions as hereinabove set forth.

H. The purchaser at the Master Commissioner's sale shall take the Property free and clear of the claims of the parties to this action and all existing liens recorded after the recording of Central Bank's Lis Pendens Notice, but subject to the following:

(1) Current year real estate taxes affecting the Property for which the purchaser shall take no credit on the purchase;

(2) Easements, restrictions and stipulations of record;

(3) Any matters that would be disclosed by an accurate survey or inspection of each of the Properties; and

(4) Any current assessments for public improvements levied against the Property.

I. In the event Central Bank purchases the Property, subparagraphs (B) and (C) of this paragraph shall not apply; provided, however, if Central Bank's bid exceeds its judgment amount, Central Bank will be required to pay the difference in full or provide deposit and pay interest until paid.

7. The Master Commissioner, the Court, and Central Bank shall not be deemed to warrant title of the Property to the purchaser.

8. Risk of loss shall pass to the successful bidder upon acceptance by the Master Commissioner of the final bid. The successful bidder/purchaser shall have an insurable interest in the purchased property immediately upon acceptance by the Master Commissioner of the final bid for the Property.

9. There are currently no delinquent *ad valorem* taxes due on the Property and therefore the proceeds of the sale shall be applied in the following order of priority:

A. The Master Commissioner's costs and fees;

B. The satisfaction of the mortgage lien of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC, and/or its assignee, NewRez LLC d/b/a Shellpoint

Mortgage Servicing, which is required to obtain Judgment herein prior to its obtaining any proceeds;

C. The satisfaction of Central Bank's mortgage lien as adjudicated herein, including reimbursement for its costs, expenses and attorneys' fees as set forth herein; and

D. Any remaining proceeds of the sale shall be held by the Master Commissioner until further order of this Court for distribution to the Defendants as their interests may appear.

10. In the event the Property sells for less than the Judgment Amounts awarded to Central Bank herein, after payment of court costs, and fees, expenses, and costs of sale, the Defendants, Douglas A. Wain and Elisa Wain, shall be jointly and severally liable to Central Bank for any deficiency amount(s) which may remain after the sale of the Property and application of the net sale proceeds due to Central Bank.

11. Jurisdiction is retained for such further orders and proceedings as may be necessary, including but not limited to, a determination of reasonable attorney's fees under numerical paragraph 3 of this Judgment and, with respect to future attorneys' fees, expenses and costs incurred during the post-judgment process, including any appeal of this Judgment, Central Bank may apply for additional fees, expenses and costs as may be incurred in the future upon proper application to the Court related to the enforcement, collection and preservation of this Judgment on appeal. Further, the Wains have asserted a counterclaim that may be pursued separately from Central Bank's claims, as set forth in the Bank's motion and memorandum of law.

12. This is a final and appealable Judgment, and there is no just cause for the delay in the entry thereof.

13. Pursuant to CR 77.04, the Circuit Court Clerk shall serve notice of the entry of this Judgment and Order of Sale.

DATED this 19 day of January, 2021.

/S/ KIMBERLY N. BUNNELL
A TRUE COPY
ATTEST, VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
BY ______ D.C.

JUDGE, FAYETTE CIRCUIT COURT

**TO BE ENTERED:**

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
Phone: (859) 231-3000

By: ______
GREGORY D. PAVEY
ATTORNEYS FOR CENTRAL BANK

**HAVE SEEN AND APPROVED:**

/s/ JAMES H. FRAZIER, III
HON. JAMES H. FRAZIER, III
MASTER COMMISSIONER,
FAYETTE CIRCUIT COURT

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing was duly served by mail this 20 day of Jan, 2021, to:

James H. Frazier, III, Esq.
201 E. Main Street, Suite 770
Lexington, Kentucky 40507
MASTER COMMISSIONER

Gregory D. Pavey, Esq.
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
ATTORNEYS FOR CENTRAL BANK

David W. Hemminger, Esq.
HEMMINGER LAW OFFICE, PSC
331 Townepark Circle, Suite 100-C
Louisville, Kentucky 40243
hemmingerlawoffice@gmail.com
ATTORNEY FOR DOUGLAS & ELISA WAIN

Paul M. Nalepka, Esq.
REISENFELD & ASSOCIATES LLC
3962 Red Bank Road
Cincinnati, OH 45227
KYE-Notifications@rslegal.com
ATTORNEYS FOR DITECH FINANCIAL, LLC,

Shannon O'Connell Egan
Nathan H. Blaske
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Shannon.Egan@dinsmore.com
Nathan.Blaske@dinsmore.com
ATTORNEYS FOR NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,
ASSIGNEE OF DITECH FINANCIAL, LLC

Vincent Riggs

CLERK, FAYETTE CIRCUIT COURT

rdh/ 100443.163845
Doc#8403596.4

## PROPERTY DESCRIPTION

Being all of Lot No. 17, Unit 1, of the Greenbriar Estates Subdivision, to the City of Lexington, Fayette County, Kentucky as shown by map or plat thereof of record in Plat Cabinet A, Slide 7, in the office of the Fayette County Clerk; said premises being known and designated as 2711 Barbados Lane, Lexington, Kentucky; and

Being the same property conveyed to Douglas A. Wain and Elisa Wain, husband and wife, by deed dated March 26, 1991 of record in Deed Book 1580, Page 347, in the office of the Fayette County Clerk.

