COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

06A8ACC8-1281-4BA8-A12D-63C2E129DE92 : 000001 of 000003

CENTRAL BANK & TRUST CO. PLAINTIFF

V. **ORDER** NO. 19-CI-00812

DOUGLAS A. WAIN et al. DEFENDANTS

**** **** **** ****

This matter having come before the Court on October 11, 2024, on the *Motion To Vacate Or Stay Orders Dated April 19, 2024 And August 19, 2024, Still Designating The Wains As Debtors To Central Bank & Trust Co. Over Three Years After The "Order Confirming Report Of Sale, For Delivery Of Deed, And Partial Distribution On Proceeds"* ("Motion") filed, *pro se*, by the Defendants Douglas A. Wain and Elisa Wain (the "Wains"); Central Bank & Trust Co. ("Central Bank") and U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For RCF 2 Acquisition Trust ("U.S. Bank"), each having filed an objection thereto; and the Court having reviewed the record, heard arguments of counsel on October 11, 2024, and being otherwise sufficiently advised; **IT IS HEREBY ORDERED** that, for the reasons stated on the record on October 11, 2024:

1. Defendants' Motion is **DENIED** in full; and
2. As a sanction, by January 31, 2024, Defendants shall pay $400.00 to Central Bank and $400.00 to U.S. Bank.

DATED this ___ day of ______________________, 2024.

/s/ JUDGE KIMBERLY BUNNELL
electronically signed
10/21/2024 10:52:23 PM ET

HON. KIMBERLY N. BUNNELL
JUDGE, FAYETTE CIRCUIT COUR

OD : 000001 of 000003

**TENDERED BY:**

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000

BY:_ _*/s/ Timothy R. Wiseman*______________
GREGORY D. PAVEY, KBA 81049
TIMOTHY R. WISEMAN, KBA 95072
ATTORNEYS FOR CENTRAL BANK

**HAVE SEEN AND AGREED PURSUANT TO RFCC 19:**

*“do not include our signatures” (per 10/17/24 email)*
DOUGLAS WAIN, *pro se*

*/s/ Shannon O’Connell Egan (with permission per 10/17/24 email)*
SHANNON O’CONNELL EGAN
ATTORNEY FOR U.S. BANK
TRUST NATIONAL ASSOCIATION

06A8ACC8-1281-4BA8-A12D-63C2E129DE92 : 000002 of 000003
OD : 000002 of 000003

Entered 19-CI-00812 10/23/2024 Vincent Riggs, Fayette Circuit Clerk

06A8ACC8-1281-4BA8-A12D-63C2E129DE92 : 000003 of 000003

## <u>CLERK'S CERTIFICATE OF SERVICE</u>

This is to certify that a true copy of the foregoing was filed electronically and/or served on ________________________to:

Gregory D. Pavey, Esq.
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
ATTORNEYS FOR CENTRAL BANK

Shannon O'Connell Egan
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Shannon.Egan@dinsmore.com
ATTORNEY FOR U.S. BANK
TRUST NATIONAL ASSOCIATION

Douglas A. Wain
P.O. Box 7473
Westlake Village, CA 91359
douglaswain@gmail.com

______________________________
CLERK, FAYETTE CIRCUIT COURT

OD : 000003 of 000003

Douglas Wain and Elisa Wain

PEL no. 4388354400011792

Payoff good through 12/19/2024

| | | |
|---|---|---|
| Principal | $ | 273,899.64 |
| Fees | $ | 145.00 |
| Interest | $ | 83,900.27 |
| Subtotal | $ | 357,944.91 |
| LR Fee | $ | 46.00 |
| **TOTAL** | **$** | **357,990.91** |
| | | |
| **Good Thru 12/19/24** | **Per Diem $0.00** | |

# U.S. Bankruptcy Court

## Central District of California

Notice of Electronic Claims Filing

The following transaction was received from Ireland, William on 12/20/2024 at 12:00 PM PST

File another claim

| | |
|---|---|
| **Case Name:** | Douglas Alan Wain and Elisa Wain |
| **Case Number:** | 1:24-bk-11814-MB |
| **Creditor Name:** | Central Bank & Trust Co.<br>300 W Vine Street<br>Lexington Kentucky 40507 |
| **Claim Number:** | 1 Claims Register |
| **Amount Claimed:** $357990.91 | |
| **Amount Secured:** | |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Proof of Claim.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391 1-0] [9440b35eeae277600e09ec415b49b80f50bd182b93f4eb7e4f2d0005536a8a5c b7c4bd630c7ae366be1dc4a58f4dbead298b71f50be8e0d62cacd0a51a719893]]
**Document description:** Declaration of Timothy R. Wiseman
**Original filename:**C:\fakepath\Declaration of Timothy R. Wiseman.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391 1-1] [5feb41ffac078fc6dd67949a4960c6b167b12113d0b4d1dadea6b81957f4e48f 38df68ee9d762b92ab8f62620a756662c18c8d2bb585cb8c6cd8d0aa7674896d]]
**Document description:**Exhibit Ex A - Amended Complaint
**Original filename:**C:\fakepath\Ex A Amended Compl.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391 1-2] [27029276eaa128d4d2f45c6262becc9709fbfe998bb26b44dce979abcdd74edf 6e2e1ee072616992a0d75d19bb7368b0072db1d09c2fd36afa913e7c5d981cc3]]
**Document description:**Exhibit Ex B-Judgment on Pleadings, Order
**Original filename:**C:\fakepath\Ex B CB EntrdJdgmntOrdSale.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391 1-3] [c293def207bce86f4bf9d261bcb89ad1a9ebf586cea61858ba85aa4c81f51d56 714a6cc44d78aa4b588031916078545fdc6e0c14f912f3db9d8f2820957302d7]]
**Document description:**Exhibit Ex C-Entered Order of Partial Distribution
**Original filename:**C:\fakepath\Ex C Entrd Order of Partial Distribution.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391 1-4] [a1ec685b165f4b8fc75a6880be2d4266ebf7b8dd135e4cfd780a70fff3898669 02f58c077555ceb2f6e2c02c806b2b45b8e3b27a0a85356e5b60aed91f74fb60]]
**Document description:**Exhibit Ex D-Court of Appeals Opinion
**Original filename:**C:\fakepath\Ex D Court of Appeals Opinion.pdf
**Electronic document Stamp:**

[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-5] [6835052c282feb2f248dd564e8a51b6be12b0cc50c422de68cdf0f3fe0c25cff
fb92c2ee0bf03b54db94325051b1d8efb9a164b37e5d78409a6239daf20589e6]]
**Document description:**Exhibit Ex E-Memo and Order Denying Discretionary Review
**Original filename:**C:\fakepath\Ex E - Memo and Order Denying Discretionary Review.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-6] [8818c713a775bbfab8d0843942baf2d38b02013ad66a224db4d6a1188496ad5a
40e1ddbb6513594195830966f3aa8951182e9e1ea188406a0c7b1c6e2a6e1f98]]
**Document description:**Exhibit Ex F -US Bank's entered Judgment & Dist Order
**Original filename:**C:\fakepath\Ex F - USBank's entrd Jdgmnt&DistOrder.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-7] [0b3f94e066359d8310a5e240a5f5c80b0a80ce5324e65563ef242441d9245a1c
7bf02db26f9b0b7c2a9009ef3be81fb64698c5fd85cf005ad1ae4c3088bb45dd]]
**Document description:**Exhibit Ex G-2024.09.23 Order Denying Petitions for a Writ of Madamus (Wain)
**Original filename:**C:\fakepath\Ex G 2024.09.23 Order Denying Petitions for a Writ of Madamus (Wain).pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-8] [07be106c08401af31bb78e1fcdc82314402123398020f035076ff6f4e60b9e61
73c5941e8f34410281d347a2e2589bff65e69bf070f779094ea976b720aa011e]]
**Document description:**Exhibit Ex H-Order DENYING Wains Motion to Vacate or Stay Orders
**Original filename:**C:\fakepath\Ex H Order DENYING Wains Motion to Vacate or Stay Orders.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-9] [646fd1e493a1e6f1fe0de5b61adf78d6a08896b5b8ad4152bc92c2b4111b847e
44307da6824a98f15c80644bc2e7c4b565b57ac2bfbe46cf2546f3a25ce8e30a]]
**Document description:**Exhibit Payoff Good through 12.19.2024
**Original filename:**C:\fakepath\Payoff 12-19-24.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=12/20/2024] [FileNumber=10756391
1-10] [77c341351baee7a45b5d4c1ba72b0351844c813a0e3ea880809b87d013a2451
268b5a8d9ccaaeb97a920104c6407a69d70fd38e5a143b6e9d0baea7f8bdc4304]]

# EXHIBIT F

Haight

William Ireland
*direct:* 213.542.8035
wireland@hbblaw.com

Haight Brown & Bonesteel LLP
555 South Flower Street
Forty-Fifth Floor
Los Angeles, California 90071
213.542.8000
213.542.8100 fax
www.hbblaw.com

August 13, 2026

**VIA E-MAIL AND U.S. MAIL**

Douglas A. Wain and Elisa Wain
P.O. Box 7473
Westlake Village, California 91359
Email: douglaswain@gmail.com

Re: Wain v. Central Bank & Trust Co., Adv. Proc. No. 1:25-ap-01026-MB (Bankr. C.D. Cal. Response to August 10, 2026 Meet and Confer Letter

Dear Mr. Wain:

We write in response to your August 10, 2026 letter concerning Central Bank & Trust Co.'s ("CBT") responses to Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admission. CBT disagrees with the characterization of its discovery responses and objects to the assertions that its responses are deficient. Nevertheless, in the interest of cooperation and narrowing disputes, CBT provides the following response.

**1. Verification of Interrogatory Responses**

CBT does not agree that Plaintiffs have suffered any prejudice from the timing of a verification. To the extent a verification is required under Rule 33(b), CBT will provide a verification executed by an appropriate corporate representative within a reasonable time.

**2. Interrogatories Referencing Previously Produced Documents**

CBT objects to Plaintiffs' contention that its responses invoking Rule 33(d) are improper. The interrogatories at issue seek information reflected in transactional records, loan documents, foreclosure records, payment histories, and related business records previously produced to Plaintiffs or filed in connection with CBT's Proof of Claim.

Rule 33(d) expressly permits reliance on business records where the information may be ascertained from those records. Plaintiffs have had access to the same records as CBT and are equally capable of reviewing them. Many of the interrogatories seek detailed financial calculations and account histories spanning years of activity and are precisely the type of requests for which Rule 33(d) is appropriate.