**Parcel No. 22739900**

**EXHIBIT A**

Case 1:24-bk-11814-MB Doc 95-1 Filed 11/26/24 Entered 11/26/24 15:31:40 Desc
Order Pmt of DC Damages Page 1 of 3

# EXHIBIT "C"

RECEIVED
MAR 15 2021

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

CENTRAL BANK & TRUST CO. PLAINTIFF

V. NO. 19-CI-00812

**ORDER CONFIRMING REPORT OF SALE, FOR DELIVERY OF DEED AND PARTIAL DISTRIBUTION OF PROCEEDS**

ENTERED
ATTEST, VINCENT RIGGS, CLERK
MAR 12 2021
FAYETTE CIRCUIT CLERK
BY____________ DEPUTY

DOUGLAS A. WAIN;
ELISA WAIN; and DITECH
FINANCIAL LLC[1], successor by merger
to GREEN TREE SERVICING LLC DEFENDANTS

**** **** **** ****

This cause having been heard upon the Motion of the Plaintiff, Central Bank & Trust Co. (hereinafter "Central Bank"), and the Court being sufficiently advised and having considered the same;

It is hereby ORDERED as follows:

1. The Master Commissioner of the Fayette Circuit Court is hereby directed to deliver a Deed conveying fee simple title in the subject real property known as 2711 Barbados Lane, Lexington, Fayette County, Kentucky, a description of which is attached hereto as Exhibit A, to Pavel Moskvich, the purchaser of said property, who has paid the Master Commissioner the full purchase price.

2. The Master Commissioner is hereby directed to disburse his costs and fees from the sale proceeds as follows:

---

[1] On May 1, 2020, Shannon O'Connell Egan and Nathan H. Blaske of Dinsmore & Shohl LLP, counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez"), assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC, filed an entry of appearance, submitting NewRez to the jurisdiction of this Court. NewRez has filed a Motion to be substituted for Ditech Financial, LLC.

$630,003.00

| Master Commissioner | | | |
|---|---|---|---|
| (a) | Fees | $ 5,000.00 | |
| (b) | Appraisal | 350.00 | |
| (c) | Advertising | 57.52 | |
| (d) | Auctioneer Fee | 20,000.00 | |
| (e) | Report Fee: | 50.00 | |
| (f) | Deed Fee: | 50.00 | |
| (g) | Copies: | 7.00 | |
| (h) | Postage: | 3.06 | |
| Less Deposit Paid by Plaintiff | | < 550.00> | |
| Net due Master Commissioner | | $24,967.58 | |
| | | | < 24,967.58> |
| Balance to be held by the Master Commissioner until further Order of the Court | | | $605,035.42 |

3. It is further ordered that the Defendants, Douglas A. Wain and Elisa Wain, and/or any current occupant, shall vacate the Property within 14 days from March 5, 2021. Defendants/occupants shall not remove any fixtures or improvements to the Property as they are part of the mortgaged Property. ~~In the event the Defendants/occupants fail to vacate the Property as ordered, the Sheriff shall forthwith remove the Defendants/occupants from the Property without further order of the Court.~~ If the Defendants/occupants fail or refuse to vacate the Property as ordered, or if the Defendants/occupants remove any fixtures or improvements from the Property, they shall be subject to contempt of Court proceedings and damages.

4. The liens or interests of the parties hereto, and their successors in interest, and any *pendente lite* lienholder or claimant, existing against the Property herein are hereby released and discharged; provided, however, the mortgage liens of Central Bank and NewRez LLC d/b/a Shellpoint Mortgage Servicing, assignee of Ditech Financial LLC, shall attach to the sale proceeds held by the Master Commissioner in the same priority order of the original mortgage liens of each lender.

DATED this 12 day of March, 2021.

/S/ KIMBERLY N. BUNNELL
A TRUE COPY
ATTEST, VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
BY ______ D.C.