Haight



That said, CBT will evaluate whether supplemental Bates references can reasonably be provided for certain responses without undertaking a disproportionate burden. For now, CBT states:

- CB0001 to CB0064 are statements for the subject account from 2012 to 2014
- CB0065 to CB0261 are statements for the subject account from 2015 to 2019
- CB0262 to CB0283 are the account application and agreement documents
- CB0284 to CB0331 are documents from a previous foreclosure case against Plaintiffs
- CB0332 to CB0337 are documents evidencing compliance with Fair Credit Reporting Act
- CB0338 to CB0725 are documents evidencing communications with Plaintiffs
- CB0726 to CB0738 are documents summarizing account activity

**3. Contention Interrogatories**

CBT disagrees that its responses to Interrogatory Nos. 5, 6, and 25 are improper. Interrogatories Nos. 5, 6, and 25 seek precisely the type of legal contentions that continue to depend on the Court's resolution of disputed legal issues. CBT's responses accurately reflect the current status of its investigation and analysis. Rule 26(e) expressly contemplates supplementation as additional information becomes available.

Plaintiffs' complaint regarding Interrogatory No. 5 is particularly unfounded. The effect, if any, of the March 7, 2024 Distribution Order remains the subject of disputed legal interpretations central to this litigation. To the extent Plaintiffs want a different answer to Interrogatory No. 5, the order's impact on CBT's claim, as stated in multiple filings in multiple courts, is to reduce the amount owed by the Plaintiffs on CBT's judgment. Specifically, amount owed was reduced by $66,884.60. To the extent Plaintiffs want a different answer to Interrogatory No. 6, there is amount still owed to CBT on the judgment by the Plaintiffs. That amount was $357,944.91 as of the filing of the Proof of Claim (and reflects the application of all garnishments and funds from the Master Commissioner). Due to a clerical error, the Proof of Claim filed in this case stated the amount as $357,9**90**.91. CBT will amend its claim to correct the difference.

Finally, Interrogatory 25 and RFP No. 22 improperly seeks to force CBT to marshal all evidence supporting its legal positions. The rules do not require a party, in response to a

Haight



document request, to identify every document that may support a future contention or defense. To the extent responsive, nonprivileged documents exist, CBT has produced or will produce documents consistent with its discovery obligations. Plaintiffs are not entitled to a premature trial roadmap or an advance evidentiary index.

**4. Interrogatory No. 6 and Requests for Admission Nos. 10 and 11**

CBT's responses fairly address the requests as phrased. Plaintiffs' requests are framed in a manner that assumes legal conclusions and characterizations with which CBT does not agree.

To the extent Plaintiffs seek admissions concerning the existence or nonexistence of a judicial deficiency judgment, CBT will review the responses and determine whether clarification is appropriate. CBT does not, however, concede Plaintiffs' legal theories regarding the effect of any foreclosure proceedings, sale proceeds, judgments, distributions, indebtedness, or claim amounts.

**5. Requests for Admission Characterized as "Denied as Phrased"**

CBT denies that its responses violate Rule 36. Several requests contain ambiguous wording, undefined terminology, contested assumptions, or compound propositions. Where necessary, CBT responded to the requests as framed.

CBT further rejects Plaintiffs' characterization that responses to Requests for Admission Nos. 4 and 5 are inconsistent. The requests employ distinct terminology and legal concepts. An admission concerning receipt of funds associated with a foreclosure sale does not necessarily constitute an admission of Plaintiffs' characterization of those funds as "surplus proceeds," nor does it concede Plaintiffs' legal interpretation of the transaction.

**6. Privilege Log**

CBT appropriately asserted privileges as applicable. Critically, however, CBT contends that the information and documents the Plaintiffs seek are non-responsive and irrelevant, so there is no need to create a privilege log at all. Plaintiffs simply are not entitled to conduct a fishing expedition into corporate activities because they wish to avoid the only claim filed in their Chapter 13 bankruptcy.

Without waiving any objections, CBT is evaluating whether a privilege log is warranted for any withheld materials and, if so, the appropriate scope of such a log.

**7. Financial Statements**

CBT disagrees with Plaintiffs' characterization of the responses concerning financial statements. The requests seek information involving entities beyond CBT itself and implicate relevance, proportionality, confidentiality, privacy, and third-party concerns.

Nothing in CBT's response should be construed as a waiver of those objections. CBT did not intend to suggest it would be producing anything that was not already available publicly. CBT will review the responses to determine whether clarification concerning the scope of any potential production is appropriate.

**8. Rule 34 Responses**

CBT's document responses comply with Rule 34. Plaintiffs have already received a substantial production of documents, including the documents supporting CBT's Proof of Claim and additional records responsive to multiple requests.

Rule 34 does not require a responding party to re-produce documents already in the requesting party's possession. Nor does it require CBT to organize its entire production according to Plaintiffs' preferred format. CBT objects to Plaintiffs' demand that it provide a request-by-request catalog of all previously produced documents to the extent such a demand exceeds the requirements of the Federal Rules.

CBT will continue to evaluate its responses and supplement as appropriate under Rule 26(e).

**9. Relevance Objections**

CBT stands by its relevance objections. Discovery must remain tied to the claims and defenses actually pleaded. Plaintiffs' requests regarding credit reporting, consumer reporting disputes, and other peripheral issues seek information that is outside the scope of the claims asserted or is disproportionate to the needs of this adversary proceeding. This Bankruptcy Court cannot adjudicate such claims, and so discovery cannot be compelled on them.

Likewise, CBT maintains its objections to requests concerning matters that extend beyond the issues framed by the pleadings and the Court's prior rulings.

**10. Service Issues**

CBT disagrees with Plaintiffs' assertions regarding service. Throughout this litigation the parties have regularly communicated and exchanged materials by email, and Plaintiffs have consistently received notice of filings and discovery responses by electronic means.

Haight



CBT further notes that Plaintiffs indisputably received the documents at issue and have demonstrated no prejudice. CBT reserves all rights regarding any contention that service was ineffective.

**Conclusion**

CBT believes its discovery responses are substantially compliant with the Federal Rules and that Plaintiffs' objections predominantly reflect disagreements with CBT's substantive positions rather than legitimate discovery deficiencies. CBT nevertheless remains willing to meet and confer in good faith regarding specific requests and potential supplementation where appropriate.

Nothing in this letter waives any objection, privilege, protection, or substantive position asserted by CBT in this action.

Sincerely,

William E. Ireland

William E. Ireland
Haight Brown & Bonesteel LLP
Counsel for Central Bank & Trust Co.

WI:JS

# EXHIBIT G

# DECLARATION OF BECKY SLOCE-MULLINS

*** *** *** *** ***

Comes the Declarant, Declarant, upon information and belief, and after having been duly sworn, states as follows:

1. She is a Senior Vice President of Central Bank & Trust Co. ("Central Bank").

2. She has personal knowledge as to all of the facts contained herein.

3. She is custodian of Central Bank's records as to the transactions that are the subject matter of this action, the Chapter 13 bankruptcy proceeding filed by Douglas A. Wain and Elisa Wain (the "Wains") on October 30, 2024, in the Central District of California and assigned the Case No. 1:24-BK-11814-MB, and the 2019 foreclosure action against the Wains to collect the mortgage indebtedness owed to Central Bank in the then-due amount of $358,412.712.

4. She is familiar with any and all payments that have been made on the subject account.

5. The foreclosure action against the Wains was filed in Fayette Circuit Court and styled as *Central Bank & Trust Co. v. Douglas A. Wain and Elisa Wain*, Case No. 19-812 ("Fayette Circuit Action"). A copy of the complaint filed in the Fayette Circuit Action is attached as Exhibit A.

6. On January 20, 2021, Fayette Circuit Court entered partial summary judgment, judgment on the pleadings, and order of sale (the "Judgment"). A copy of the Judgment is attached as Exhibit B. The Judgment in favor of Central Bank awarded $358,412.72, plus interest at the variable rate provided in the parties' agreement (then $52.70 per diem) from March 6, 2019, until paid, plus costs expended and attorneys' fees.

7. Central Bank applied the distribution of sale proceeds it received from the Master Commissioner and garnishments it obtained from the Wains against the amount due under the Judgment.

8. As of December 19, 2024, the amount due under the Judgment was $357,990.91 plus additional interest, costs, and fees. See calculations attached as Exhibit C.

Dated this ____________________________.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct. Executed on September 15, 2026.

Becky Sloce-Mullins, SVP
Becky Sloce-Mullins

*4928-6608-7113.1*

**Fill in this information to identify the case:**

Debtor 1 Douglas Alan Wain

Debtor 2 (Spouse, if filing) Elisa Wain

United States Bankruptcy Court for the: Central District of California

Case number 1:24-bk-11814-MB

Official Form 410

# Proof of Claim

04/25

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Central Bank & Trust Co.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Name: William E. Ireland; Haight, Brown & Bonesteel | Name: William E. Ireland; Haight, Brown & Bonesteel |
| Number Street: 555 S. Flower Street, 45th Floor | Number Street: 555 S. Flower Street, 45th Floor |
| City: Los Angeles State: CA ZIP Code: 90071 | City: Los Angeles State: CA ZIP Code: 90071 |
| Contact phone (212) 542-8000 | Contact phone (213) 542-8000 |
| Contact email wireland@hbblaw.com | Contact email wireland@hbblaw.com |

Uniform claim identifier (if you use one):

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 1 Filed on 12/20/2024 (MM / DD / YYYY)

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1 7 9 2

**7. How much is the claim?**

$ 357,990.91. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Judgment; see attached declaration

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ______________________

**Basis for perfection:** ______________________

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $__________

**Amount of the claim that is secured:** $__________

**Amount of the claim that is unsecured:** $__________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $__________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $__________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ______________________

Case 1:24-bk-13181-MB Doc 105-1 Filed 10/09/26 Entered 10/07/26 08:21:50 Page 3 of 3

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $__________

☐ Up to $3,800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $__________

☐ Wages, salaries, or commissions (up to $17,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $__________

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $__________

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $__________

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. $__________

* Amounts are subject to adjustment on 4/01/28 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 09/15/2026
MM / DD / YYYY

Becky Glover Mullins, SVP
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Becky Mullins
First name Middle name Last name

Title: Senior Vice President; Special Assets

Company: Central Bank & Trust Co.
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 300 W. Vine Street
Number Street

Lexington KY 40507
City State ZIP Code

Contact phone (859) 253-6241 Email bmullins@centralbank.com

# EXHIBIT A

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

CENTRAL BANK & TRUST CO. PLAINTIFF

V. **FIRST AMENDED COMPLAINT** NO. 19-CI-00812

DOUGLAS A. WAIN;
ELISE WAIN; and DITECH
FINANCIAL LLC, successor by merger
to GREEN TREE SERVICING LLC DEFENDANTS

**** **** **** ****

Comes the Plaintiff, Central Bank & Trust Co. (hereinafter "Central Bank", by counsel, and for its cause of action states as follows:

1. Central Bank is a Kentucky corporation with its principal office address being 300 W. Vine Street, Lexington, Kentucky 40507.

2. The Defendants, Douglas A. Wain and Elise Wain (hereinafter, the "Wains"), reside at 2711 Barbados Lane, Lexington, Fayette County, Kentucky 40509.