JUDGE, FAYETTE CIRCUIT COURT

**HAVE SEEN AND APPROVED:**

/s/ JAMES H. FRAZIER, III

JAMES H. FRAZIER III,
MASTER COMMISSIONER,
FAYETTE CIRCUIT COURT

**TENDERED BY:**

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000

BY: ______________________
GREGORY D. PAVEY, KBA 81049
ATTORNEYS FOR CENTRAL BANK

**HAVE SEEN**:

David W. Hemminger by permission GDP
DAVID W. HEMMINGER
ATTORNEY FOR DOUGLAS A. WAIN
AND ELISA WAIN

Shannon O'Connell Egan by permission GDP
SHANNON O'CONNELL EGAN
ATTORNEY FOR NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing was served by mail this ___ day of MAR 1 2 2021, 2021 to:

James H. Frazier, III, Esq.
201 E. Main Street, Suite 770
Lexington, Kentucky 40507
MASTER COMMISSIONER

Gregory D. Pavey, Esq.
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
ATTORNEYS FOR CENTRAL BANK

David W. Hemminger, Esq.
HEMMINGER LAW OFFICE, PSC
331 Townepark Circle, Suite 100-C
Louisville, Kentucky 40243
hemmingerlawoffice@gmail.com
ATTORNEY FOR DOUGLAS & ELISA WAIN

Paul M. Nalepka, Esq.
REISENFELD & ASSOCIATES LLC
3962 Red Bank Road
Cincinnati, OH 45227
KYE-Notifications@rslegal.com
ATTORNEYS FOR DITECH FINANCIAL, LLC,

Shannon O'Connell Egan
Nathan H. Blaske
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Shannon.Egan@dinsmore.com
Nathan.Blaske@dinsmore.com
ATTORNEYS FOR NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,
ASSIGNEE OF DITECH FINANCIAL, LLC

Kelli Shopshire, Esq.
2357 Huguenard Drive
Lexington, Kentucky 40503
ATTORNEY FOR PURCHASER

Pavel Moskvich
217 Red Cedar Drive
Nicholasville, Kentucky 40356

CLERK, FAYETTE CIRCUIT COURT

rdh/ 100443.163845
Doc#8462936.1

## PROPERTY DESCRIPTION

Being all of Lot No. 17, Unit 1, of the Greenbriar Estates Subdivision, to the City of Lexington, Fayette County, Kentucky as shown by map or plat thereof of record in Plat Cabinet A, Slide 7, in the office of the Fayette County Clerk; said premises being known and designated as 2711 Barbados Lane, Lexington, Kentucky; and

Being the same property conveyed to Douglas A. Wain and Elisa Wain, husband and wife, by deed dated March 26, 1991 of record in Deed Book 1580, Page 347, in the office of the Fayette County Clerk.

**Parcel No. 22739900**

## EXHIBIT A

# EXHIBIT "D"

RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0202-MR

DOUGLAS WAIN AND ELISA WAIN — APPELLANT

v.

APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00812

CENTRAL BANK AND TRUST COMPANY; DITECH FINANCIAL, LLC; NEWREZ, LLC, D/B/A SHELLPOINT MORTGAGE SERVICING, ASSIGNEE OF DITECH FINANCIAL, LLC — APPELLEES

OPINION
AFFRIMING

** ** ** ** **

BEFORE: ACREE, JONES, AND MAZE, JUDGES.

MAZE, JUDGE: Douglas and Eliza Wain (collectively, the Wains) appeal from a judgment and order of sale entered by the Fayette Circuit Court in favor of Central Bank & Trust Company (Central Bank). The Wains argue that there were genuine

RECEIVED
NOV - 9 2022

issues of material fact on their defense of unclean hands that precluded summary judgment. We agree with the trial court that the Wains failed to identify any facts which would have precluded Central Bank from foreclosing on the property. Hence, we affirm.

On June 28, 2006, the Wains and Central Bank executed a "Gold Line Equity Agreement" (the Agreement) in the principal amount of $350,000.00. The Agreement was secured by a second mortgage on their residence in Lexington. Beginning in August 2018, the Wains fell behind in their payments on the account. The parties agree that they engaged in discussions about options to bring the account current, but they disagree as to the content of those discussions.

The Wains point to correspondence between Douglas Wain and Central Bank employees Ashleigh Holden and Steve Hall. The Wains contend that they repeatedly asked for reconciliation statements showing the past-due amounts, but they did not receive a reply until November 2018. However, Central Bank points out that the Wains accessed their account online during this period and had ready access to the current information regarding the amounts due. The Wains also made several partial payments on the past due amounts through the online system.

On January 31, 2019, Hall sent a demand letter, advising the Wains that Central Bank had elected to accelerate payment and declare the entire loan

amount then due and owing. Douglas Wain sent a reply on February 11, acknowledging receipt of the demand letter but disputing the interest rate and credit for payments previously made. The Wains also requested that Central Bank reinstate the loan. On February 22, Hall responded that Central Bank would only allow reinstatement of the loan under certain conditions and directed the Wains to respond to the offer by March 1. Prior to that date, Douglas Wain responded to Hall and expressed an interest in getting current on the loan. However, he did not accept Central Bank's condition of accepting an agreed judgment.

Thereafter, on March 6, 2019, Central Bank filed the current action against the Wains for breach of contract and foreclosure on the encumbered property.[1] The Wains filed an answer and counterclaim, asserting an affirmative defense of unclean hands on the part of Central Bank. Specifically, the Wains alleged that Central Bank failed to negotiate in good faith. The Wains also asserted claims for breach of contract, fraud, violation of the Truth-in-Lending Act (TILA), 15 U.S.C.[2] § 1666a, and the Kentucky Consumer Protection Act, KRS[3] 367.110 *et seq.*

---

[1] Subsequently, Central Bank filed an amended complaint naming the first mortgage-holder.