3. The Defendant, Ditech Financial LLC, successor by merger to Green Tree Servicing LLC (hereinafter "Ditech Financial"), is a foreign limited liability company, which is active and in good standing with the office of the Kentucky Secretary of State. Its principal office address is 1100 Virginia Drive, Suite 100A, Fort Washington, Pennsylvania 19034. Its registered agent is C. T. Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

4. On or about June 28, 2006, the Wains executed and delivered to Central Bank a Gold Equity Line Agreement (the "Agreement") in the principal amount of $350,000.00, with interest and payments as set out therein. A true copy of the Agreement is attached hereto, and designated as Exhibit A.

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000001 of 000013

AMB : 000001 of 000013

5. On or about June 28, 2006, in order to secure payment of the Agreement, the Wains executed and delivered to Central Bank a certain Gold Equity Line Mortgage (the "Mortgage") by which the Wains mortgaged to Central Bank certain real property known as 2711 Barbados Lane, Lexington, Fayette County, Kentucky (the "Property"), which is more particularly described in the Mortgage, a true copy of which is attached hereto and designated as Exhibit B.

6. The Mortgage was lodged of record in the office of the Fayette County Clerk on July 5, 2006 in Mortgage Book 5765 at Page 593.

7. The Mortgage constitutes a lien upon the Property that is valid and enforceable to secure payment of the Agreement.

8. On or about March 5, 2008, Central Bank executed a certain Subordination Agreement by which it agreed to subordinate its Mortgage to that certain mortgage dated March 5, 2008 between Central Bank & Trust Co. d/b/a Central Bank Mortgage Co. and the Wains. A true copy of said Subordination Agreement is attached hereto and designated as Exhibit C.

9. The Defendants have defaulted under the terms of the Agreement leaving an unpaid balance due and owing thereon to Central Bank of $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

10. It is provided pursuant to the terms and conditions set forth in the Agreement and the Mortgage that Central Bank is entitled to recover its court costs and reasonable attorneys' fees in connection with enforcement of this obligation.

11. It is further provided in the Agreement and the Mortgage that upon default Central Bank may enforce same by foreclosure of the Mortgage and sale of the Property.

12. The Property cannot be divided without materially impairing its value and the interest of the parties thereto and the Property should therefore be sold in its entirety with the proceeds of such sale, after payment of court costs, expenses of sale and any unpaid

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000002 of 000013
000002 of 000013

delinquent *ad valorem* taxes, being distributed to the lienholders herein, including Central Bank, by priority as determined by this Court.

13. Central Bank is informed and asserts that the following Defendants may be claiming an interest in the Property:

(a) The Wains, by virtue of that certain Deed recorded in the office of the Fayette County Clerk on April 1, 1991 in Deed Book 1580 at Page 347; and

(b) Ditech Financial (successor by merger to Green Tree Servicing LLC), by virtue of that certain Assignment of Mortgage recorded in the office of the Fayette County Clerk on April 27, 2014 in Miscellaneous Book 512 at Page 631, relative to that certain Mortgage originally held by Central Bank & Trust Co., d/b/a Central Bank Mortgage Co., recorded in the office of the Fayette County Clerk in Mortgage Book 6319 at Page 226, which was subsequently assigned to CitiMortgage, Inc.

14. The Defendants should be required to appear in this action and assert all claims they have in the Property, if any, or be forever barred.

**WHEREFORE** Central Bank demands as follows:

1. Judgment against the Defendants, Douglas A. Wain and Elise Wain, jointly and severally, in the amount of $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

2. That Central Bank be adjudged to have a valid and enforceable mortgage lien on the Property securing the indebtedness as set forth herein.

3. That the Property be sold under proper orders of this Court; that the mortgage lien of Central Bank be recognized, established and enforced by the sale of the Property and that the proceeds of such sale, after payment of court costs, expenses of sale and any unpaid delinquent *ad valorem* taxes, be distributed to the lienholders, including Central Bank, in accordance with their respective priorities as determined by this Court.



Filed 19-CI-00812 10/29/2019 Vincent Riggs, Fayette Circuit Clerk

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000003 of 000013
000003 of 000013

4. That the Wains be adjudged jointly and severally liable to pay to Central Bank any deficiency which may remain after the sale of the Property and the application of the sale proceeds to any Judgment awarded herein to Central Bank.

5. That the Defendants be ordered to come forth and assert their claims in and to the Property, if any, or be forever barred.

6. That it be awarded its reasonable attorneys' fees and its costs herein expended, together with all other relief to which it may appear entitled.

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
Phone: (859) 231-3000

By: ______________________
GREGORY D. PAVEY
ATTORNEYS FOR PLAINTIFF

**VALIDATION NOTICE**

Pursuant to 15 U.S.C. Section 1692g(a), take notice that:

1. The amount of the claimed debt is $358,412.72, with interest thereon at the variable rate provided by the Agreement (currently $52.70 per diem) from March 6, 2019 until paid.

2. The name of the creditor to whom the debt is owed is Central Bank & Trust Co.

3. Unless you dispute the validity of the above debt, or any portion thereof, within 30 days after your receipt of this Notice, the debt will be assumed to be valid by us.

4. If you notify our office in writing within 30 days of your receipt of this Notice that the debt, or any portion thereof is disputed, we will obtain verification of the debt or a copy of any Judgment that may be of record against you. We will mail the verification or copy of Judgment to you.



Filed 19-CI-00812 10/29/2019 Vincent Riggs, Fayette Circuit Clerk
0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000004 of 000013
000004 of 000013

5. Upon your written request to our office within 30 days of your receipt of this Notice, we will provide you with the name and address of the original creditor, if different from the current creditor listed above.

6. This is a communication under the Federal Fair Debt Collection Practices Act. Stoll Keenon Ogden PLLC ("SKO") may be deemed a debt collector under said Act. SKO is attempting to collect the debts referred to herein, or collect information about the consumer-debtor. Any information obtained by SKO or the creditor will be used for such purposes.

rdh/ 100443.156618
Doc#8069946.1

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000005 of 000013

AMB : 000005 of 000013



Filed 19-CI-00812 10/29/2019 Vincent Riggs, Fayette Circuit Clerk

GEL Agreement

| | |
|---|---|
| Douglas A Wain<br>Elisa Wain<br>2711 Barbados Ln<br>Lexington KY 40509-9508<br>**Borrower's Name and Address**<br>"You" means each borrower above, jointly and severally. | **Central Bank**<br>Central Bank & Trust Co.<br>300 West Vine Street<br>Lexington, KY 40507<br>Member FDIC<br>**Lender's Name and Address**<br>"We" or "us" means lender named above. |
| No. 4388358600024885<br>Date June 28th, 2006<br>Line of Credit $ 350,000.00 | Maturity Date June 28th, 2021<br>Billing Cycle Ends 6th day of every month<br>Payment Date is 25 days from the end of each cycle |

## Gold Equity Line Agreement

**GENERALLY:** This is an agreement about your home equity line of credit. Many of the terms we use in this agreement have specific meanings. The term "loan account balance" means the sum of the unpaid principal of loans, fees, charges and advances made under this plan, plus unpaid but earned finance charges, plus any credit or mortgage insurance premiums that are due. "Line of Credit" means the maximum loan account balance we will ordinarily allow you to owe us under this plan at any time.

If any term of this agreement violates any law or for some other reason is not enforceable, that term will not be part of this agreement. This agreement is subject to the laws of the Commonwealth of Kentucky.

**TAX DEDUCTIBILITY:** You should consult a tax advisor regarding the deductibility of interest and charges under this home equity plan.

**REQUESTING A LOAN:** You request a loan under this plan whenever you:

a. Write a check using one of the special checks you have for that purpose.
b. Use your GOLD EQUITY LINE card to make a purchase OR request a cash advance.

**HOW THE LOAN IS ADVANCED:** When you request a loan, subject to any limitations contained in this agreement, we will advance exactly the amount you request. We will advance the money directly to you, or pay a designated third person or account, via check or credit card, depending on how we agree to make the advance. We will record the amount as a loan in your loan account. We will not ordinarily grant any request for a loan which would cause your loan account balance to be greater than the Line of Credit listed above. Also, we will not ordinarily grant any request for a loan if payments on the Line of Credit are past due or if any other defaults exist under the terms of this agreement. We may at our option, grant such requests without obligating ourselves to do so in the future.

**HOW THE FINANCE CHARGES ARE COMPUTED:**

(A) Imposition of FINANCE CHARGES as to checks and purchases made with card (hereafter referred to as "Purchases") charged to your account:

(1) Application of FINANCE CHARGES begins on the date in which a Purchase posts to your account. The FINANCE CHARGE is imposed so long as the Purchase remains unpaid.

(2) Average Daily Balance of Purchases (including New Purchases). To figure and impose any FINANCE CHARGE, we will apply the daily periodic rate shown on the face of the Monthly Periodic Statement to the "Average Daily Balance of Purchases" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Purchases" we take the beginning balance of your Purchases each day, add any new Purchases and subtract payments or credits, unpaid Finance Charges, and any other charges. This gives us the daily balance of Purchases. Then, we add up all the daily balances of Purchases for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "Average Daily Balance of Purchases."

(B) Imposition of FINANCE CHARGES as to CASH ADVANCES charged to your account:

(1) Application of FINANCE CHARGES begins on the date in which a CASH ADVANCE transaction is made on your account. The FINANCE CHARGE is imposed so long as the CASH ADVANCE balance remains unpaid.

(2) Average Daily Balance of Cash Advances (including New Cash Advances). To figure and impose any FINANCE CHARGE, we will apply the daily periodic rate shown on the face of the monthly Periodic Statement to the "Average Daily Balance of Cash Advances" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Cash Advances" we take the beginning balance of Cash Advances each day, add any new Cash Advances and subtract any payments or credits, unpaid Finance Charges, and any other charges. This gives us the daily balance of Cash Advances. Then, we add up all the daily balances of Cash Advances for the billing cycle and divide the total by the number of days in the billing cycle. This gives the "Average Daily Balance of Cash Advances."

The daily periodic rate of FINANCE CHARGE is .0219 % which is equal to an ANNUAL PERCENTAGE RATE of 8.000 %. The Annual Percentage Rate includes interest and not other costs.

**VARIABLE RATE:** The ANNUAL PERCENTAGE RATE may change, and will be 00.00 percentage points above the following "base rate": the highest prime rate at large U.S. money center banks that is published in The Wall Street Journal. The ANNUAL PERCENTAGE RATE may increase if this "base rate" increases. An increase will take effect on the first business day of each billing period. An increase will result in an increase in the finance charge and it may have the effect of increasing your periodic minimum payment. The ANNUAL PERCENTAGE RATE will not increase more often than once a month. A decrease will have the opposite effect of an increase disclosed above. Changes in the ANNUAL PERCENTAGE RATE will affect the entire loan account balance.