[2] United States Code.

[3] Kentucky Revised Statutes.

Following a period of discovery, Central Bank moved for partial summary judgment, judgment on the pleadings, and an order of sale. In support of the motion, Central Bank pointed to the following facts to which the Wains had admitted or were otherwise unrefuted:

- The Wains executed and delivered the Agreement, secured by a Mortgage, to Central Bank in June 2006;

- The Wains had access, at all relevant times, to their account information, including their outstanding balance and payment due, via Monthly Statements and Central Bank's online system, CardManager;
- The Wains accessed CardManager many times and used it to submit partial payments;

- The Wains have defaulted in payments on the Agreement;

- The amount owed on the Agreement is $380,684.43, with interest thereon at a variable rate as provided in the Agreement, currently at $31.13 per diem from July 8, 2020, until paid, and such other costs, expenses including collection costs, taxes and damages that may be incurred or to be incurred by Central Bank; and

- The Agreement is secured by the Mortgage, which is valid and enforceable to secure payment of the Agreement.

The trial court conducted a hearing on the motion on December 11, 2020. After considering the briefs and arguments of counsel, and after noting the undisputed facts set forth above, the trial court granted summary judgment and an

order of sale on January 20, 2021. The trial court found that Central Bank had a valid and enforceable second mortgage on the Wains' property to which it was entitled to foreclose. The judgment awarded Central Bank $358,412.72, plus interest from March 6, 2019, plus costs and attorney fees. The order of sale directed the Master Commissioner to sell the property and apply the proceeds among the lienholders. The trial court subsequently entered an order confirming the Commissioner's Report of Sale. Following the sale but prior to the confirmation of the Commissioner's Report, the Wains filed their current appeal.[4]

The sole question presented on appeal is whether Central Bank was entitled to summary judgment as a matter of law. "The proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[5] 56.03. The record must be viewed in a light most favorable to the party

[4] The Wains did not file a *supersedeas* bond or seek to stay the Commissioner's Sale.

[5] Kentucky Rules of Civil Procedure.

opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

As discussed above, the Wains admitted that there was a valid mortgage on their property and that they were in default under the terms of the Agreement. However, the Wains argue that there were genuine issues of material fact which precluded summary judgment on their defense of unclean hands. The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct but does not operate to "repel all sinners from courts of equity." *Dunscombe v. Amfot Oil Co.*, 201 Ky. 290, 256 S.W. 427, 429 (1923). "The transaction with respect to which there was misconduct must be connected with the matter in litigation in order for the doctrine of unclean hands to apply." *Eline Realty Co. v. Foeman*, 252 S.W.2d 15, 19 (Ky. 1952). *See Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App. 2007).

"In a long and unbroken line of cases this court has refused relief to one, who has created by his fraudulent acts the situation from which he asks to be extricated." *Asher v. Asher*, 278 Ky. 802, 129 S.W.2d 552, 553 (1939). A trial

court's decision to invoke the equitable defense of the unclean hands doctrine rests within its sound discretion. *See Petroleum Exploration v. Pub. Serv. Comm'n of Kentucky*, 304 U.S. 209, 218, 58 S. Ct. 834, 839, 82 L. Ed. 1294 (1938). The doctrine will not be applied to all misconduct, as when "the plaintiff has engaged in conduct less offensive than that of the defendant." *Suter*, 226 S.W.3d at 843. *See also Mullins v. Picklesimer*, 317 S.W.3d 569, 577 (Ky. 2010).

The Wains cite two cases in support of their contention that the doctrine of unclean hands is a fact-specific matter on which summary judgment is usually inappropriate. In *Memorial Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 361 (W.D. Ky. 2020), a museum sued to recover two stolen Civil War uniforms that were in the possession of the defendant. The defendant argued that the museum's claim was barred by laches, but the museum argued that the defendant had unclean hands because he was aware that the uniforms had been stolen. Applying Kentucky law, the federal district court concluded that there were disputed issues of material fact regarding both parties' equitable claims. *Id.* at 362.

In *Cabot Turfway Ridge Defendants v. U.S. Bank National Association*, No. 2015-CA-001199-MR, 2017 WL 2211082, (Ky. App. May 12, 2017), a group of investors signed a promissory note and mortgage, but then turned over management of the encumbered property to their partners and tenants. When the Bank sought to foreclose on real property after a default, the investors argued

the Bank's action was precluded by laches and unclean hands. The investors argued that the Bank was aware of the tenants' misconduct and failed to require a timely cure to the tenants' defaults. This Court agreed that summary judgment was appropriate because the investors had not produced any evidence that the Bank aided in the tenants' fraud or that it knew of the improper conduct by the tenants. *Id.* at *7.