If the base rate changes more frequently than the ANNUAL PERCENTAGE RATE, we will always use the previous month's last published base rate to determine the new ANNUAL PERCENTAGE RATE. In such a case, we will ignore any changes in the base rate that occur between ANNUAL PERCENTAGE RATE adjustments.

The "ANNUAL PERCENTAGE RATE" referred to in this section is the annual rate which corresponds to the periodic rate applied to the balance as described above. This corresponding **ANNUAL PERCENTAGE RATE** will never exceed 21% and will never exceed the highest allowable rate for this type of agreement as determined by applicable state or federal law.

**HOW TO REPAY YOUR LOANS:** During the term of the agreement, you will receive monthly periodic statements detailing the activity in the account and the minimum payment required (due 25 days after the statement date). On or before each monthly payment date, you agree to make a minimum payment to reduce your debt. The minimum payment amount is 0 % of your loan account balance on the last day of the billing cycle or the accrued finance charges or

whichever is greater. If you have been assessed an annual fee, late charge fee or if the account is overlimit or if there are any past due amounts, these amounts will be added to your minimum payment amount.

**FINAL PAYMENT:** On the maturity date listed above, you must pay the amount of any remaining loan account balance outstanding. Paying the minimum payment amount monthly may not fully repay the principal that is outstanding on your line. At that time you may be required to pay the entire balance in a single balloon payment. (The amount of your line of credit, the timing of your payments and your pattern of advances all affect whether you will have to make such a payment.)

If you have any loan account balance at that time, we are not obligated to refinance your account, but will consider your request to do so. If you refinance this account at maturity, you may have to pay some or all of the closing costs normally associated with a new loan even if you obtain financing from us.

**ADDITIONAL REPAYMENT TERMS:** If your loan account balance on a payment date is less than the minimum payment amount, you must pay the loan balance plus fees that have been assessed.

If you fail to make a payment, we may, but are not required to, advance money to you to make the payment. All the terms of this agreement would apply to such a loan.

You can pay off all of what you owe at any time. However, so long as you owe any amount you must continue to make your periodic minimum payment.

The amounts you pay will first reduce the finance charges associated with your account, then will reduce miscellaneous charges, cash advances, and purchases.

☐ **AUTOMATIC WITHDRAWAL:** If checked, you authorize us to automatically withdraw your payment from your personal checking account with us. The minimum payment amount indicated on your statement will be deducted two business days after the payment due date. If your checking account does not have enough money in it to make the minimum payment, we may, but are not required to, lend you money to make the payment. All terms of this agreement will apply to such a loan. If your loan account balance is less than the minimum payment amount, we will withdraw only the amount necessary to reduce your loan account balance to zero.

**SECURITY:** To secure the payment of what you owe, any extension or renewals thereof and all other existing and future indebtedness you may have to us (whether direct, indirect, absolute or contingent), you do hereby grant to us a security interest in all money and other property held by us on deposit, in safekeeping or otherwise for your account or to your credit or in which you have an interest. Collateral securing other loans you have with us may also secure loans under this agreement.

We have also secured your obligations under this plan by taking a mortgage lien dated 06/28/2006 on your personal residence located at:
2711 Barbados LN Lexington KY 40509

Filing Fees $ .00

**You may buy property insurance from anyone you want who is acceptable to us.**

**CHANGING THE TERMS OF THIS AGREEMENT:** Generally, we may not change the terms of this agreement. However, we may change the terms in the following circumstances:

- We may change the index and margin if the original index described above becomes unavailable. Any new index will have a historical movement similar to the original, and, together with a new margin, will produce a similar interest rate.
- We may make changes that you have agreed to in writing.
- We may make changes that unequivocally benefit you.
- We may make changes to insignificant terms of this agreement.

If we are required to send notice of a change in terms, we will send the notice to your address listed above (you should inform us of any change in address).

See reverse for information regarding suspension of credit and reduction of credit limit.

**ADDITIONAL CHARGES:** You agree to pay the following additional charges:

- A fee of $20.00 per year in order to participate in this plan.
- A late charge on any payment not paid when due of $5.00.
- Closing Costs

| | |
|---|---|
| Appraisal | $ .00 |
| Attorney/Title Fees | $ .00 |
| Flood Hazard Determination | $ .00 |
| Official Fees | $ .00 |
| Other | $ .00 |

**ATTORNEY'S FEES:** You agree to pay us, if you default, all court and other collection costs incurred by us, including reasonable attorney's fees (if we refer the collection to an attorney not a salaried employee of ours).

**NOTICE:** See the reverse side for additional terms and for information about your rights in the event of a billing error.

**SIGNATURES:** By signing below, you agree to the terms on both sides of this agreement and you promise to pay any amounts you owe under this agreement. You also state that you received a completed copy of the agreement on today's date.

Signature _______________
Douglas A Wain

Signature _______________
Elisa Wain

EXHIBIT A



0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000006 of 000013

AMB : 000006 of 000013

**GEL Agreement**

## ADDITIONAL TERMS

**DEFAULT:** You will be in default on this agreement if any of the following occur.
(1)You engage in fraud or material misrepresentation, by your actions or failure to act, in connection with any phase of this home equity line of credit; (2)You do not meet the repayment terms of this agreement; (3)Your action or inaction adversely affects the collateral or our rights in the collateral, including but not limited to; (a)failure to maintain required insurance on the dwelling, (b) your transfer of the property, (c) failure to maintain the property or use of it in a destructive manner; (d) commission of waste,(e) failure to pay taxes on the property or otherwise fail to act and thereby cause a lien to be filed against the property that is senior to our lien; (f) death; (g) the property is taken through eminent domain,(h) if you die, (i) a judgment is filed against you and subjects you and the property to action that adversely affects our interest, or (j) a prior lien holder commences a foreclosure or forecloses on the property and as a result, our interest is adversely affected.

**REMEDIES** We may terminate your account, require you to pay the entire outstanding balance in one payment and charge you fees related to the collection of the amount owing, including attorney's fees, if you are in default in any manner described above. In that instance, we may take other action short of termination. If you fail to maintain required property insurance and we purchase insurance, we will charge you the cost of the insurance by adding such to the principal balance of your account. If we elect to terminate and accelerate the amounts owing on your account, we may use our right of set-off, unless prohibited.

Even if we choose not to use one of our remedies when you default, we do not forfeit our right to do so if you default again. If we do not use a remedy when you default, we can still consider your actions as a default in the future.

**SUSPENSION OF CREDIT AND REDUCTION OF CREDIT LIMIT:**
We may prohibit you from obtaining additional extensions of credit, or reduce your credit limit if,

(1) The value of the dwelling securing this home equity line of credit declines significantly below its appraised value for purposes of this line;
(2) We reasonably believe you will not be able to meet the repayment requirements due to a material change in your financial circumstances;
(3) You are in default of a material obligation of this agreement, which shall include, but is not limited to, your ongoing obligation to supply us with information we feel we need to assess your financial condition;
(4) A government action prevents us from imposing the annual percentage rate provided for in this agreement;
(5) The action of a governmental body adversely affects our security interest to the extent that the value of the security interest is less than 120% of the home equity line;
(6) The annual percentage rate corresponding to the periodic rate reaches the maximum rate allowed under this plan; or
(7) A regulatory agency has notified us that continued advances would constitute an unsafe business practice.

In the event that we suspend your right to additional advances or reduce your credit line, we will send you notice of our decision at the address listed on the front of this agreement. (You should inform us of any change in your address.) If we have based our decision to suspend or reduce your credit privileges on an assessment of your financial condition or performance under this plan, and you believe that your situation has changed, you must request that we re-evaluate your situation, and reinstate your credit privileges.

**CREDIT INFORMATION:** You agree to supply us with whatever information we reasonably feel we need to decide whether to continue this plan. We agree to make requests for this information without undue frequency, and to give you reasonable time in which to supply the information.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us in Case of Errors or Questions About Your Bill*

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve you rights.
In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities*
*After We Receive Your Written Notice*

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't't make a mistake, you may have to pay finance charges and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### LIABILITY FOR UNAUTHORIZED USE OF THE GOLD EQUITY LINE CARD

You will notify Central Bank immediately upon discovering loss, theft, or unauthorized use of your GOLD EQUITY LINE CARD. You may be liable for the unauthorized use of your GOLD EQUITY LINE CARD. You will not be liable for unauthorized use that occurs after you notify us at the address on the other side of this form, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.

*Special Rule for Credit Card Purchases*

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
(a)You must have made the purchase in your home state or if not within your home state within 100 miles of your current mailing address; and
(b)The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Foreign Transactions. The exchange rate between the transaction currency and the billing currency used for processing international transactions is a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government – mandated rate in effect for the applicable central processing date. The International Service Assessment (ISA) Fee, which takes effect April 2, 2005, will assess a fee equal to 1.0% of the transaction amount for all cross-currency transactions. Holder agrees to pay charges and accept credits for the converted transaction amounts in accordance with the terms of this paragraph.

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000007 of 000013

AMB : 000007 of 000013

BOOK 5765 PAGE 593

Central Bank

# GOLD EQUITY LINE MORTGAGE

THIS MORTGAGE is made this 28TH day of JUNE, 20 06 between the Mortgagor, Douglas A. Wain and Elisa Wain, husband and wife (hereafter singly or collectively called the "Borrower"), and the Mortgagee, Central Bank & Trust Co., a Kentucky corporation, whose address is 300 W. Vine Street, Lexington, Kentucky 40507 (herein "Lender"). Fayette County

WHEREAS, Borrower is indebted to Lender, pursuant to Borrower's Gold Equity Line Agreement and terms and conditions contained therein in which the maximum principal indebtedness is $ 350,000.00, which indebtedness is evidenced by Borrower's Gold Equity Line Agreement and terms and conditions dated 6/28/06 (herein "Note"), providing for installments of principal and interest and miscellaneous fees, with the balance of the indebtedness, if not sooner paid, due and payable fifteen (15) years from date, said maturity date being 6/28/2021

TO SECURE to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, (b) the repayment of any future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 19 hereof (herein "Future Advances"), and (c) any other indebtedness owed to Lender, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of Fayette, Commonwealth of Kentucky:

See Exhibit A attached hereto and incorporated herein by reference

which has the address of 2711 Barbados Lane, (Street) Lexington (City) Kentucky 40509 (Zip Code) (herein "Property Address"):

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property".