It is well-established that a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial. *Steelvest*, 807 S.W.2d at 481. The facts and procedural posture of the current case are closer to those presented in *Cabot Turfway* than *Memorial Hall Museum*. The Wains contend that Central Bank failed to properly acknowledge their partial payments made in October 2018 but acknowledge that they remained in default under the Agreement. The Wains further assert that Hall misrepresented Central Bank's willingness to negotiate a resolution of their default without proceeding to foreclosure.

However, all of the conduct involving those negotiations occurred after Hall advised the Wains that Central Bank had elected to accelerate the balance due on the Agreement. Furthermore, Hall's February 22, 2019, email expressly conditioned any settlement on the Wains' agreement to pay all past due

amounts by March 15 and to execute an agreed judgment. The email also required the Wains' acceptance of these conditions by March 1. Douglas Wain's response did not clearly accept all of these conditions.

In any event, the negotiations did not involve the validity of the underlying loan or Central Bank's obligations involving that loan. Rather, the negotiations only concerned the Wains' efforts to seek Central Bank's forbearance on collection and foreclosure. Although Central Bank could have handled these matters differently, there is no showing that Hall's representations induced the Wains to act or fail to act to make a timely cure of their default. Under the circumstances, we agree with the trial court that there was no fraudulent, illegal, or unconscionable conduct that would preclude Central Bank from exercising its rights under the Agreement.

Accordingly, we affirm the summary judgment and order of sale entered by the Fayette Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANTS:

David W. Hemminger
Louisville, Kentucky

BRIEF FOR APPELLEE CENTRAL BANK AND TRUST COMPANY:

Gregory D. Pavey
Timothy R. Wiseman
Lexington, Kentucky

# EXHIBIT "E"

OFFICE OF THE CLERK
SUPREME COURT OF KENTUCKY

M. KATHERINE BING
CLERK

ROOM 209, STATE CAPITOL
700 CAPITAL AVENUE
FRANKFORT, KENTUCKY 40601

PHONE 502-564-4720
FAX 502-564-5491
KYCOURTS.GOV

# MEMORANDUM

TO: DAVID WILLIAM HEMMINGER

FROM: M. KATHERINE BING

DATE: 01/10/2024

FILE NUMBER: 2022-SC-0529
19-CI-00812

DOUGLAS WAIN, ET AL.

V.

CENTRAL BANK AND TRUST COMPANY, ET AL.

PURSUANT TO THE RULE OF APPELLATE PROCEDURE 40(G)(5), THE DECISION IN THE ABOVE CAPTIONED APPEAL HAS BECOME FINAL.

ENCLOSURES: COPY OF ORDER

CC: FAYETTE CIRCUIT COURT
PAUL MANSFIELD NALEPKA
TIMOTHY REED WISEMAN
GREGORY DUANE PAVEY
SHANNON O'CONNELL EGAN
FILE COPY

# Supreme Court of Kentucky

2022-SC-0529-D
(2021-CA-0202)

DOUGLAS WAIN, ET AL. MOVANTS

V.

FAYETTE CIRCUIT COURT
19-CI-00812

CENTRAL BANK AND TRUST COMPANY, ET AL. RESPONDENTS

**ORDER DENYING DISCRETIONARY REVIEW**

The motion for review of the decision of the Court of Appeals is denied.

ENTERED: January 10, 2024.

[signature]
CHIEF JUSTICE

# EXHIBIT "F"

**COMMONWEALTH OF KENTUCKY**
**FAYETTE CIRCUIT COURT**
**DIVISION 9**
**CASE NO. 19-CI-00812**

***Electronically Filed***

**CENTRAL BANK & TRUST CO.** **PLAINTIFF**

**vs**

**DOUGLAS A. WAIN, *et al.*** **DEFENDANTS**

---

**ENTRY GRANTING SUMMARY JUDGMENT AND ORDER OF DISTRIBUTION OF SALE PROCEEDS**

---

This matter came before the Court on August 25, 2023, for a hearing on Substitute Defendant/Cross-Claimant U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For RCF 2 Acquisition Trust's ("U.S. Bank") *Motion For Summary Judgment On Its Cross-Claim* ("Motion for Summary Judgment") filed on July 3, 2023; Plaintiff Central Bank & Trust Co.'s ("Plaintiff") *Motion for Distribution* filed on May 22, 2023; and the parties' respective responses to and replies in support of the Motions. Central Bank, U.S. Bank, and Defendants Douglas A. Wain and Elisa Wain ("Defendants Wain") were represented by their respective counsel. The Court, having heard arguments of counsel, and having reviewed the pleadings, the Motions, the Affidavit of Jean Knowles, and other evidence, finds and orders as follows:

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>**

1. U.S. Bank is the holder of a promissory note executed by Defendants Wain on March 5, 2008, in the original amount of $417,000.00 (the "Note"). The original, blank-endorsed Note was produced for inspection by U.S. Bank's counsel during the hearing on August 25, 2023.