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due principal and interest indebtedness evidenced by the Note and late charges, fees, costs and other charges as provided in the Note.
2. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement creating a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.
3. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

   The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement creating a lien which has priority over this Mortgage.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

   If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.
4. ***Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.*** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.
5. ***Protection of Lender's Security.*** If Borrower fails to perform the covenants and agreements contained in the Note or this Mortgage, or fails to pay any insurance, taxes, assessments and other charges, fines and impositions as required herein, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law

   Any amounts disbursed by Lender pursuant to this paragraph 5 with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 5 shall require Lender to incur any expense or take any action hereunder.
6. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.
7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.
8. ***Borrower Not Released; Forbearance by Lender Not a Waiver.*** Extension of the time for payment or modification or amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

RETURN TO:

McBRAYER, McGINNIS, LESLIE
& KIRKLAND, PLLC
201 EAST MAIN ST. STE 1000

EXHIBIT B

Form #08-0020 Rev. 6/00



0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000008 of 000013
AMB : 000008 of 000013

9. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective heirs, personal representatives, successors and assigns of Lender and Borrower, subject to the provisions of paragraph 14 hereof. All covenants and agreements of the Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

10. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

11. **Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the Commonwealth of Kentucky. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end, the provisions of the Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

12. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

13. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

14. **Transfer of the Property.** The Borrower will not, either directly or indirectly, convey or contract to convey the Property or any interest therein, to any other party, or further encumber the Property, or any interest therein, in any manner without first obtaining the written consent of the Lender. Should a creditor, receiver or trustee in bankruptcy obtain any interest in the Property, or should any party obtain an interest by levy, execution, attachment, or any means other than inheritance or devise, the entire principal balance of the Note secured by this Mortgage, together with interest and service charge accruing thereon, shall become immediately due and payable at the option of the Lender.

15. **Acceleration and Remedies.**
(a) Upon the Borrower's failure to promptly pay any taxes, assessments, and other charges or impositions as required herein, or effect insurance as provided herein, or upon Borrower's failure to pay any installment payment of principal or interest on said Note after the same shall become due or upon the Borrower's violation of any of the terms or conditions of said Note or of this Mortgage, then Lender may, at its option, declare all sums secured by this Mortgage to be immediately due and payable, and proceed forthwith to collect said Note and enforce this Mortgage. Once this Mortgage has been accelerated by virtue of this acceleration clause, subsequent payment of arrears shall not cure the default unless expressly agreed to in writing by the Lender. Lender shall be entitled to collect in any proceeding to enforce this Mortgage all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, and costs of documentary evidence, abstracts, title reports and other costs allowed by law.
(b) If foreclosure proceedings of any first or second mortgage or any junior or senior lien or encumbrance shall be instituted, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable, and the Note evidencing same, as being immediately due and payable, and may start such proceedings as may be necessary or advisable to protect its interest in the premises, including the appointment of a receiver, and its lien herein granted upon rents, issues and profits shall be prior to the lien or of any junior encumbrancer or lien holder upon the rents, issues or profits collected or to be collected by a receiver appointed at the instance of any junior encumbrancer or lien holder.

16. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 15 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.
Upon acceleration under paragraph 15 hereof or abandonment of Property, and at any time prior to the expiration of any period of redemption following sale of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

17. **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage. Borrower shall pay all costs of recordation, and releasing, if any.

18. **Waiver of Homestead.** Borrower hereby waives all right of homestead exemption in the Property.

19. **Future Advances.** Upon request of Borrower, Lender at Lender's option prior to release of this Mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by separate promissory notes(s) or advanced pursuant to the Note. At no time shall the principal amount of the indebtedness secured by this Mortgage, not including sums advanced in accordance herewith to protect the security of this Mortgage, exceed the amount of the Note plus US $____-0-____. All Future Advances secured by this Mortgage shall be due and payable on or before the maturity date of the indebtedness evidenced by the Note.

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

[signature] —Borrower
Douglas A. Wain

[signature] —Borrower
Elisa Wain

STATE OF KENTUCKY)
)SS
County of Fayette )

This foregoing instrument was acknowledged before me this June 28th 2006
(Date)

by Douglas A. Wain and Elisa Wain, husband and wife
(Person Acknowledging)

My commission expires 8/3/08 [signature]
Notary Public

This instrument was prepared by Mary E. Haggin of McBrayer, McGinnis, Leslie & Kirkland, PLLC
201 East Main Street, Suite 1000, Lexington, Kentucky 40507, (859) 231-8780

(Space Below This Line Reserved for Lender and Recorder)

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000009 of 000013

AMB : 000009 of 000013

EXHIBIT A

Being all of Lot No. 17, Unit 1, of the Greenbriar Estates Subdivision, to the City of Lexington, Fayette County, Kentucky as shown by map or plat thereof of record in Plat Cabinet A, Slide 7, in the office of the Fayette County Clerk; said premises being known and designated as 2711 Barbados Lane, Lexington, Kentucky; and

Being the same property conveyed to Douglas A. Wain and Elisa Wain, husband and wife, by deed dated March 26, 1991 of record in Deed Book 1580, Page 347, in the office of the Fayette County Clerk.

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000010 of 000013

AMB : 000010 of 000013

**MORTGAGE BOOK 5765 PAGE 596**

**I, Donald W Blevins, County Court Clerk of Fayette County, Kentucky, hereby certify that the foregoing instrument has been duly recorded in my office.**

Donald W Blevins

**By: DOUG BRADLEY , dc**

**200607050120**

**July 5, 2006 9:15:40 AM**

| | | | |
|---|---|---|---|
| **Fees** | **$12.00** | **Tax** | **$.00** |

**Total Paid $12.00**

**THIS IS THE LAST PAGE OF THE DOCUMENT**

**4 Pages**

**593 - 596**

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000011 of 000013

000011 of 000013

SUBORDINATION AGREEMENT

For $1.00 and other good and valuable consideration the undersigned does hereby subordinate and make inferior that certain mortgage executed by Douglas A. Wain and Elisa Wain, husband and wife, dated June 28, 2006, and in the original principal sum of $350,000.00, in favor of Central Bank & Trust Co., with a principal address of 300 West Vine Street, Lexington, Kentucky, 40507, and recorded in Mortgage Book 5765, Page 593, of the Fayette County Clerk and the debt secured thereby; to that certain mortgage made by Douglas A. Wain and Elisa Wain, husband and wife, in favor of Central Bank & Trust Co., d.b.a. Central Bank Mortgage Co., with a principal address of 300 West Vine Street, Lexington, Kentucky, 40507, dated March 5, 2008, and recorded in Mortgage Book 6319, Page 226, in the office of the Fayette County Clerk securing a note in the amount of $417,000.00.

Dated in Lexington, Kentucky, this 5 day of March, 2008.

Fayette County Clerk Recording
Related Documents
From 205
To 207

Central Bank & Trust Co., a Kentucky Banking Corporation
By: [signature]
Title: Branch Manager

STATE OF KENTUCKY)
COUNTY OF FAYETTE)

The foregoing instrument was acknowledged before me this 5 day of March, 2008, by Dayton Hatcher as Branch Manager of Central Bank & Trust Co., a Kentucky Banking Corporation, on behalf of said Corporation.

My Commission Expires: 8/9/09

Anabelle Bertrand
NOTARY PUBLIC, STATE OF KENTUCKY

ANABELLE BERTRAND NOTARY PUBLIC STATE AT LARGE KENTUCKY

This Instrument Prepared By: Mary Estes Haggin

Mary Estes Haggin
McBrayer, McGinnis, Leslie, & Kirkland PLLC
201 East Main Suite 1000
Lexington, Kentucky 40507
859-231-8780

RETURN TO:

McBRAYER, McGINNIS, LESLIE & KIRKLAND, PLLC
201 EAST MAIN ST., STE. 1000
LEXINGTON, KY 40507

CLERK'S NOTE:
Quality of book pages & scanned images reflects original document presented

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000012 of 000013

EXHIBIT C

I, Donald W Blevins, County Court Clerk of Fayette County, Kentucky, hereby certify that the foregoing instrument has been duly recorded in my office.

Donald W Blevins

By: DOUG BRADLEY , dc

200803110207

March 11, 2008 10:00:00 AM

Fees $13.00 Tax $.00

Total Paid $13.00

THIS IS THE LAST PAGE OF THE DOCUMENT

2 Pages

239 - 240

0CCB8BA0-FF08-4076-B817-AB6A69AE3BBE : 000013 of 000013

AMB : 000013 of 000013

# EXHIBIT B

RECEIVED
JAN 21 2021

ENTERED
ATTEST VINCENT R... CLERK
JAN 20 2021
FAYETTE CIRCUIT CLERK
BY_____________ DEPUTY

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
NINTH DIVISION

CENTRAL BANK & TRUST CO. PLAINTIFF

V. NO. 19-CI-00812

**PARTIAL SUMMARY JUDGMENT,
JUDGMENT ON THE PLEADINGS,
AND ORDER OF SALE**

DOUGLAS A. WAIN;
ELISA WAIN; and DITECH
FINANCIAL LLC[1], successor by merger
to GREEN TREE SERVICING LLC DEFENDANTS

**** **** **** ****

THIS matter having been brought before the Court upon the motion of the Plaintiff, Central Bank & Trust Co. (hereinafter "Central Bank" or the "Bank"), for Partial Summary Judgment, Judgment on the Pleadings and Order of Sale (collectively the "Motion"), under Kentucky Civil Rules of Procedure 56 on the grounds, among others, that there is no genuine issue of material fact and it is entitled to judgment as a matter of law; the Court having conducted a hearing and heard arguments of counsel; and the Court being sufficiently advised and having thoroughly reviewed and considered the evidence, pleadings, papers and record herein, the Court finds, holds and rules as follows:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The following Defendants were each duly served with Summons according to law and service on each Defendant is approved:

[1] On May 1, 2020, Shannon O'Connell Egan and Nathan H. Blaske of Dinsmore & Shohl LLP, counsel for NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez"), assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC filed an entry of appearance, submitting NewRez to the jurisdiction of this Court.

| DEFENDANT | METHOD OF SERVICE | DATE SERVED | ANSWER FILED |
|---|---|---|---|
| Douglas A. Wain | Fayette Co. Constable | 03-26-19 | 04-19-19 and 12-04-19 |
| Elisa Wain | Fayette Co. Constable | 03-26-19 | 04-19-19 and 12-04-19 |
| Ditech Financial LLC, successor by merger to Green Tree Servicing, LLC | Certified Mail to Registered Agent | 11-18-19 | 12-02-19 |
| NewRez LLC d/b/a Shellpoint Mortgage Servicing, assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC | | | 05-01-20 (Entry of Appearance) |

Venue is proper as the real estate sought to be foreclosed lies within the Court's jurisdictional boundaries.

The Court finds that all necessary parties are properly before the Court and the Court has subject matter jurisdiction over the issues in this case.

Central Bank has met its burden of proof on its Motion and is entitled to judgment under Civil Rule 56 and an order of sale of the subject Property, as hereinafter defined, as herein awarded below.

**<u>JUDGMENT</u>**

**IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:**

1. The Motion of Plaintiff, Central Bank is sustained in its entirety.

2. Central Bank is awarded Judgment *in personam* against the Defendants, Douglas A. Wain and Elisa Wain (collectively, the "Wains"), jointly and severally, in the amount of $358,412.72, with interest thereon at the variable rate provided by the subject equity line agreement from March 6, 2019 until paid (currently 3.25% per annum, $31.13 per diem), late charges and such other costs, expenses and damages, including collection expenses, incurred or to be incurred, and attorneys' fees in an amount to be determined by the Court (hereinafter referred to as the "Judgment Amounts").