2B3E7384-D2EA-46DB-877A-341A467C2CD1 : 000001 of 000005

JS : 000001 of 000005

2. U.S. Bank is the mortgagee of record of a first mortgage that encumbered the real property commonly known as 2711 Barbados Lane, Lexington, Kentucky 40509 (the “Property”), along with all replacements and additions, and that was executed by Defendants Wain to secure the indebtedness evidenced by the Note (the “Mortgage”). The Mortgage was recorded in Book 6319, Page 226, and was assigned to U.S. Bank as evidenced by an Assignment of Mortgage recorded in Book 555, age 599, all in the office of the Clerk of Fayette County, Kentucky. The original Mortgage was produced for inspection by U.S. Bank’s counsel during the hearing on August 25, 2023.

3. Defendants Wain are in default under the terms of the Note, as modified, and the terms of the Mortgage, and the sums due thereunder have been accelerated. There is due and owing to U.S. Bank on the Note and Mortgage the principal sum of $324,261.97, plus interest at the rate of 5.8750% per annum from July 1, 2019, as may be subsequently adjusted under the terms of the Note and 2019 Modification, together with a deferred principal balance of $106,431.58, plus late fees that continue to accrue, costs, attorney’s fees, and other advances made pursuant to the terms of the Note as modified, Mortgage, and Kentucky law, for which U.S. Bank is entitled to a personal judgment against Defendants Wain.

4. On February 8, 2021, the Property was sold to a third party at a Master Commissioner’s Sale pursuant to the *Partial Summary Judgment, Judgment on the Pleadings, and Order of Sale* entered in favor of Plaintiff on January 20, 2021. A portion of the sale proceeds were distributed under an *Order Confirming Report of Sale, For Delivery of Deed and Partial Distribution of Proceeds* entered on March 12, 2021, with the remaining sale proceeds of $605,035.42 being held pending further orders of the Court.

2B3E7384-D2EA-46DB-877A-341A467C2CD1 : 000002 of 000005
JS : 000002 of 000005

5. There is no genuine issue of material fact, the equities favor U.S. Bank, and U.S. Bank is entitled to judgment on its Cross-Claim against Defendants Wain as a matter of law.

**SUMMARY JUDGMENT AND ORDER OF DISTRIBUTION**

6. IT IS ORDERED that U.S. Bank's Motion for Summary Judgment is GRANTED in its entirety.

7. IT IS FURTHER ORDERED that U.S. Bank is granted a *personal judgment* against Defendants Wain in the principal sum of $324,261.97, plus interest at the rate of 5.8750% per annum from July 1, 2019, as may be subsequently adjusted under the terms of the Note and 2019 Modification, together with a deferred principal balance of $106,431.58, plus late fees that continue to accrue, costs, attorney's fees, and other advances made pursuant to the terms of the Note as modified, Mortgage, and Kentucky law.

8. IT IS FURTHER ORDERED that Central Bank's Motion for Distribution is GRANTED IN PART AND DENIED IN PART. The Motion is granted to the extent that the remainder of the sale proceeds shall be distributed as set forth herein. The Motion is otherwise denied.

9. IT IS FURTHER ORDERED that the Master Commissioner is directed to disburse to U.S. Bank from the sale proceeds the following sums to satisfy its personal judgment against Defendants Wain:

| | |
|---|---|
| Unpaid principal balance: | $324,231.97 |
| Deferred balance: | $106,431.58 |
| Interest through 8/27/23: | $79,145.98 |
| Escrow/Other Advances: | $27,211.84 |
| Corporate Advance Balance: | $644.00 |
| Unpaid Late Charges: | $439.45 |
| Recording Fee: | $46.00 |
| **TOTAL:** | **$538,150.82** |

2B3E7384-D2EA-46DB-877A-341A467C2CD1 : 000003 of 000005

JS : 000003 of 000005

10. IT IS FURTHER ORDERED that after distribution of the sale proceeds to U.S. Bank as set forth herein, the remaining sale proceeds of $66,884.60 shall be distributed to Central Bank on its second mortgage lien as adjudicated in the *Partial Summary Judgment, Judgment on the Pleadings, and Order of Sale*.

11. Pursuant to CR 77.04, the Circuit Court Clerk shall serve notice of this Entry Granting Summary Judgment And Order Of Distribution Of Sale Proceeds.

12. There being no just cause for delay, this is a final and appealable matter.




HON. KIMBERLY BUNNELL
JUDGE, FAYETTE CIRCUIT COURT

Prepared by:

/s/ *Shannon O'Connell Egan*
Shannon O'Connell Egan (87296)
Nathan H. Blaske (90369)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8261
Fax: (513) 977-8141
Email: shannon.egan@dinsmore.com
nathan.blaske@dinsmore.com

Have seen and approved:

/s/ James H. Frazier, III
Hon. James H. Frazier, III
Master Commissioner
Fayette Circuit Court

Have seen:

/s/ *Christopher G. Colson* (w/ em auth. 2/21/24)
Hon. Christopher G. Colson
Hon. Taft McKinstry
FOWLER BELL PLLC
300 W. Vine Street, Suite 600
Lexington, KY 40507
Email: CGColson@fowlerlaw.com
TMcKinstry@fowlerlaw.com
*Counsel for Plaintiff, Central Bank & Trust Co.*

Counsel refused to attest (per email 2/26/24)
Hon. David W. Hemminger
HEMMINGER LAW OFFICE, PSC
331 Townepark Circle, Suite 100-C
Louisville, KY 40243
Email: hemmingerlawoffice@gmail.com
*Counsel for Defendants Douglas and Elisa Wain*

2B3E7384-D2EA-46DB-877A-341A467C2CD1 : 000004 of 000005
JS : 000004 of 000005

**CLERK'S CERTIFICATE OF SERVICE**

I hereby certify that on ______________, 2024, a true and correct copy of the foregoing was served through first class mail, upon:

Shannon O'Connell Egan, Esq.
Nathan H. Blaske, Esq.
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202

Hon. Christopher G. Colson
Hon. Taft McKinstry
FOWLER BELL PLLC
300 W. Vine Street, Suite 600
Lexington, KY 40507

Hon. David W. Hemminger
HEMMINGER LAW OFFICE, PSC
331 Townepark Circle, Suite 100-C
Louisville, KY 40243

Hon. Gregory D. Pavey
Hon. Timothy R. Wiseman
STOLL KEENON OGDEN, PLLC
300 W. Vine Street, Suite 2100
Lexington, KY 40507

____________________________________
Clerk, Fayette Circuit Court

2B3E7384-D2EA-46DB-877A-341A467C2CD1 : 000005 of 000005

JS : 000005 of 000005

# EXHIBIT "G"

# Commonwealth of Kentucky

## Court of Appeals

NO. 2024-CA-0730-OA

DOUGLAS A. WAIN and ELISA WAIN — PETITIONERS

v.

AN ORIGINAL ACTION
ARISING FROM FAYETTE CIRCUIT COURT
ACTION NO. 19-CI-00812

HON. KIMBERLY NELL BUNNELL, JUDGE — RESPONDENT

AND

CENTRAL BANK & TRUST COMPANY and U.S. BANK TRUST NATIONAL ASSOCIATION Not in its Individual Capacity But Solely as Owner Trustee for RCF 2 Acquisition Trust — REAL PARTIES IN INTEREST

AND

NO. 2024-CA-0850-OA

DOUGLAS A. WAIN and ELISA WAIN — PETITIONERS

RECEIVED
SEP 26 2024

v. AN ORIGINAL ACTION
ARISING FROM FAYETTE CIRCUIT COURT
ACTION NO. 19-CI-00812

HON. KIMBERLY NELL BUNNELL, JUDGE — RESPONDENT

AND

CENTRAL BANK & TRUST COMPANY and U.S. BANK TRUST NATIONAL ASSOCIATION Not in its Individual Capacity But Solely as Owner Trustee for RCF 2 Acquisition Trust — REAL PARTIES IN INTEREST

ORDER
DENYING PETITIONS FOR A
WRIT OF MADAMUS

* * * * * *

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

Petitioners, Douglas and Elisa Wain (the "Wains"), filed two separate petitions for a writ of mandamus pursuant to Kentucky Rule of Appellate Procedure ("RAP") 60. In Action No. 2024-CA-0730-OA, the Wains seek an order mandating that Respondent, Hon. Kimberly Nell Bunnell, Judge ("Judge Bunnell") recuse herself from presiding over the case below. In Action No. 2024-CA-0850-OA, the Wains seek an order mandating that Judge Bunnell dismiss the

case below because the judgment entered against them has allegedly been satisfied. Real Party in Interest, Central Bank & Trust Company ("Central Bank"), filed a response to both petitions. Real Party in Interest, U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust ("U.S. Bank"), filed a response only in Action No. 2024-CA-0730-OA. Having reviewed the petitions, responses, and being otherwise duly and sufficiently advised, it is hereby ORDERED that the petitions for a writ of mandamus shall be, and hereby are, DENIED.

## BACKGROUND

The case below is a foreclosure action initiated by Central Bank, which held a mortgage on property owned by the Wains. Through a series of assignments, U.S. Bank became the holder of the first mortgage on the property. After an alleged default and a few years of litigation, on January 20, 2021, the Trial Court entered a judgment in favor of Central Bank and an order of sale. It awarded Central Bank $358,412.72, plus interest and attorneys' fees. The Wains appealed (Appeal No. 2021-CA-0202-MR), but did not post a supersedeas bond. This Court affirmed the Trial Court's January 20, 2021, Order, and the Kentucky Supreme Court denied discretionary review. The property was sold at a master commissioner's sale for $630,003.00, and the sale was confirmed.