3. Securing the Judgment Amounts, Central Bank is adjudged to have a valid, enforceable, second mortgage lien on the certain real property described in the Complaint, Amended Complaint and the mortgage attached thereto as 2711 Barbados Lane, Lexington, Fayette County, Kentucky, which is more particularly described in **Exhibit A** attached hereto and incorporated herein by reference (the "Property"), which is only subject to the valid first mortgage lien of the Defendant, Ditech Financial, LLC ("Ditech"), successor by merger to Green Tree Servicing LLC, and/or its assignee, NewRez; and unpaid, delinquent *ad valorem* taxes, if any. Neither Ditech nor NewRez has filed or asserted a counterclaim or cross-claim in this action and neither party responded or disputed the Bank's Motion.

4. The duties and obligations of the Wains under the Gold Equity Line Agreement and the Gold Equity Line Mortgage (attached as Exhibits "A" and "B," respectively, to the Bank's Amended Complaint) shall be fully enforced by this Judgment.

**ORDER OF SALE**

5. The Property is a single residential lot with improvements thereon that cannot be divided without materially impairing the value thereof or the interest of the parties thereto, and the Property shall be sold **AS IS, WITH FAULTS, WITHOUT WARRANTIES OF ANY KIND**, as a whole for the purpose of enforcing the Judgment and Central Bank's mortgage lien herein adjudged against the Property.

6. The Property shall be immediately referred to the Master Commissioner of this Court for sale and shall be sold by the Master Commissioner upon the conditions set forth in RFCC 26(b)(4), which are incorporated herein by reference, and as follows:

A. The Master Commissioner is authorized, ordered and directed to advertise and appraise the Property and to offer the Property and any improvements and fixtures thereon at public auction, on the 8th day of February, 2021, at or about the hour of N/A, local time. The auction shall be held in person or, due to Covid-19, on-line on a secure, designated auction website open to the public.

B The Property shall be sold as a whole to the highest bidder on terms of 10% of the purchase price paid at the time of the sale with the balance to be paid within thirty (30) days, and, pursuant to KRS 426.705, any purchaser shall be required to execute bond with surety thereon to be approved by the Master Commissioner to secure the unpaid portion of the purchase price, with the bond to bear interest at the rate the judgment bears (3.25% per annum) from date of sale until paid, and the bond shall have the same force and effect as a judgment and shall remain and be a lien on the Property until fully paid.

C. The purchaser shall have the privilege of paying the entire purchase price in cash at time of sale or paying said bond before maturity by paying the principal amount thereof together with all interest accrued thereon until the date of said payment.

D. Before making sale of the Property, the Master Commissioner shall advertise the aforesaid time, terms and on-line location of the sale, together with a description of the Property to be sold, approximately 7 to 21 days prior to the date of sale by inserting an advertisement in a newspaper having general circulation in Fayette County.

E. Before making sale of the Property, the Master Commissioner shall have the Property appraised by two intelligent disinterested housekeepers of Fayette County, Kentucky, not related to any of the parties of this action. The appraisers shall be sworn by the Master Commissioner before making such appraisal and they shall return their appraisals in writing to the Master Commissioner, same to be a part of the record in this case.

F. The Master Commissioner shall, after making said sale, report same to this Court for further action herein.

G. In the event the purchaser of the Property fails to comply with the above terms of sale, then in such event the Master Commissioner shall immediately resell the Property upon further order of this Court, upon the same terms and conditions as hereinabove set forth.

H. The purchaser at the Master Commissioner's sale shall take the Property free and clear of the claims of the parties to this action and all existing liens recorded after the recording of Central Bank's Lis Pendens Notice, but subject to the following:

(1) Current year real estate taxes affecting the Property for which the purchaser shall take no credit on the purchase;

(2) Easements, restrictions and stipulations of record;

(3) Any matters that would be disclosed by an accurate survey or inspection of each of the Properties; and

(4) Any current assessments for public improvements levied against the Property.

I. In the event Central Bank purchases the Property, subparagraphs (B) and (C) of this paragraph shall not apply; provided, however, if Central Bank's bid exceeds its judgment amount, Central Bank will be required to pay the difference in full or provide deposit and pay interest until paid.

7. The Master Commissioner, the Court, and Central Bank shall not be deemed to warrant title of the Property to the purchaser.

8. Risk of loss shall pass to the successful bidder upon acceptance by the Master Commissioner of the final bid. The successful bidder/purchaser shall have an insurable interest in the purchased property immediately upon acceptance by the Master Commissioner of the final bid for the Property.

9. There are currently no delinquent *ad valorem* taxes due on the Property and therefore the proceeds of the sale shall be applied in the following order of priority:

A. The Master Commissioner's costs and fees;

B. The satisfaction of the mortgage lien of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC, and/or its assignee, NewRez LLC d/b/a Shellpoint

Mortgage Servicing, which is required to obtain Judgment herein prior to its obtaining any proceeds;

C. The satisfaction of Central Bank's mortgage lien as adjudicated herein, including reimbursement for its costs, expenses and attorneys' fees as set forth herein; and

D. Any remaining proceeds of the sale shall be held by the Master Commissioner until further order of this Court for distribution to the Defendants as their interests may appear.

10. In the event the Property sells for less than the Judgment Amounts awarded to Central Bank herein, after payment of court costs, and fees, expenses, and costs of sale, the Defendants, Douglas A. Wain and Elisa Wain, shall be jointly and severally liable to Central Bank for any deficiency amount(s) which may remain after the sale of the Property and application of the net sale proceeds due to Central Bank.

11. Jurisdiction is retained for such further orders and proceedings as may be necessary, including but not limited to, a determination of reasonable attorney's fees under numerical paragraph 3 of this Judgment and, with respect to future attorneys' fees, expenses and costs incurred during the post-judgment process, including any appeal of this Judgment, Central Bank may apply for additional fees, expenses and costs as may be incurred in the future upon proper application to the Court related to the enforcement, collection and preservation of this Judgment on appeal. Further, the Wains have asserted a counterclaim that may be pursued separately from Central Bank's claims, as set forth in the Bank's motion and memorandum of law.

12. This is a final and appealable Judgment, and there is no just cause for the delay in the entry thereof.

13. Pursuant to CR 77.04, the Circuit Court Clerk shall serve notice of the entry of this Judgment and Order of Sale.

DATED this 19 day of January, 2021.

/S/ KIMBERLY N. BUNNELL
A TRUE COPY
ATTEST, VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
BY ______ D.C.

JUDGE, FAYETTE CIRCUIT COURT

**TO BE ENTERED:**

STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
Phone: (859) 231-3000

By: ______
GREGORY D. PAVEY
ATTORNEYS FOR CENTRAL BANK

**HAVE SEEN AND APPROVED:**

/s/ JAMES H. FRAZIER, III DM
HON. JAMES H. FRAZIER, III
MASTER COMMISSIONER,
FAYETTE CIRCUIT COURT

**CLERK'S CERTIFICATE OF SERVICE**

This is to certify that a true copy of the foregoing was duly served by mail this 20 day of Jan, 2021, to:

James H. Frazier, III, Esq.
201 E. Main Street, Suite 770
Lexington, Kentucky 40507
MASTER COMMISSIONER

Gregory D. Pavey, Esq.
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
ATTORNEYS FOR CENTRAL BANK

David W. Hemminger, Esq.
HEMMINGER LAW OFFICE, PSC
331 Townepark Circle, Suite 100-C
Louisville, Kentucky 40243
hemmingerlawoffice@gmail.com
ATTORNEY FOR DOUGLAS & ELISA WAIN

Paul M. Nalepka, Esq.
REISENFELD & ASSOCIATES LLC
3962 Red Bank Road
Cincinnati, OH 45227
KYE-Notifications@rslegal.com
ATTORNEYS FOR DITECH FINANCIAL, LLC,

Shannon O'Connell Egan
Nathan H. Blaske
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Shannon.Egan@dinsmore.com
Nathan.Blaske@dinsmore.com
ATTORNEYS FOR NEWREZ LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,
ASSIGNEE OF DITECH FINANCIAL, LLC

CLERK, FAYETTE CIRCUIT COURT

rdh/ 100443.163845
Doc#8403596.4

**PROPERTY DESCRIPTION**

Being all of Lot No. 17, Unit 1, of the Greenbriar Estates Subdivision, to the City of Lexington, Fayette County, Kentucky as shown by map or plat thereof of record in Plat Cabinet A, Slide 7, in the office of the Fayette County Clerk; said premises being known and designated as 2711 Barbados Lane, Lexington, Kentucky; and

Being the same property conveyed to Douglas A. Wain and Elisa Wain, husband and wife, by deed dated March 26, 1991 of record in Deed Book 1580, Page 347, in the office of the Fayette County Clerk.

**Parcel No. 22739900**

**EXHIBIT A**

# EXHIBIT C

Douglas Wain and Elisa Wain

PEL no. [redacted]1792

Payoff good through 12/19/2024

| | | |
|---|---|---|
| Principal | $ | 273,899.64 |
| Fees | $ | 145.00 |
| Interest | $ | 83,900.27 |
| Subtotal | $ | 357,944.91 |
| LR Fee | $ | 46.00 |
| **TOTAL** | **$** | **357,990.91** |
| | | |
| **Good Thru 12/19/24** | **Per Diem $0.00** | |

**Central Bank**



## Summary of Account Activity

| | |
|---|---|
| Account Ending in | 0385 |
| Previous Balance | $424,829.51 |
| Payments | $66,884.60 |
| Other Credits | $0.00 |
| Purchases & Debits | $0.00 |
| Purchases | $0.00 |
| Balance Transfers | $0.00 |
| Cash Advances | $0.00 |
| **Fees Charged** | $0.00 |
| **Interest Charged** | $0.00 |
| New Balance | $357,944.91 |
| Statement Closing Date | **03/28/2024** |
| Days in Billing Cycle | 29 |
| Credit Limit | $0.00 |
| Available Credit | $0.00 |
| Available Cash | $0.00 |

**Questions?** View your account information online at https://www.centralbank.com or call our Customer Service Center toll free at 1-800-637-6884 or 1-859-253-6359.

**Send Billing Inquiries and Correspondence to:**
P.O. Box 1360, Lexington, KY 40588-1360

**Mail Payments to:** P.O. Box 1750, Lexington, KY 40588-1750

## Payment Information

| | |
|---|---|
| New Balance | $357,944.91 |
| Payment Due Date | 04/25/2024 |
| Minimum Payment Due | $11,555.14 |
| Amount Past Due: | **$11,455.14** |

**Late Payment Warning:**
If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $5.00.

**Minimum Payment Warning:**
Even if you make no more charges using this card, if you make only the minimum payment each month we estimate **you will never pay off the balance shown on this statement**because your payment will be less than the interest charged each month.