At the time the first appeal was filed, U.S. Bank's lien had yet to be

adjudicated. On March 7, 2024, the Trial Court entered an order granting summary judgment in favor of U.S. Bank on its claim asserting a lien on the property and its claim that its lien was superior to Central Bank's. Further, the Trial Court ordered distribution of the sale proceeds. After payment to U.S. Bank and taking into account the fees associated with the sale, the Trial Court ordered the balance of $24,967.48 to the master commissioner and the remaining $66,884.60 to Central Bank.

On April 30, 2024, the Trial Court entered an order denying the Wains' motion to amend the judgment. The Wains once again filed a notice of appeal, initiating Appeal No. 2024-CA-0646-MR. This Court entered an Order dismissing that appeal on July 29, 2024, because the Wains' notice of appeal was not timely filed.

The Wains have now filed two writ petitions that raise separate issues. In Action No. 2024-CA-0730-OA, they seek an Order compelling Judge Bunnell to recuse herself from this matter, claiming that her rulings are contrary to law and represent evidence of bias. They cite two campaign contributions made by lawyers in law firms involved in this case to her campaign for Fayette District Court Judge in 1999.

In Action No. 2024-CA-0850-OA, the Wains seek an Order compelling the Trial Court to enter a satisfaction of judgment pursuant to

Kentucky Rule of Civil Procedure ("CR") 79.02 as to Central Bank's claim against them. The Wains appear to argue that they have satisfied their obligation to Central Bank because the total sale proceeds of their property exceeded the amount of their indebtedness.

**ANALYSIS**

A writ of prohibition is an extraordinary remedy. The Kentucky Supreme Court has held:

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004) (emphasis original). A writ is an extraordinary remedy. *Ridgeway Nursing & Rehab. Facility, L.L.C. v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013). Because of this extreme and specific nature of writs, courts are reluctant to issue them because the expedited procedure "necessitate[s] an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants." *Interactive Media Ent. Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky. 2010).

In the context of a writ of the first class, the term "jurisdiction" refers

to subject matter jurisdiction. *See Appalachian Racing, L.L.C. v. Commonwealth*, 504 S.W.3d 1, 4 (Ky. 2016); *Goldstein v. Feeley*, 299 S.W.3d 549, 552 (Ky. 2009); *Davis v. Wingate*, 437 S.W.3d 720, 725 (Ky. 2014). "Whether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented." *Kelly v. Commonwealth*, 554 S.W.3d 854, 860 (Ky. 2018).

The Fayette Circuit Court is a court of general jurisdiction, "it has original jurisdiction of all justiciable causes not exclusively vested in some other court." Kentucky Revised Statute (KRS) 23A.010(1). Because the subject matter of the Trial Court is beyond reasonable dispute, the Wains are not entitled to a writ of the first class.

Regarding writs of the second class, a lack of an adequate remedy by appeal or otherwise is an absolute prerequisite to issuance. *Wyatt, Tarrant & Combs v. Williams*, 892 S.W.2d 584, 586 (Ky. 1995). Here, there remain ample avenues by which the Wains can challenge any alleged bias of the Trial Court. If the Wains in good faith believe that Judge Bunnell should not preside over the balance of their case, they may file an affidavit with the Circuit Clerk pursuant to KRS 26A.020. This statute reads, in relevant part:

> If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired

justice or judge of the Court of Justice as special judge.

KRS 26A.020 constitutes one adequate remedy, foreclosing the Wains' request that this Court should first consider their contention that Judge Bunnell should be disqualified from presiding over the case via a writ.

As to the Wains request that this Court declare their debt to Central Bank satisfied, they likewise have or had an adequate remedy by appeal. As an initial matter, the judgment in favor of Central Bank has already been the subject of an appeal, and this Court affirmed the Trial Court's judgment. "[A] decision of the appellate court, unless properly set aside, is controlling at all subsequent stages of the litigation, which includes the rule that on remand the trial court must strictly follow the mandate of the appellate court." *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982) (quoting 5 Am. Jur.2d, Appeal and Error § 744).

As to their argument that the proceeds of the sale were sufficient to satisfy Central Bank's lien, it is not clear whether the Wains intended to mislead this Court, or whether they do not recognize that U.S. Bank, as a senior lienholder, was entitled to have its judgment satisfied by the proceeds of the sale prior to the Central Bank being paid. Regardless, any issues concerning U.S. Bank's lien could have been raised in the Wains' second appeal, had it been timely filed. Their failure to avail themselves properly to their sufficient remedies by appeal do not render those remedies inadequate. "This Court cannot approve of exercises of

original jurisdiction in cases where no remedy by appeal exists at the time of the request solely as a result of actions taken, or not taken, by the petitioner." *Wyatt, Tarrant & Combs*, 892 S.W.2d at 586.

Because the Wains do not meet the prerequisites for the issuance of a writ, we need not address their claims of error. Nothing contained in this Order should be construed as a ruling on the merits of the allegations.

## **CONCLUSION**

WHEREFORE, Petitioners' petitions for a writ of mandamus shall be, and hereby are, DENIED.

ENTERED: September 23, 2024

[signature]

JUDGE, COURT OF APPEALS

# EXHIBIT "H"