If you make more than the minimum payment each period, you will pay less in interest and pay off your balance sooner. For example, if you instead paid **$9,943.00** per month, you would pay off the balance shown on this statement in around **3 years.**

If you would like information about credit counseling services, call 1-800-388-2227

## REWARD SUMMARY

| | |
|---|---|
| Beginning Points | 0 |
| Points Earned | 0 |
| Points Redeemed | 0 |
| Points Expired | 0 |
| New Points Balance | 0 |
| Points Expiring First of Next Month | 0 |

TEAR OFF THIS PAYMENT STUB AND MAIL WITH YOUR CHECK OR MONEY ORDER TO THE ADDRESS BELOW.

Central Bank & Trust Co
P.O. Box 1360
Lexington, KY 40588-1360

VISA

| | |
|---|---|
| Account Ending In | 0385 |
| **Payment Due Date** | 04/25/2024 |
| **New Balance** | $357,944.91 |
| **Past Due Amount** | $11,455.14 |
| **Minimum Payment Due** | $11,555.14 |

Make Check Payable To: $

DOUGLAS A WAIN
ELISA WAIN
2711 BARBADOS LN
LEXINGTON KY 40509-9508

Central Bank & Trust Co
P.O. Box 1750
Lexington, KY 40588-1750

[redacted]

**INTEREST ON ACCOUNTS -** HOW THE INTEREST CHARGES ARE COMPUTED:

(A) Imposition of INTEREST CHARGES as to purchases made with card (hereafter referred to as "Purchases") charged to your account:

(1) Application of INTEREST CHARGES begins on the date in which a Purchase posts to your account. The INTEREST CHARGE is imposed so long as the Purchase remains unpaid.

(2) Average Daily Balance of Purchases (including New Purchases) . To figure and impose any INTEREST CHARGE, we will apply the daily periodic rate to the "Average Daily Balance of Purchases" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Purchases" we take the beginning balance of your Purchases each day, add any new Purchases and subtract payments or credits, unpaid Interest Charges, and any other charges. This gives us the daily balance of Purchases. Then, we add up all the daily balances of Purchases for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "Average Daily Balance of Purchases".

(B) Imposition of INTEREST CHARGES as to CASH ADVANCES charged to your account:

(1) Application of INTEREST CHARGES begins on the date in which a CHECK is transacted on your account or a CASH ADVANCE transaction is made on your account (hereinafter referred to as "Cash Advance"). The INTEREST CHARGE is imposed so long as the CASH ADVANCE balance remains unpaid.

(2) Average Daily Balance of Cash Advances (including New Cash Advances). To figure and impose any INTEREST CHARGE, we will apply the daily periodic rate to the "Average Daily Balance of Cash Advances" in your account during the billing cycle covered by the Periodic Statement. To get your "Average Daily Balance of Cash Advances" we take the beginning balance of Cash Advances each day, add any new Cash Advances and subtract any payments or credits, unpaid Interest Charges, and any other charges. This gives us the daily balance of Cash Advances. Then, we add up all the daily balances of Cash Advances for the billing cycle and divide the total by the number of days in the billing cycle. This gives the "Average Daily Balance of Cash Advances".

(C) The daily periodic rate and corresponding Annual Percentage Rate (APR) or both purchases and cash advances may vary monthly and shall be adjusted on the first day of each billing period. The APR on these change dates shall be tied to the highest prime rate published in the Wall Street Journal "Money Rate" tables from the previous month's last publication. The daily periodic rate is 1/365th of the APR.

**ANNUAL PROGRAM FEE DISCLOSURE**

If your account is subject to an annual program fee and the front of this statement contains a message that your annual program fee will be billed on an upcoming statement, you can avoid paying the fee if you terminate credit availability under the account on or before the date specified in the message. To terminate credit availability, send us your written request for termination at the address for inquiries on the front of this statement.

**YOUR BILLING RIGHTS KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us at the address below. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve you rights.

CENTRAL BANK
ATTN: CARD SERVICES DEPT
PO BOX 1360
LEXINGTON KY 40588-1360

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including interest, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any interest related to any questioned amount. If we did not make a mistake, you may have to pay interest and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

**Special rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and,

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Negative credit reports -** As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Foreign transaction fee -** A foreign transaction fee of 1% of the transaction will apply to purchases.

**Closing date -** The closing date is the last date of the billing cycle: all transactions received after the closing date will appear on your next statement.

**Payment crediting and credit balance -** Payments received at the location specified on the front of the statement after the phrase "Mail Payments to:" will be credited as of the date of receipt to the account specified on the payment coupon. Payments made in person during normal business hours at branch locations where such payments are accepted will be treated as received the same day. Payments must be made in U.S. dollars. Payments that do not conform to the requirements set forth on or with the periodic statement (e.g. missing payment stub, payment envelope other than as provided with your statement, multiple checks or multiple coupons in the same envelope) may be subject to delay in crediting, but shall be credited within 5 days of receipt. If there is a credit balance due on your account, you may request in writing a full refund. Submit your request to the address indicated on the front of this statement under the heading "Account Inquiries".

O1OS1176 - 03/08/2024

TO REPORT LOST OR STOLEN CARDS
CALL 1-859-253-6222
OR 1-800-637-6884

CHANGE OF ADDRESS: If correct on front, do not complete:

Name: ______________________________

Address 1: ______________________________

City: ______________________ State: ______________ Zip: ______________

Home Phone Number: (_______) - ______________________ Work Phone Number: (_______) - ______________

Central Bank



## Account Summary

| Type of Balance | Annual Percentage Rate (APR) | Balance Subject To Interest Rate | Interest Charge | Promo End Date |
|---|---|---|---|---|
| Purchases | 8.50% (v) | $0.00 | $0.00 | |
| Cash Advance | 8.50% (v) | $0.00 | $0.00 | |
| Balance Transfer | 8.50% (v) | $0.00 | $0.00 | |

(v) = Variable Rate

## Important Information

THANK YOU FOR CHOOSING CENTRAL BANK & TRUST CO FOR YOUR CREDIT CARD NEEDS.

Due to a system upgrade, your rewards points may not reflect the accurate amount on your current statement. The upgrade should be completed within 30 days, and any missing rewards points will be loaded in full and will be available for redemption. Your next statement should reflect the accurate amount. For further details about the upgrade, please visit www.centralbank.com or call 1-800-637-6884.

YOUR ACCOUNT IS 210 DAYS PAST DUE. CALL US AT 859-253-6359 TO AVOID FURTHER ACTION.

## Payments and Credits

| Post Date | Tran Date | | Reference Number | |
|---|---|---|---|---|
| **Payments** | | | | **$ Amount** |
| **DOUGLAS A WAIN** | | **XXXX XXXX XXXX 0385** | | **$66,884.60-** |
| 03/13 | 03/13 | Payment Thank You! | 7438835ET0000000J | $66,884.60- |

## 2024 Total Year-To-Date

| | |
|---|---|
| Total Fees charged in 2024 | $0.00 |
| Total Interest charged in 2024 | $0.00 |

# EXHIBIT K

**In The Matter Of:**

*WAIN v.*

*CENTRAL BANK & TRUST CO., et al.*

---

*STEVEN DENNIS HALL*

*August 21, 2026*

---

ALC
April L. Crites, RMR, CRR, CSR, CCR
National and International Realtime Court Reporter
aprilcrites@outlook.com
(434) 774-5993

*Min-U-Script® with Word Index*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION

- - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Civil Action No. 1:24-bk-11814-MB |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Chapter 13 |
| | : | |
| Debtors. | : | |
| DOUGLAS ALAN WAIN and ELISA WAIN, | : | Adversary Proceeding No. |
| | : | 1:25-ap-01026-MB |
| Plaintiffs, | : | |
| v. | : | |
| CENTRAL BANK & TRUST CO., et al., | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - x

VIDEOCONFERENCED (BY ZOOM) DEPOSITION OF

STEVEN DENNIS HALL

Lexington, Kentucky

Friday, August 21, 2026

11:38 a.m. EDT

Pages: 1 - 97

Reported By: April L. Crites, RMR, CRR, CSR, CCR

Notary Public, Commonwealth of Kentucky

Q Was that discussed while --
A No, sir. We already had a judgment for the full amount owed on the account.
Q Okay. I mean, you say you heard of the term. It's a legal -- well, it's called a deficiency judgment, correct?
MR. WISEMAN: Objection. Calling for a legal conclusion, or stating one.
MR. WAIN: I'm asking if he ever heard of it. I'm not asking him to define it.
THE WITNESS: Yes, I've heard -- yes, I've heard of it.
BY MR. WAIN:
Q Did you hear of it in the context of the Wain discussions?
A No.
Q When did you hear of it?
A Through the course of my career.
If we did not have a judgment on a debtor prior to the collateral being sold, then we would seek a deficiency judgment.
Q I'm sorry; say that again. I didn't understand.
A Well --
MR. WISEMAN: Objection. Asked and

Q Okay.

A No. In the foreclosure action, we were required, by law, to seek judgment, be granted a judgment against the debtor before the property could be sold.

Q All right.

A So the bank obtained the judgment, sent the property to the master commissioner for sale, the property was sold. The first mortgage-holder was paid the majority of the sale proceeds. The bank received approximately $66,000 from that sale and applied those funds to what was owed on the Wain debt.

So we did not have any need to seek a deficiency judgment; we had already obtained judgment for the entire amount owed on the debt.

Q Just to repeat what you said -- I don't want to put words in your mouth. You said the topic of deficiency -- getting a deficiency judgment was not discussed when continuing collection on the Wains?

A No, it was not discussed. We were already granted our judgment for the entire amount of the debt.

Q The original judgment on January 19, 2021,

approximately?
A If --
Q Yeah.
A Yeah. Yes.
Q So nobody advised you that -- or even discussed with you that you might need a deficiency judgment to continue collection?
A No.
Q Okay. It was -- March 7, 2024, was the settlement -- I mean, was the final distribution agreement where you received $66,000, approximately? Did you appeal that order?
MR. WISEMAN: If you have a document that could refresh his memory, if you have something to -- he can answer if he knows.
MR. WAIN: If he knows, he knows.
THE WITNESS: As far as I remember, I don't -- I do not remember an appeal of the distribution of funds. Prior to the distribution of funds, I do recall that we were taking actions to -- to implore the first mortgage-holder to file a motion for the distribution of funds. As I remember, they took -- I don't remember how long, but we waited and waited and waited for the first mortgage-holder to file that motion so the funds

Q Were you aware that there was two charge-offs, one in 2019 and 2023?
A Not that I recall.
Q Were you aware of any charge-offs that was reported?
A I was aware of the charge-off after we received -- I -- Mr. Wain, I don't recall.
Q But you would have been notified had it been reported as a charge-off to a credit agency?
A Yes -- no, I would not have been notified if it was reported to a credit agency.
Q So you would not know if it was charged off?
A Yes, I would know if it was charged off. I do not recall the exact charge-offs.
Q So you would know if it was charged off on Central Bank's books, but you would not know if it was charged off on the credit agencies? Is that what you're saying? I don't want to put words in your mouth.
A If it was charged off on Central Bank's books and in our loan accounting system, it would automatically be reported to the bureaus as a charge-off.
Q So after the auction on February 6, 2021,

Central Bank did not feel -- did not believe that the loan to the Wains was either satisfied or extinguished?
A No.
Q At any time while you were there, did Central Bank believe that the Wain loan was satisfied or extinguished?
A No.
Q So when you left, that was the policy of Central Bank?
A There was still money due on the loan.
Q That was based on the -- the watch loan committee?
A No. That was based on fact that the bank had not received what was owed on the loan.
Q Well, who agreed with that fact? Was it the watch loan committee?
A Have we not been through this already?
Q I think actually we have. Okay.
MR. WAIN: You know what, if you don't mind, I'm going to take a ten-minute break and go off the record. If that's okay?
THE WITNESS: Certainly.
MR. WAIN: Okay. Madam Court Reporter, we're going to take a -- let's make that a

C E R T I F I C A T E

COMMONWEALTH OF KENTUCKY )
) SS:
COUNTY OF KENTON )

I, April L. Crites, RPR, RMR, CRR, CSR, CCR, and a Notary Public within and for the Commonwealth of Kentucky, duly commissioned and qualified, DO HEREBY CERTIFY:

That the above-named STEVEN DENNIS HALL was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth;

That said testimony was reduced to writing by me stenographically in the presence of the witness and thereafter reduced to typewriting, and;

I FURTHER CERTIFY that I am not a relative or attorney of either party, in any manner interested in the event of this action, nor am I, or the court reporting firm with which I am affiliated, under a contract as defined in Civil Rule 28(D).

IN WITNESS WHEREOF, I hereunto set my hand and official seal of office at Covington, Kentucky, this 31st of August, 2026.

I, April L. Crites, a Kentucky Notary Public - State at Large - No. KYNP13794, for acts performed in or outside Kentucky for recordation in Kentucky; my commission expires: August 25, 2028.

April L. Crites, RPR, RMR, CRR, CSR, CCR

* * *

# EXHIBIT L

Case 1:24-bk-11814-MB Doc 123 Filed 01/30/26 Entered 01/30/26 08:44:40 Desc
Main Document Page 1 of 7

William E. Ireland (Bar No. 115600)
*wireland@hbblaw.com*
HAIGHT BROWN & BONESTEEL LLP
555 South Flower Street, Forty-Fifth Floor
Los Angeles, California 90071
Telephone: 213.542.8000
Facsimile: 213.542.8100

Attorneys for Defendant
Central Bank & Trust Co.

Haight

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>Douglas Alan Wain, Elisa Wain,<br><br>Debtors | CASE NO. 1:24-bk-11814-MB<br><br>CHAPTER 13<br><br>JUDGE Martin R. Barash<br><br>Adv. Proc. No. 1:25-ap-01026-MB |
| DOUGLAS ALAN WAIN and ELISA WAIN<br><br>Plaintiffs<br>v.<br><br>CENTRAL BANK & TRUST CO.<br><br>Defendant | **CENTRAL BANK'S SUPPLEMENTAL BRIEF**<br><br>HEARING:<br><br>Date: [To be set by the Court]<br>Time: [To be set by the Court]<br>Courtroom: 303<br>Address: 21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

**TO THE COURT AND THE DEBTORS/PLAINTIFFS:**

CENTRAL BANK & TRUST CO. ("Central Bank") submits this Supplemental Brief as requested by the Court and states as follows:

## I. Introduction

Central Bank's proof of claim (Claim No. 1) is based on a final Kentucky state-court judgment entered against the Douglas Alan Wain and Elisa Wain (the "Wains" or the "Debtors"). The Debtors' objections and their adversary proceeding impermissibly seek to relitigate liability and damages already conclusively determined by Kentucky's courts. Well-settled principles of jurisdiction, full faith and credit, and Kentucky res judicata law require allowance of the claim.

As requested by the Court, Central Bank will outline those principles, briefly. This Court lacks jurisdiction under the *Rooker–Feldman* doctrine to review or reject the state-court judgment, and Kentucky law mandates that the judgment be given full preclusive effect. In short, this Court is bound to give deference to the final Kentucky judgment. See Because there is no ground for disallowance under 11 U.S.C. § 502(b) applies, the claim must be allowed and the Debtors' collateral attacks ended.

## II. The Court Lacks Jurisdiction to Reconsider Central Bank's Judgment Under The *Rooker–Feldman* Doctrine

Federal courts, including bankruptcy courts, lack subject-matter jurisdiction to act as appellate tribunals reviewing state-court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Central Bank does not ask this Court to revisit the merits of the Kentucky state court's ruling; it seeks enforcement of a debt fixed by judgment. The Debtors' objection, by contrast, challenges the correctness of that judgment and is therefore a prohibited and *de facto* appeal. Any ruling sustaining the objection would require this Court to conclude that the state court erred—relief that *Rooker–Feldman* doctrine squarely forbids. In *Exxon Mobil Corp.*, the Supreme Court made clear the doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. In this case, Fayette Circuit Court in Kentucky entered

a final judgment—one affirmed on appeal by Kentucky's appellate courts[1]—that specifically found the Debtors liable to Central Bank for a debt secured by a mortgage. The Debtors cannot attack these findings now in their bankruptcy proceeding.[2] This precludes most of the Debtors' attacks on Central Bank's claim.

## III. <u>Kentucky Res Judicata Principles Require Preclusive Effect</u>

The Supreme Court of Kentucky has explained the doctrine of res judicata as follows:

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 Am Jur 2d § 514). The *Yeoman* court further explained that "[t]he doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion." *Id.* at 464-65. When two proceedings concern the same controversy, then the previous

---

[1] On November 4, 2022, the Kentucky Court of Appeals rendered an opinion affirming the judgment. *Wain v. Cent. Bank & Tr. Co.*, No. 2021-CA-0202-MR, 2022 Ky. App. Unpub. LEXIS 631 (Ky. Ct. App. Nov. 4, 2022). Thereafter, the Wains moved the Supreme Court of Kentucky to grant discretionary review. The Kentucky Supreme Court denied discretionary review on January 10, 2024. *Wain v. Cent. Bank & Tr. Co.*, No. 2022-SC-0529-D, 2024 Ky. LEXIS 20 (Ky. Jan. 10, 2024). The Wains have made continued attempts to avoid this judgment, but it is final.

[2] Among other things, the Kentucky Court of Appeals noted that, "[a]s to their argument that the proceeds of the sale were sufficient to satisfy Central Bank's lien, it is not clear whether the Wains intended to mislead this Court, or whether they do not recognize that U.S. Bank, as senior lienholder, was entitled to have its judgment satisfied by the proceeds of the sale prior to the Central Bank being paid." (Opinion and Order, p. 7, Proof of Claim No. 1-1, Part 9). (Opinion and Order, p. 7). The Kentucky courts have been clear that Central Bank is entitled to the full amount of its judgment, including any deficiency remaining after the sale of the property subject to Central Bank's mortgage.

proceeding "is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action." *Id.* at 465 (citations omitted). Put differently, "[t]he doctrine prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action." *Millver v. Admin. Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011). An issue is properly precluded from re-argument when: (1) the issues are the same, (2) the issue was actually litigated, (3) the issue was actually decided, and (4) the decision must have been necessary to the court's judgment. *Yeoman*, 983 S.W.2d at 465.

### A. Claim Preclusion Bars The Debtors From Relitigating All Matters Arising from the Same Transaction

Kentucky applies a broad transactional test for claim preclusion. *Yeoman*, 983 S.W.2d at 464–65. Claim preclusion applies where:

1. the parties are identical or in privity;
2. the prior action resulted in a final judgment on the merits; and
3. the claims arise from the same transaction or operative facts.

Each element is satisfied here. The judgment is final and enforceable under Kentucky law, was entered against the Debtors, and conclusively resolves the same underlying conduct forming the basis of the proof of claim. Under Kentucky law, the judgment extinguishes not only claims actually litigated, but all claims and defenses that could have been raised.

### B. Issue Preclusion Independently Bars Reconsideration of Adjudicated Facts

Even if the Debtors try to reframe their objections as raising "bankruptcy issues," issue preclusion applies to factual and legal determinations essential to the judgment, including liability and damages. Kentucky law bars relitigation where the

issue was actually litigated, necessarily decided, and resolved by a final judgment after a full and fair opportunity to be heard. *Miller*, 361 S.W.3d at 872. There is no dispute that the Debtors litigated and had the opportunity on these issues at the trial court, Kentucky's Court of Appeals, and Kentucky's Supreme Court. Central Bank's judgment is final.

Any arguments the Debtors now raise were available to them before the trial court entered its judgment—five years ago. In the absence of specific reasons, it is presumed that Fayette Circuit Court considered and rejected each of the opposing arguments offered in opposition. *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 124 (Ky. Ct. App. 2012). The Debtors cannot relitigate now before this Court.[3]

## IV. The Judgment-Based Claim Is Presumptively Valid Under the Bankruptcy Code

A proof of claim based on a final judgment is prima facie valid under Bankruptcy Rule 3001(f). The burden shifts to the objector to establish a statutory ground for disallowance under § 502(b). None of these apply here. The Bankruptcy Code does not authorize disallowance merely because a debtor may dispute the correctness of a judgment. Nor may the Court invoke equitable powers to override preclusion doctrines or state-law judgments.

[3] The Kentucky courts rejected the Wains' arguments about any "deficiency judgment" issues. As noted in Central Bank's response to the Wains' motion for summary judgment, Central Bank's claim does not fail due to any lack of a separate "deficiency judgment" as alleged by the Wains. The cases cited by the Wain do not change this analysis. Indeed, Kentucky trial courts retain jurisdiction long after entry of a judgment to allow creditors to collect. *See Choate v. Bank of Cadiz & Tr. Co.*, No. 2015-CA-000435-MR, 2016 Ky. App. Unpub. LEXIS 410, at *12 (Ky. Ct. App. June 17, 2016) (explaining that a "trial court had jurisdiction to enforce its own judgment" and could allow collection for remaining, or deficiency, amounts pursued 10 years after entry).

## V. <u>Conclusion</u>

Because Central Bank's proof of claim is grounded in a final Kentucky state-court judgment:

- this Court lacks jurisdiction to revisit the judgment's merits;
- Kentucky res judicata principles, both claim- and issue-preclusion, require full preclusive effect; and
- no basis for disallowance exists under § 502(b).

The Debtors' objections should therefore be overruled, the proof of claim allowed in full, and the Debtors' collateral attacks against Central Bank and its judgment should end.

DATED: January 23, 2026

HAIGHT BROWN & BONESTEEL LLP

By: */s/ William E. Ireland*
William E. Ireland
Attorneys for Defendant
CENTRAL BANK & TRUST CO.

Haight