# PROOF OF SERVICE

4926-2039-3862.3

Haight

# EXHIBIT M

**Elizabeth F. Rojas, Chapter 13 Trustee**
**15260 Ventura Blvd., Suite 830**
**Sherman Oaks, CA 91403**
**(818) 933-5700**
**www.ch13wla.com**

**STATUS REPORT FOR CASE # 1:24-bk-11814-MB AS OF 8/31/2026**

**Douglas Alan Wain**
**Elisa Wain**
**PO 7473**
**Westlake, CA 91359**

| | |
|---|---|
| FILING DATE: | 10/30/2024 |
| 1ST MEETING DATE: | 12/18/2024 |
| CONFIRMATION DATE: | N/A |
| TERM OF PLAN: | 0 MONTHS |
| PERCENT TO UNSECURED: | 0 % |
| MONTHLY PLAN PMT: | $0.00 |
| GROSS RECEIPTS: | $4,400.00 |
| REFUNDS FR CREDITORS: | $0.00 |
| NET PAID CREDITORS: | $0.00 |
| FEES PAID TO ATTY: | $0.00 |
| FEES PAID TO TRUSTEE: | $440.00 |
| REFUNDS TO DEBTORS: | $0.00 |
| BALANCE ON HAND: | $3,960.00 |

| LAST 12 RECEIPTS | |
|---|---|
| 08/20/2026 | $200.00 |
| 07/16/2026 | $200.00 |
| 06/18/2026 | $200.00 |
| 05/21/2026 | $200.00 |
| 04/16/2026 | $200.00 |
| 03/19/2026 | $200.00 |
| 02/11/2026 | $200.00 |
| 01/15/2026 | $200.00 |
| 12/18/2025 | $200.00 |
| 12/01/2025 | $200.00 |
| 10/17/2025 | $200.00 |
| 09/22/2025 | $200.00 |

CURRENT CASE DISPOSITION:
ACTIVE

| TRUSTEE CLAIM # | CREDITOR NAME / ACCOUNT # | CLASS | INT% | SCHEDULED AMOUNT | CLAIMED AMOUNT | PRINCIPAL PAID | INTEREST PAID | PRINCIPAL BAL OWED |
|---|---|---|---|---|---|---|---|---|
| ATTY | IN PRO PER | PRIOR ATTORNEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ATTY | KEVIN T. SIMON | PRIOR ATTORNEY | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| ATTY | IN PRO PER | ATTORNEY FEE | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 0001 | CENTRAL BANK & TRUST CO.<br>ACCT# 1792 | UNSECURED | | $357,944.91 | $357,990.91 | $0.00 | $0.00 | $0.00 |
| 0002 | BANK OF AMERICA, N.A.<br>ACCT# 2078 | UNSECURED | | $0.00 | $12,434.37 | $0.00 | $0.00 | $0.00 |

**TOTAL PRINCIPAL BALANCE OWED: $0.00**

**Duplicate Claims:** You may believe that certain claims are listed twice, nevertheless, the Trustee is required to pay all claims until the Court directs otherwise. A letter to the Trustee will not stop payment on any claim, the debtors must instead secure an order from the Court. Please contact your attorney for assistance.
**Online Access:** The Trustee offers online access to your case in which you can view status reports, payment history, and much more. Please visit our website at www.ch13wla.com to sign up for an account.
**AutoPay:** The Trustee now offers an easy and convenient way to have your plan payments automatically debited from your checking account. Please visit our website at www.ch13wla.com for more information.

# EXHIBIT N

# Commonwealth of Kentucky

## Court of Appeals

NO. 2024-CA-0730-OA

DOUGLAS A. WAIN and
ELISA WAIN — PETITIONERS

v.

AN ORIGINAL ACTION
ARISING FROM FAYETTE CIRCUIT COURT
ACTION NO. 19-CI-00812

HON. KIMBERLY NELL BUNNELL,
JUDGE — RESPONDENT

AND

CENTRAL BANK & TRUST
COMPANY and
U.S. BANK TRUST
NATIONAL ASSOCIATION
Not in its Individual Capacity But
Solely as Owner Trustee for RCF 2
Acquisition Trust — REAL PARTIES IN INTEREST

AND

NO. 2024-CA-0850-OA

DOUGLAS A. WAIN and
ELISA WAIN — PETITIONERS

v. AN ORIGINAL ACTION
ARISING FROM FAYETTE CIRCUIT COURT
ACTION NO. 19-CI-00812

HON. KIMBERLY NELL BUNNELL, JUDGE RESPONDENT

AND

CENTRAL BANK & TRUST COMPANY and U.S. BANK TRUST NATIONAL ASSOCIATION Not in its Individual Capacity But Solely as Owner Trustee for RCF 2 Acquisition Trust REAL PARTIES IN INTEREST

ORDER
DENYING PETITIONS FOR A
WRIT OF MADAMUS

* * * * * *

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

Petitioners, Douglas and Elisa Wain (the "Wains"), filed two separate petitions for a writ of mandamus pursuant to Kentucky Rule of Appellate Procedure ("RAP") 60. In Action No. 2024-CA-0730-OA, the Wains seek an order mandating that Respondent, Hon. Kimberly Nell Bunnell, Judge ("Judge Bunnell") recuse herself from presiding over the case below. In Action No. 2024-CA-0850-OA, the Wains seek an order mandating that Judge Bunnell dismiss the

case below because the judgment entered against them has allegedly been satisfied. Real Party in Interest, Central Bank & Trust Company ("Central Bank"), filed a response to both petitions. Real Party in Interest, U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust ("U.S. Bank"), filed a response only in Action No. 2024-CA-0730-OA. Having reviewed the petitions, responses, and being otherwise duly and sufficiently advised, it is hereby ORDERED that the petitions for a writ of mandamus shall be, and hereby are, DENIED.

## BACKGROUND

The case below is a foreclosure action initiated by Central Bank, which held a mortgage on property owned by the Wains. Through a series of assignments, U.S. Bank became the holder of the first mortgage on the property. After an alleged default and a few years of litigation, on January 20, 2021, the Trial Court entered a judgment in favor of Central Bank and an order of sale. It awarded Central Bank $358,412.72, plus interest and attorneys' fees. The Wains appealed (Appeal No. 2021-CA-0202-MR), but did not post a supersedeas bond. This Court affirmed the Trial Court's January 20, 2021, Order, and the Kentucky Supreme Court denied discretionary review. The property was sold at a master commissioner's sale for $630,003.00, and the sale was confirmed.

At the time the first appeal was filed, U.S. Bank's lien had yet to be

adjudicated. On March 7, 2024, the Trial Court entered an order granting summary judgment in favor of U.S. Bank on its claim asserting a lien on the property and its claim that its lien was superior to Central Bank's. Further, the Trial Court ordered distribution of the sale proceeds. After payment to U.S. Bank and taking into account the fees associated with the sale, the Trial Court ordered the balance of $24,967.48 to the master commissioner and the remaining $66,884.60 to Central Bank.

On April 30, 2024, the Trial Court entered an order denying the Wains' motion to amend the judgment. The Wains once again filed a notice of appeal, initiating Appeal No. 2024-CA-0646-MR. This Court entered an Order dismissing that appeal on July 29, 2024, because the Wains' notice of appeal was not timely filed.

The Wains have now filed two writ petitions that raise separate issues. In Action No. 2024-CA-0730-OA, they seek an Order compelling Judge Bunnell to recuse herself from this matter, claiming that her rulings are contrary to law and represent evidence of bias. They cite two campaign contributions made by lawyers in law firms involved in this case to her campaign for Fayette District Court Judge in 1999.

In Action No. 2024-CA-0850-OA, the Wains seek an Order compelling the Trial Court to enter a satisfaction of judgment pursuant to

Kentucky Rule of Civil Procedure ("CR") 79.02 as to Central Bank's claim against them. The Wains appear to argue that they have satisfied their obligation to Central Bank because the total sale proceeds of their property exceeded the amount of their indebtedness.

## ANALYSIS

A writ of prohibition is an extraordinary remedy. The Kentucky Supreme Court has held:

> A writ of prohibition *may* be granted upon a showing that (1) the lower court is proceeding or is about to proceed outside of its jurisdiction and there is no remedy through an application to an intermediate court; or (2) that the lower court is acting or is about to act erroneously, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury will result if the petition is not granted.

*Hoskins v. Maricle*, 150 S.W.3d 1, 10 (Ky. 2004) (emphasis original). A writ is an extraordinary remedy. *Ridgeway Nursing & Rehab. Facility, L.L.C. v. Lane*, 415 S.W.3d 635, 639 (Ky. 2013). Because of this extreme and specific nature of writs, courts are reluctant to issue them because the expedited procedure "necessitate[s] an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants." *Interactive Media Ent. Gaming Ass'n v. Wingate*, 320 S.W.3d 692, 695 (Ky. 2010).

In the context of a writ of the first class, the term "jurisdiction" refers

to subject matter jurisdiction. *See Appalachian Racing, L.L.C. v. Commonwealth*, 504 S.W.3d 1, 4 (Ky. 2016); *Goldstein v. Feeley*, 299 S.W.3d 549, 552 (Ky. 2009); *Davis v. Wingate*, 437 S.W.3d 720, 725 (Ky. 2014). "Whether a court has subject-matter jurisdiction is determined at the beginning of a case, based on the type of case presented." *Kelly v. Commonwealth*, 554 S.W.3d 854, 860 (Ky. 2018).

The Fayette Circuit Court is a court of general jurisdiction, "it has original jurisdiction of all justiciable causes not exclusively vested in some other court." Kentucky Revised Statute (KRS) 23A.010(1). Because the subject matter of the Trial Court is beyond reasonable dispute, the Wains are not entitled to a writ of the first class.

Regarding writs of the second class, a lack of an adequate remedy by appeal or otherwise is an absolute prerequisite to issuance. *Wyatt, Tarrant & Combs v. Williams*, 892 S.W.2d 584, 586 (Ky. 1995). Here, there remain ample avenues by which the Wains can challenge any alleged bias of the Trial Court. If the Wains in good faith believe that Judge Bunnell should not preside over the balance of their case, they may file an affidavit with the Circuit Clerk pursuant to KRS 26A.020. This statute reads, in relevant part:

> If either party files with the circuit clerk his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue, the circuit clerk shall at once certify the facts to the Chief Justice who shall immediately review the facts and determine whether to designate a regular or retired

justice or judge of the Court of Justice as special judge.

KRS 26A.020 constitutes one adequate remedy, foreclosing the Wains' request that this Court should first consider their contention that Judge Bunnell should be disqualified from presiding over the case via a writ.

As to the Wains request that this Court declare their debt to Central Bank satisfied, they likewise have or had an adequate remedy by appeal. As an initial matter, the judgment in favor of Central Bank has already been the subject of an appeal, and this Court affirmed the Trial Court's judgment. "[A] decision of the appellate court, unless properly set aside, is controlling at all subsequent stages of the litigation, which includes the rule that on remand the trial court must strictly follow the mandate of the appellate court." *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982) (quoting 5 Am. Jur.2d, Appeal and Error § 744).

As to their argument that the proceeds of the sale were sufficient to satisfy Central Bank's lien, it is not clear whether the Wains intended to mislead this Court, or whether they do not recognize that U.S. Bank, as a senior lienholder, was entitled to have its judgment satisfied by the proceeds of the sale prior to the Central Bank being paid. Regardless, any issues concerning U.S. Bank's lien could have been raised in the Wains' second appeal, had it been timely filed. Their failure to avail themselves properly to their sufficient remedies by appeal do not render those remedies inadequate. "This Court cannot approve of exercises of

original jurisdiction in cases where no remedy by appeal exists at the time of the request solely as a result of actions taken, or not taken, by the petitioner." *Wyatt, Tarrant & Combs*, 892 S.W.2d at 586.

Because the Wains do not meet the prerequisites for the issuance of a writ, we need not address their claims of error. Nothing contained in this Order should be construed as a ruling on the merits of the allegations.

## CONCLUSION

WHEREFORE, Petitioners' petitions for a writ of mandamus shall be, and hereby are, DENIED.

ENTERED: September 23, 2024

[signature]

JUDGE, COURT OF APPEALS

# EXHIBIT O

THOMSON REUTERS
WESTLAW PRECISION

All content | Enter terms, citations, databases, questions, anything ... | All State & Federal

Parallel Search Advanced

Choate v. Bank of Cadiz & Trust Co.

Document Filings (3) Negative Treatment (0) History (2) Citing References (6) Cited With (0)

New

2016 WL 3453326

Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RAP Rule 41 before citing.

NOT TO BE PUBLISHED

Court of Appeals of Kentucky.

## Jeff H. CHOATE, a.k.a. Jeff L. Choate; and Ella Choate, Appellants
## v.
## BANK OF CADIZ & TRUST CO., Appellee

NO. 2015–CA–000435–MR

JUNE 17, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme Court April 19, 2017

APPEAL FROM TRIGG CIRCUIT COURT, HONORABLE CLARENCE A. WOODALL, III, JUDGE, ACTION NO. 13–CI–00152

## Attorneys and Law Firms

BRIEF FOR APPELLANTS: Terrence L. McCoy, Louisville, Kentucky

BRIEF FOR APPELLEE: Thomas J. Keuler, Paducah, Kentucky

BEFORE: CLAYTON, JONES, and TAYLOR, JUDGES.

*OPINION*

Related documents

Quick Check 1 1

CLAYTON, JUDGE:

*1 Appellants Jeff and Ella Choate appeal a grant of summary judgment in the Bank of Cadiz & Trust Co.'s favor. For the following reasons, we affirm.

## FACTS

**I. Trigg Circuit Court Action No. 02–CI–00189: the Deficiency Judgment.**

The instant appeal is of a declaratory judgment action instituted to obtain funds being held in a deficiency judgment. The Trigg Circuit Court had entered a deficiency judgment against Jeff Choate in Civil Action No. 02–CI–00189. During the instant declaratory judgment action's pendency, Jeff Choate was appealing the deficiency judgment.

On July 10, 2015, a panel of this Court affirmed the $337,194.52 deficiency judgment. *Choate v. Bank of Cadiz & Trust Co.,* 2013–CA–001849–MR. This Court laid out the facts as follows:

New

> In 2002, Bank of Cadiz & Trust Company (Cadiz Bank) instituted a foreclosure proceeding in the Trigg Circuit Court. Cadiz Bank claimed that Choate defaulted under the terms of a promissory note which was secured by a mortgage upon certain real property owned by Choate. Cadiz Bank sought to accelerate payment of the promissory note due to Choate's default and to enforce its mortgage lien against the real property to satisfy payment of the note.
>
> By judgment and order of sale entered January 13, 2003, the circuit court determined that Cadiz Bank was entitled to recover $439,785 plus interest upon the promissory note. The court also ordered the sale of the real property subject to the bank's lien by the master commissioner with the net proceeds from the sale to be applied against the judgment debt. Kentucky Revised Statutes (KRS) 426.570; Kentucky Rules of Civil Procedure (CR) 53.02. The real property was duly sold by the master commissioner, and the circuit court confirmed the sale by order entered April 16, 2003. KRS 426.571; KRS 426.575. Then, by order of distribution entered June 6, 2003, the circuit court determined that Cadiz Bank was entitled to receive $167,193.61 of the sale proceeds in partial satisfaction of the judgment indebtedness against Choate.
>
> After the sale, the case was dormant until August 7, 2013. On that date, Cadiz Bank filed a Motion for Deficiency Judgment. Therein, Cadiz Bank asserted “there remains a deficiency balance on the foreclosure judgment” in the amount of $337,194.52. Motion for Deficiency Judgment at 2. Choate responded and filed a motion under CR 12.02(a) to deny the motion. Choate argued that the circuit court lost jurisdiction to render a deficiency judgment due to the passage of time. Choate maintained that Cadiz Bank was required to bring an independent action in order to obtain a deficiency judgment.

Related documents

By order entered September 23, 2013, the circuit court concluded that it retained jurisdiction to render the deficiency judgment and granted Cadiz Bank's motion for deficiency judgment. The court noted that "a separate deficiency judgment will be entered." Order at p.3.

Cadiz Bank then filed an affidavit for Writ of Non–Wage Garnishment on September 25, 2013. Cadiz Bank sought to garnish insurance proceeds payable to Choate held by State Farm Fire and Casualty Company.[ ] KRS 425.501. The Clerk of the Trigg Circuit Court issued an Order of Garnishment on September 25, 2013.

*2 On September 26, 2013, the circuit court rendered a deficiency judgment against Choate in the amount of $337,194.52 plus interest. Thereafter, on October 2, 2013, Choate filed a motion to quash the garnishment issued against State Farm. KRS 425.501(4). Choate argued that the insurance proceeds were exempt from execution per KRS 427.110(1) and that Choate's wife possessed an interest in the insurance proceeds that was not subject to execution.

By order entered October 10, 2013, the circuit court directed $337,194.52 of the insurance proceeds to be deposited with the clerk pending outcome of the proceedings. CR 67. The circuit court also observed that it was "not prepared to decide" the legal issue of whether the insurance proceeds were exempt from garnishment but reserved the ruling for a later time.

On October 25, 2013, Choate filed a notice of appeal in this Court form the September 26, 2013, deficiency judgment. This appeal follows.

Slip Op. at 1–4 (footnote omitted).

In that appeal, Jeff Choate also argued the trial court did not have jurisdiction to render a deficiency judgment almost fifteen years after the January 13, 2003 judgment. A panel of this Court disagreed, holding:

> In this case, the September 26, 2013, deficiency judgment merely set forth the current outstanding deficiency owed by Choate under the January 13, 2003, judgment and was simply a step in the enforcement of the January 13, 2003, judgment.[ ] Accordingly, we conclude that the circuit court possessed jurisdiction to render the September 26, 2013, deficiency judgment.

Slip Op. at 5–6 (footnote omitted).

Jeff Choate also argued that the insurance proceeds from State Farm are exempt from execution under Kentucky Revised Statutes (KRS) 427.110(1). Because the trial court expressly reserved ruling on that issue, the panel of this Court declined to address the claim on app

New

Related documents

cautioned, "Choate must bring an appeal from the court's final order or judgment adjudicating that issue." Slip Op. at 6.

The Kentucky Supreme Court denied discretionary review on March 9, 2016. What has occurred in Trigg Circuit Court Civil Action No. 02–CI–00189 since this Court's opinion in 2013–CA–001849–MR is not before this Court, as a separate civil action—the declaratory judgment action—is the subject of the instant appeal.

**II. Trigg Circuit Court Action No.2013–CI–00152: the Declaratory Judgment.**

On September 24, 2013, two days before the deficiency judgment was entered, Cadiz Bank filed in Trigg Circuit Court a Petition for Declaratory Judgment under civil case action number 2013–CI–00152. The result of that proceeding comprises the appeal currently before this Court. In that action, Cadiz Bank asked the trial court to determine each party's rights (now including Ella Choate, who apparently became Jeff Choate's wife sometime after the 2002 foreclosure proceeding commenced) to the funds then being held by State Farm Fire and Casualty Company. While the Declaratory Judgment action was pending, the parties entered an agreed order in the Deficiency Judgment action, to wit State Farm Fire and Casualty Company would settle the funds it owed on the fire insurance claim: (1) Cadiz Bank received $28,763.52 in full satisfaction of the outstanding mortgage and promissory note balance for the insured residence; (2) Jeff and Ella Choate received $44,671.55; and (3) $337,194.52 was deposited into an interest bearing account in Trigg Circuit Court to be held for resolution of the garnishment order in the 02–CI–00189 Deficiency Judgment action.

New

*3 After entry of the agreed order, the parties conducted extensive discovery and filed in the record over 600 pages of answers to interrogatories and responses to requests for production of documents. Then, on December 1, 2014, some fifteen months after initiating the Declaratory Judgment action, the Bank filed a lengthy motion for summary judgment.

On January 8, 2015, the Choates, collectively, filed a two-page response. They first argued more time was necessary to complete discovery because a deposition of Cadiz Bank's officer who compiled the discovery requests was needed to resolve whether Cadiz Bank had forgiven the indebtedness owed in the Deficiency Judgment action. They next argued the motion was premature as the Deficiency Judgment action was still being appealed. (Indeed, a motion for discretionary review by the Kentucky Supreme Court was not ruled upon until March 9, 2016.) On February 11, 2015, Cadiz Bank filed a reply, responding to the Choate's two claims.

On February 20, 2015, the trial court granted summary judgment and declaratory judgment in favor of Cadiz Bank. The trial court found ample time—some fifteen months—had passed between the action's initiation and the summary judgment motion, which was sufficient time for the parties to take depositions. It found that though there had been a "write-off"
the bank's books and such write-off was simply an internal b and t

Related documents

forgiveness, as Cadiz Bank received no valid consideration for an actual release of the debt. It further found the exemption in KRS 427.110 is inapplicable to the instant case because State Farm Fire and Casualty Insurance Co. is a stock insurer, not an assessment or cooperative life or casualty insurance company. The trial court also found Ella Choate's separate entitlement to the garnished proceeds was resolved in the October 24, 2013 agreed order. Finally, the trial court found Jeff Choate was the property's sole title holder, thus destroying any entitlement Ella Choate would have to the insurance proceeds based upon dower or contribution.

The Choates timely appealed. The case now stands submitted for resolution by this Court.

## ISSUES

The Choates present a number of issues for our resolution. After careful review of the briefs, the record, and the applicable case law, we affirm the trial court's order granting summary judgment and declaratory judgment.

New

**I. The trial court gave the parties sufficient time to conduct discovery.**

Initially, we address whether the trial court permitted the parties sufficient time to conduct discovery. Approximately fifteen months passed between the action's initiation and the summary judgment grant. During that time, the parties engaged in significant discovery, including the propounding of interrogatories and requests for production of documents. The instant record includes hundreds of pages of documents that were produced.

Generally, courts should not take up motions for summary judgment until "the opposing party has been given ample opportunity to complete discovery." *Blankenship v. Collier,* 302 S.W.3d 665, 668 (Ky.2010) (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet,* 758 S.W.2d 24, 29 (Ky.1988)). "It is not necessary that litigants be allowed to complete discovery but only that they be granted sufficient time to complete discovery and then fail to produce any evidence to create a genuine issue of material fact." *Martin v. Pack's, Inc.,* 358 S.W.3d 481, 485 (Ky.App.2011) (citing *Pendleton, supra* ). Appellate review involves a consideration of "whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling." *Blankenship,* 302 S.W.3d at 668. A trial court's determination that sufficient time has passed for discovery is reviewed for an abuse of discretion. *Id.*

***4** Here, we find the trial court did not abuse its discretion by granting summary judgment fifteen months after the action's initiation. Aside from a general allegation that there are material issues of fact that require additional discovery, on appeal the Choates provide no specific lines of discovery they needed to pursue to make their defense. At the trial court, it appears the Choates wanted to depose a Cadiz Bank officer about the debt's alleged "write-off." They had not done so during the fifteen months because they were awaiting the appellate results from [Related documents]
Judgment action.

Under these facts, we cannot say the trial court's decision was "arbitrary, unreasonable, unfair, [or] unsupported by sound legal principles." *Miller v. Eldridge,* 146 S.W.3d 909, 917 (Ky.2004). The Choates could have deposed their witness while awaiting a decision of this Court in the other case. Or, they could have filed a notice to take a deposition once the summary judgment motion was filed.

Regardless, we need not resolve whether the witness would have helped the Choates's claim nor whether the Choates acted properly in securing the deposition of the witness. We only need to ask whether the trial court abused its discretion by finding it had given the Choates sufficient time to conduct discovery. Because the Choates were given more than a year to conduct discovery but purposefully chose to await a final decision by this Court rather than continue to defend their cause, we find the trial court did not abuse its discretion by denying the Choates additional time. Accordingly, we affirm the trial court's order inasmuch as it found the parties had sufficient time to conduct discovery.

New

**II. Choate cannot re-litigate whether the trial court had jurisdiction in the Deficiency Judgment case.**

The Choates also re-raise the claim that the trial court lost jurisdiction over the Deficiency Judgment action and was without jurisdiction to issue a non-wage garnishment. We need not readdress this issue, as a panel of this Court has already ruled against Jeff Choate. *Choate v. Bank of Cadiz & Trust Co.,* 2013–CA–001849–MR. Choate cannot relitigate this issue that was "actually litigated and finally decided in an earlier action." *Id. See also Coomer v. CSX Transp., Inc.,* 319 S.W.3d 366, 374 (Ky.2010). In the instant case, there is no doubt the two lawsuits concern the same "transactional nucleus of facts." The parties are the same and the facts and issues are identical. Accordingly, we affirm the trial court's order on this issue.

**III. The trial court had a judgment to enforce.**

The Choates also argue the trial court lacked a judgment to enforce because the Deficiency Judgment was not entered until September 26, 2013. Again, this issue was resolved by a panel of this Court in the Deficiency Judgment appeal:

> In this case, the September 26, 2013, deficiency judgment merely set forth the current outstanding deficiency owed by Choate under the January 13, 2003, judgment and was simply a step in the enforcement of the January 13, 2003, judgment.[ ] Accordingly, we conclude that the circuit court possessed jurisdiction to render the September 26, 2013, deficiency judgment.

Slip Op. at 5–6 (footnote omitted). In other words, there has existed a judgment against Jeff Choate since January 13, 2003. The September 26, 2013 Deficiency Judgment me

Related documents

the outstanding deficiency owed. The trial court had jurisdiction to enforce its own judgment. *Akers v. Stephenson,* 469 S.W.2d 704 (Ky.1970).

Regardless, the current order being appealed was entered long after both judgments were in force, and neither judgment has been overturned on appeal. *Marshall v. Goodwine,* 332 S.W.3d 51, 54–55 (Ky.2010). Thus, the trial court had authority to enforce its judgments. We affirm its order on this issue.

**IV. The insurance proceeds are not exempt from garnishment.**

*5 The Choates' next issue brings us to an issue left outstanding in the 2013–CA–001849–MR appeal: whether KRS 427.110 exempts the fire insurance proceeds from garnishment. Under that statute, "[a]ny money or other benefit to be paid or rendered by any *assessment or cooperative life or casualty insurance company* is exempt from execution or other process to subject such money or other benefit to the payment of any debt or liability of a policyholder." (Emphasis added). The Choates read "assessment or cooperative life or casualty insurance company" in the disjunctive—assessment insurance company *or* cooperative life insurance company *or* casualty insurance company. Cadiz Bank reads the phrase as referring to assessment or cooperative insurance companies that underwrite either life or casualty insurance. State Farm Fire and Casualty Company, the bank argues, is not an "assessment or cooperative" insurance company. The trial court agreed with Cadiz Bank. We also agree.

New

Insurance companies, much like other businesses, form in different associations. For example, some become joint stock insurance companies. Such a company has been described as a multi-person partnership with articles of association "and having a capital stock, divided into shares transferable at the pleasure of the holder." *Attorney General v. Mercantile Marine Ins. Co.,* 121 Mass. 524, 527 (1877). "Stock companies insure at their own risk[.]" *Union Ins. Co. v. Hoge,* 62 U.S. 35, 46, 21 How. 35, 16 L.Ed. 61 (1858). *See also Sheldon v. Bills,* 166 N.W. 117 (Neb.1918) (noting joint-stock insurance company sold shares and had elected directors). In Kentucky, stock insurance companies are defined in KRS 304.3–010 as "an incorporated insurer with its capital divided into shares and owned by its shareholders."

Mutual insurance companies, on the other hand, are "a body of persons, each of whom was desirous of effecting an insurance, and he agreed with the rest of the members to contribute his premiums to a common fund, on terms that he should be entitled to receive out of that fund." *Hoge,* 62 U.S. 35 at 47. (citation omitted). In Kentucky, a mutual insurer "is an incorporated insurer without permanent capital stock, and the governing body of which is elected by its policyholders or those policyholders specified in its charter, or by any other reasonable method." KRS 304.3–020.

Some companies are hybrids of mutual companies and joint stock companies. *S*

Related documents

*Washington County Fire Ins. Co., Washington, Pa.,* 110 F.2d 48 disc oint

stock insurance companies, mutual insurance companies, and "hybrid" companies). In Kentucky, a combined mutual and stock life insurance company "is an incorporated insurer with capital divided into shares owned by its shareholders, but which is controlled by the votes both of its stockholders and of its participating policyholder members to the extent any such rights of membership are granted and specified in the insurer's policies or its articles of incorporation." KRS 304.3–025.

Another type of insurance company is the cooperative. Cooperative insurance companies developed late in the nineteenth century as workers sought to avoid limitations in the tort system and a lack of reliable commercial accident insurance. Michael C. Duff, *A Hundred Years of Excellence: But is the Past Prologue? Reflections on the Pennsylvania Workers' Compensation Act,* 87 Pa. B.A.Q. 20, 28 (2016) (footnote omitted). Groups of workers, *i.e.,* a railroad brotherhood, would develop cooperative associations that would pay out disability and death benefits. *Id.* New creating "bonds of class loyalty[,]" these cooperatives would keep healthy customers paying premiums and convince members to avoid engaging in risky behavior. *Id.*

Cooperative insurance companies blossomed post-Civil War, especially in terms of life and disability insurance. "By 1895 fraternal and other cooperative insurance associations reported $6.6 billion of life insurance in force, an amount substantially greater than the total life insurance in force through commercial companies—mutual and stock companies combined." John Fabian Witt, *Toward a New History of American Accident Law: Classical Tort Law and the Cooperative Firstparty Insurance Movement,* 114 Harv. L.Rev. 690, 798 (2001) (footnote omitted). However, they faced mounting problems during the early twentieth century, including increases in immigration and industrial accidents, and dwindling number. *Id.* at 836–37. *See also Duff, supra,* at 28.

*6 Insurance associations also formed assessment companies. Assessment insurance collects premiums at the end of a determined period of time based on the total losses incurred by the participating group. "The pure type [of assessment insurance] contemplates that assessments may be made only to cover losses that have occurred, and that assessments cannot be levied in anticipation of losses." *In re National Ben. Ass'n v. Insurance Commissioner,* 72 S.D. 320, 34 N.W.2d 166, 168 (1948). For example, a group of rural farmers may form an assessment to cover losses to crops due to fire. Should the group incur no fire damages that year, the group would pay no premiums. "Consequently it is impossible, in cases where pure assessment insurance is put into practice, to determine beforehand what is going to be the amount realized by any assessment that may be levied." *Id.*

Some companies combine assessment and cooperative insurance into "assessment cooperatives":

Related documents

> The cooperative insurance industry began in the late 1800's as farmers found that large companies refused to insure rural property. Local community leaders, many affiliated with the Grange movement, organized cooperatives that enabled their members to insure each other.
>
> The cooperatives issued policies on demand but charged no premiums until October after crops were harvested and they could total the year's expenses and incurred losses. That total became policyholders' "assessment."

Midstate Mutual Insurance Company, *Our History* (accessed on April 22, 2016), https://midstatemutual.com/history# 12.

In Kentucky, our General Assembly codified assessment or cooperative companies in KRS Chapter 299. That Chapter's provisions lay out numerous requirements for assessment or cooperative insurance companies and their policies. For example, under KRS 299.015, every policy issued by a Chapter 299 company must have "This is an assessable policy" printed or stamped on the face page. Assessment or cooperative insurance companies that fail to actively and in good faith operate for a one-year period "become and remain forever inoperative and void." KRS 299.017. Furthermore, the statutes define a company that pays benefits upon a member's decease as a life insurance company, and a company that pays benefits upon the sickness or physical disability of a member as a casualty insurance company. KRS 299.020(2). The statutes also permit assessment or cooperative companies to write insurance policies for real or personal property against loss or damage "from any or all hazards or causes[.]" KRS 299.310.

New

In addition to the statutes delineating operating practices for assessment or cooperative life or casualty insurance companies, KRS 299.220 provides a mechanism for assessment or cooperative life insurance companies to "change to stock or mutual plan" insurance companies:

> Any domestic company may, upon complying with the provisions of KRS 299.230 to 299.300, become a life insurance company upon the mutual or stock plan, subject to the laws of this state applicable to such companies, and those prescribing how articles of incorporation shall be amended.

KRS 299.550 likewise allows assessment or cooperative casualty companies to change to mutual companies. The continuing statutes lay out: meetings that are necessary to change the form of the company, KRS 299.230; the amount of shares of capital stock that are necessary, KRS 299.240; requirements for how a reorganized company may begin business, KRS 299.250; the types of insurance a reorganized company may write, KRS 299.260; how directors of the newly-created "stock or mutual plan" company are to elect directors, KRS 299.270; how previously written assessment policies are to be handled in the newly created stock or mutu

Related documents

company, KRS 299.280; and how assets and liabilities of the former company are to be used, KRS 299.290.

*7 Clearly, then, Kentucky permits "assessment or cooperative" insurance companies as well as stock or mutual insurance companies. It also permits assessment or cooperative *life* insurance companies as well as assessment or cooperative *casualty* insurance companies.

We now turn to the issue put before us by the Choates, namely whether KRS 427.110 exempts from garnishment the State Farm Fire and Casualty payment for the property loss. As this issue requires us to construe statutory language, we address this issue of law *de novo*. *Jefferson Co. Bd. of Educ. v. Fell,* 391 S.W.3d 713, 718 (Ky.2012) (citing *Cumblerland Valley Contractors, Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 647 (Ky.2007)). "All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" KRS 446.080(1). The Kentucky Supreme Court identified the governing standards for statutory construction accordingly:

New

> In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. *Osborne v. Commonwealth,* 185 S.W.3d 645 Ky.2006). We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes. *Hall v. Hospitality Resources, Inc.,* 276 S.W.3d 775 (Ky.2008); *Lewis v. Jackson Energy Cooperative Corporation,* 189 S.W.3d 87 (Ky.2005). We also presume that the General Assembly did not intend an absurd statute or an unconstitutional one. *Layne v. Newberg,* 841 S.W.2d 181 (Ky.1992). Only if the statute is ambiguous or otherwise frustrates a plain reading, do we resort to extrinsic aids such as the statute's legislative history; the canons of construction; or, especially in the case of model or uniform statutes, interpretations by other courts. *MPM Financial Group, Inc. v. Morton,* 289 S.W.3d 193 (Ky.2009); *Knotts v. Zurich,* 197 S.W.3d 512 (Ky.2006); *Stephenson v. Woodward,* 182 S.W.3d 162 (Ky.2005).

*Shawnee Telecom Resources, Inc. v. Brown,* 354 S.W.3d 542, 551 (Ky.2011). Under these standards, we are compelled to find the General Assembly intended only to exclude assessment or cooperative insurance proceeds from garnishment.

First, the plain language in KRS 427.110 refers only to "assessment or cooperative" insurance companies. In Chapter 299, the General Assembly specifically codified "assessme[nt or] cooperative" insurance companies in one combined Chapte[r] ... d ph

Related documents

assessment or cooperative. As shown above, the General Assembly has codified mutual, stock, assessment, cooperative, and hybrid insurance companies. If the General Assembly in enacting KRS 427.110 intended on it applying to all casualty insurance companies, the statute would have included the words "mutual" or "stock" to indicate the same. Because the General Assembly chose to only use the phrase "assessment or cooperative" in KRS 427.110, it intended the statute only to apply to insurance proceeds from companies so associated.

Second, the grammar used by the General Assembly in KRS 427.110 requires us to read the noun phrase "insurance company" as being defined by two sets of adjectives with disjunctive conjunctions: "assessment or cooperative" and "life or casualty." *Cf.* *Hall v. Hospitality Resources, Inc.,* 276 S.W.3d 775, 784 (Ky.2008). The resulting statute thus refers to benefits paid by four types of insurance companies: assessment life insurance; assessment casualty insurance; cooperative life insurance; and cooperative casualty insurance.

New

*8 We come to this conclusion using the sentence's natural reading. Take, for example, if the statute exempted from garnishment all "blue or black cars or trucks." The statute would exempt four classes of vehicles, namely: blue cars, blue trucks, black cars, and black trucks. It would not exempt, as the Choates would have us read such a statute, all blue or black cars and all trucks (regardless of color). However, if the statute exempted from garnishment all "blue or black cars, or trucks," then the Choates's reading would be correct, as "trucks" would not be defined by "blue or black," but "cars" would be.

Third, we read the statute as exempting from garnishment only assessment or cooperative casualty insurance policies because the statute best harmonizes with other statutes and leads to a non-absurd result. *Cf.* *Ledford v. Faulkner,* 661 S.W.2d 475, 476 (Ky.1983); *Workforce Development Cabinet v. Gaines,* 276 S.W.3d 789, 793 (Ky.2008). As shown above, the General Assembly has codified numerous statutes relating to assessment, cooperative, mutual, stock, and hybrid insurance companies. KRS 427.110 as written only singles out two such insurance associations—assessment and cooperative insurance companies. It never mentions mutual or stock or hybrid companies, and we will not read into the statute what is not apparent. Furthermore, it would lead to an absurd result to say that individuals who have life insurance policies through mutual or stock or hybrid companies are not excluded from garnishment, but those who have casualty insurance policies through the same companies *are* excluded from garnishment. In summary, KRS 427.110 plainly exempts only life or casualty monies or benefits paid by assessment or cooperative insurance companies. Having determined the scope of the statute, we now examine whether the Choates' fire insurance policy was with an assessment or cooperative insurance company.

Initially, we note that the parties disagree as to who bears the burden of proof on the KRS 427.110 exemption. We find the arguments to be a *non sequitur,* as the evidence put forward by

Related documents

Cadiz Bank, and not contested by the Choates, is sufficient to demonstrate that State Farm Fire and Casualty Company is not an assessment or cooperative casualty insurance company. State Farm Fire and Casualty Company is a stock insurance company organized under the laws of the State of Illinois on June 12, 1935. It is a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company. All of State Farm Fire and Casualty Company's common stock is held by State Farm Mutual Automobile Insurance Company. State Farm Fire and Casualty Company collects premiums from its policies, invests the capital, and pays losses therefrom. It has no members and collects no assessments. The fire insurance policy owned by the Choates was not based on an assessment plan, nor did it bear a legend that stated, "This is an assessable policy."

Simply put, nothing about the Choates' policy nor anything about State Farm Fire and Casualty Company rendered it an assessment or cooperative casualty insurance company. Indeed, the Choates implicitly concede as much by arguing that KRS 427.110 applies to all casualty insurance companies, not just assessment and cooperative insurance companies. Thus, the State Farm Fire and Casualty Company policy held by the Choates was not subject to exemption from garnishment under KRS 427.110.

New

Accordingly, we affirm the trial court's order inasmuch as it found KRS 427.110 applied only to assessment or cooperative insurance companies, and the Choates' State Farm Fire and Casualty Company policy was not issued by an assessment or cooperative insurance company.

**V. Ella Choate's marital share.**

*9 Finally, the Choates argue that material issues of fact still exist regarding Ella Choate's share of the fire insurance proceeds. Below, Cadiz Bank argued Ella Choate was only entitled to a small portion of the proceeds due to: (1) Ella Choate's dowry interest in the land; and (2) Ella Choate's contributory interest in the residence. That portion of the proceeds, Cadiz Bank claimed, was already returned to Ella Choate in the Deficiency Judgment's agreed order disbursing the State Farm Fire and Casualty Insurance proceeds.

In response to Cadiz Bank's motion for summary judgment, the Choates elected not to respond to these issues. On appeal, the Choates now raise Ella Choate's possessory and insurable interests in the insurance proceeds. They claim Ella Choate is entitled to one-half of the fire insurance proceeds minus the $28,000 balance for the real estate mortgage.

Cadiz Bank avers that neither of the Choates' appellate arguments is properly before this Court. Cadiz Bank notes that the Choates, in their response to the summary judgment motion, did not raise either issue. Accordingly, the trial court did not rule on Ella Choate's possessory or insurable interest in the insurance proceeds. Cadiz Bank alleges the Choates are feeding one can of worms to the trial court and another to us. *Dever v. Commonwealth,* 300 S.W.3d

Related documents

(Ky.App.2009). In spite of Cadiz Bank's persuasive argument, the Choates elect in their Reply Brief to give us no rebuttal to the preservation claim. They only respond to the substantive issue.

We begin our analysis, then, with Cadiz Bank's summary judgment issues relating to Ella Choate about which the trial court ruled. Summary judgment may only be granted when the movant demonstrates "no genuine issue of material fact exists." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482 (Ky.1991). Under that standard, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Id.* at 480 (citing *Dossett v. New York Mining and Manufacturing Co.,* 451 S.W.2d 843 (Ky.1970)). "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists." *Shelton v. Kentucky Easter Seals Society, Inc.,* 413 S.W.3d 901, 905 (Ky.2013) (footnote omitted). "So we operate under a de novo standard of review with no need to defer to the trial court's decision New *Id.*

Summary judgment should only be granted "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest,* 807 S.W.2d at 483 (quoting *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985)). " '[I]mpossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen,* 828 S.W.2d 652, 654 (Ky.1992).

Here, Cadiz Bank produced sufficient evidence of record to warrant a judgment in its favor as to Ella Choate's dowry and contributory interest in the property. Concerning the contributory interest in the property, we assume, as did Cadiz Bank, that Ella Choate is entitled to an insurable interest based on an equitable claim that she contributed to the residence's construction. Ella Choate's answer to an interrogatory about her contribution was that she provided 60 hours of work valued at approximately $25 per hour. Accordingly, her contributory insurable interest in the property is $1,500. That amount was already remitted to Ella Choate in the Deficiency Judgment's agreed order. Thus, the trial court did not err by granting summary judgment for Cadiz Bank on that issue.

***10** Concerning the dower interest, Ella Choate had none as her husband was still alive. That "inchoate right is made perfect or becomes absolute in the wife in the event she survives the husband[.]" *Smith v. Myers,* 7 Ky.L.Rptr. 443, 1885 WL 5723, 13 Ky. Op. 830, 832 (1885). *See also Faulkner v. Terrell,* 287 S.W.2d 409, 414–415 (Ky.1956); *Trimble v. Kentucky River Coal Corp.,* 235 Ky. 301, 31 S.W.2d 367, 369 (Ky.1930) ("Thus, when J.C. Eversole died April 15, 1887, his wife was at once invested with dower in this property."). As stated in KRS 392.020, a "dower" or "curtesy" is a "surviving spouse's interest" created "[a]fter the death of the husband or wife intestate[.]" As there is no allegation that Jeff Choate was deceased when summary judgment w

Related documents

Choate had no dower interest in the real property. Thus, her dower interest in the fire insurance proceeds was nil, and the trial court did not err by granting summary judgment on this issue.

Having resolved the two summary judgment issues that were before the trial court, we now turn to the Choates' novel claims raised for the first time on appeal. The Choates claim Ella Choate had a possessory interest in the property or the real estate that was the subject of the fire insurance. "We have long held in Kentucky that an issue not raised in the circuit court may not be presented for the first time on appeal." *Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723, 726 (Ky.App.2008) (citations omitted). The Choates had an opportunity to raise this issue in their response to the motion for summary judgment. They did not raise it. They likewise had an opportunity to address their procedural deficiency in their Reply Brief to this court, yet they chose to make none.

New

Having failed to properly present their claim below, we will not find fault with the trial court's non-ruling on an issue not before it. Accordingly, the Choates's latest claims regarding Ella Choate's possessory or insurable interest will not be addressed on appeal. The trial court's order is affirmed.

**CONCLUSION**

For the foregoing reasons, the order granting summary judgment and declaratory judgment in favor of Cadiz Bank is affirmed.

ALL CONCUR.

## All Citations

Not Reported in S.W. Rptr., 2016 WL 3453326

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## Related documents

Selected topics | Secondary Sources | Briefs | Trial Court Documents

Mortgages
Foreclosure by Action

Related documents

Remedy of Deficiency Judgment

Contact us

Live chat

Training and support

Improve Westlaw Precision/Report an error

Transfer My Data

Pricing guide

Search Tips

Sign out

New

THOMSON REUTERS

1-800-REF-ATTY (1-800-733-2889)

My Account

Westlaw Precision. © 2026 Thomson Reuters

Accessibility

Privacy

Supplier terms

*Thomson Reuters is not providing professional advice*

Related documents

THOMSON REUTERS
WESTLAW PRECISION

All content | Enter terms, citations, databases, questions, anything ... | All State & Federal

Parallel Search Advanced

Choate v. Bank of Cadiz & Trust Co.

Document Filings (0) Negative Treatment (1) History (1) Citing References (2) Cited With (11)

New

Distinguished by Irwin v. O'Bryan, 6th Cir.(Ky.), November 18, 2019

2015 WL 4154069

Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RAP Rule 41 before citing.

NOT TO BE PUBLISHED

Court of Appeals of Kentucky.

## Jeff H. CHOATE, Appellant
## v.
## BANK OF CADIZ & TRUST CO., Appellee

NO. 2013–CA–001849–MR

JULY 10, 2015; 10:00 A.M.

Rehearing Denied August 25, 2015

Discretionary Review Denied by Supreme Court March 9, 2016

APPEAL FROM TRIGG CIRCUIT COURT, HONORABLE CLARENCE A. WOODALL III, JUDGE, ACTION NO. 02–CI–00189

## Attorneys and Law Firms

BRIEFS FOR APPELLANT: Terrence L. McCoy, Louisville, Kentucky

BRIEF FOR APPELLEE: Thomas J. Keuler, Paducah, Kentucky

Related documents

BEFORE: DIXON, J. LAMBERT, AND TAYLOR, JUDGES.

Quick Check 1 1

*OPINION*

TAYLOR, JUDGE:

*1 Jeff H. Choate brings this appeal from a September 26, 2013, Deficiency Judgment of the Trigg Circuit Court in favor of Bank of Cadiz & Trust Co. in the amount of $337,194.52 plus interest. We affirm.

In 2002, Bank of Cadiz & Trust Company (Cadiz Bank) instituted a foreclosure proceeding in the Trigg Circuit Court. Cadiz Bank claimed that Choate defaulted under the terms of a promissory note which was secured by a mortgage upon certain real property owned by Choate. Cadiz Bank sought to accelerate payment of the promissory note due to Choate's default and to enforce its mortgage lien against the real property to satisfy payment of the note.

New

By judgment and order of sale entered January 13, 2003, the circuit court determined that Cadiz Bank was entitled to recover $439,785 plus interest upon the promissory note. The court also ordered the sale of the real property subject to the bank's lien by the master commissioner with the net proceeds from the sale to be applied against the judgment debt. Kentucky Revised Statutes (KRS) 426.570; Kentucky Rules of Civil Procedure (CR) 53.02. The real property was duly sold by the master commissioner, and the circuit court confirmed the sale by order entered April 16, 2003. KRS 426.571; KRS 426.575. Then, by order of distribution entered June 6, 2003, the circuit court determined that Cadiz Bank was entitled to receive $167,193.61 of the sale proceeds in partial satisfaction of the judgment indebtedness against Choate.

After the sale, the case was dormant until August 7, 2013. On that date, Cadiz Bank filed a Motion for Deficiency Judgment. Therein, Cadiz Bank asserted "there remains a deficiency balance on the foreclosure judgment" in the amount of $337,194.52. Motion for Deficiency Judgment at 2. Choate responded and filed a motion under CR 12.02(a) to deny the motion. Choate argued that the circuit court lost jurisdiction to render a deficiency judgment due to the passage of time. Choate maintained that Cadiz Bank was required to bring an independent action in order to obtain a deficiency judgment.

By order entered September 23, 2013, the circuit court concluded that it retained jurisdiction to render the deficiency judgment and granted Cadiz Bank's motion for deficiency judgment. The court noted that "a separate deficiency judgment will be entered." Order at p.3.

Cadiz Bank then filed an affidavit for Writ of Non–Wage Garnishment on September 25, 2013. Cadiz Bank sought to garnish insurance proceeds payable to Choate held by State Farm Fire and Casualty Company. [1] KRS 425.501. The Clerk of the Trigg Circuit Court issued an Order of Garnishment on September 25, 2013.

Related documents

On September 26, 2013, the circuit court rendered a deficiency judgment against Choate in the amount of $337,194.52 plus interest.

Thereafter, on October 2, 2013, Choate filed a motion to quash the garnishment issued against State Farm. KRS 425.501(4). Choate argued that the insurance proceeds were exempt from execution per KRS 427.110(1) and that Choate's wife possessed an interest in the insurance proceeds that was not subject to execution.

***2** By order entered October 10, 2013, the circuit court directed $337,194.52 of the insurance proceeds to be deposited with the clerk pending outcome of the proceedings. CR 67. The circuit court also observed that it was not "prepared to decide" the legal issue of whether the insurance proceeds were exempt from garnishment but reserved the ruling for a later time.

On October 25, 2013, Choate filed a notice of appeal in this Court from the September 26, 2013, deficiency judgment. This appeal follows.

Choate argues that the circuit court lost jurisdiction to render the September 26, 2013, deficiency judgment as more than eleven years had elapsed since the January 13, 2003, judgment. Choate maintains that Cadiz Bank's motion for deficiency judgment was an attempt to alter the January 13, 2003, judgment. We disagree.

In the January 13, 2003, judgment, the circuit court determined that Cadiz Bank was entitled to recover $439,785 upon the promissory note. [2] The record establishes that the mortgaged real property was subsequently sold by the master commissioner and that $167,193.61 was recovered by Cadiz Bank in partial satisfaction of the January 13, 2003, judgment.

Under the applicable law, Choate was personally liable for the entire judgment indebtedness rendered on January 13, 2003, and remained personally liable for any deficiency that existed after the sale of the mortgaged real property. *See Ky. Joint Stock Land Bank v. Farmers Exchange Bank,* 274 Ky. 525, 119 S.W.2d 873 (1938). As Choate remained personally liable for any deficiency on the January 13, 2003, judgment, Cadiz Bank, as judgment creditor, could proceed, subject to applicable statutes of limitation, to pursue any and all collection remedies legally permissible at anytime. [3]

Cadiz Bank filed a motion for deficiency judgment within fifteen years of the January 13, 2003, judgment. Although not specifically recognized under either the Kentucky Civil Rules of Procedure or our statutes, a deficiency judgment represents a legal fiction created to aid the parties in the enforcement of a judgment. It serves to set forth the outstanding amount of deficiency by judicial act. And, a deficiency judgment is a nonessential but logical step in the enforcement of a judgment. The circuit court undoubtedly possessed jurisdiction to render a deficiency judgment concomitantly with its jurisdiction to enforce its own judgments. And, the

New

Related documents

circuit court possesses inherent jurisdiction to render orders enforcing its own judgment. *EIC, Inc. v. Bank of Virginia,* 582 S.W.2d 72 (Ky.1979).

In this case, the September 26, 2013, deficiency judgment merely set forth the current outstanding deficiency owed by Choate under the January 13, 2003, judgment and was simply a step in the enforcement of the January 13, 2003, judgment. [4] Accordingly, we conclude that the circuit court possessed jurisdiction to render the September 26, 2013, deficiency judgment.

*3 Choate also maintains that the insurance proceeds from State Farm are exempt from execution under KRS 427.110(1). Choate filed the instant appeal from the September 26, 2013, deficiency judgment. In the September 26, 2013, deficiency judgment, the circuit court did not decide the issue of whether the insurance proceeds were exempt from execution. Thus, we decline to reach this issue. Choate must bring an appeal from the court's final order or judgment adjudicating that issue.

For the foregoing reasons, the Deficiency Judgment rendered by the Trigg Circuit Court is affirmed.

ALL CONCUR.

## All Citations

Not Reported in S.W. Rptr., 2015 WL 4154069

### Footnotes

1 Jeff H. Choate's residence was destroyed by fire in March 2013, and the insurance proceeds were to be paid to Choate under a homeowner's policy with State Farm Fire and Casualty Company.

2 Neither party appealed the January 13, 2003, judgment.

3 The statute of limitations to collect the judgment personally against Choate was fifteen years as set forth in Kentucky Revised Statues (KRS) 413.090(1). Recently, our Supreme Court interpreted the fifteen-year statute of limitations in KRS 413.090(1) very broadly. *Wade v. Poma Glass & Specialty Windows, Inc.,* 394 S.W.3d 886 (Ky.2012). Relevant herein, the Court interpreted the term "execution" as stated in KRS 413.090(1) to mean "the act of enforcing, carrying out, or putting into effect the court's judgment." *Id.* at 895.

4 We are aware of no authority in Kentucky that would create a separate fifteen-year statute of limitation for collection of the deficiency judgment. Rather, the deficiency judgment remains subject to the original limitations period for the original judgment under KRS 413.090(1).

New

Related documents

End of Document

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

## Related documents

Selected topics Secondary Sources Briefs Trial Court Documents

Foreclosure by Exercise of Power of Sale

**Notice of Mortgage Foreclosure Sale**

New

Contact us

Live chat

Training and support

Improve Westlaw Precision/Report an error

Transfer My Data

Pricing guide

Search Tips

Sign out

THOMSON REUTERS

1-800-REF-ATTY (1-800-733-2889)

My Account

Westlaw Precision. © 2026 Thomson Reuters

Accessibility

Privacy

Supplier terms

*Thomson Reuters is not providing professional advice*

Related documents

# EXHIBIT P

**COMMONWEALTH OF KENTUCKY**
**FAYETTE CIRCUIT COURT**
**NINTH DIVISION**
**CIVIL BRANCH**
**CIVIL ACTION NO. 19-CI-00812**

***ELECTRONICALLY FILED***

**CENTRAL BANK & TRUST CO.** **PLAINTIFF**

**v.**

**DOUGLAS A. WAIN;**
**ELISA WAIN; AND**
**NEWREZ, LLC**[1] **DEFENDANTS**

**MOTION FOR DISTRIBUTION OF PROCEEDS;**
**NOTICE**

---

Plaintiff, Central Bank & Trust Co. ("Central Bank"), by counsel, moves this Court for entry of an order of distribution to Central Bank from the proceeds currently held by the Master Commissioner from the sale of the real property that is the subject of this action. Such funds have been held by the Master Commissioner since February 8, 2021. Of those funds, $358,412,72[2] should now be released and distributed first to pay Central Bank's Judgment in full. To the financial detriment to Central Bank, the other secured lienholder has failed to pursue any interest in these funds. In support hereof, Central Bank states as follows:

**BACKGROUND**

On March 6, 2019, Central Bank initiated this foreclosure action after Douglas Wain and Elisa Wain (the "Wains") defaulted on a home equity line of credit due Central Bank secured by a mortgage on their home (the "Mortgage"). Under the Mortgage, the Wains had granted Central Bank a lien on the real property located at 2711 Barbados Lane, Lexington, Fayette County,

[1] NewRez LLC d/b/a Shellpoint Mortgage Servicing ("NewRez"), assignee of Ditech Financial, LLC, successor by merger to Green Tree Servicing, LLC, has been substituted for Ditech Financial, LLC ("Ditech").



[2] Plus interest from March 6, 2019, costs and its attorneys' fees.

Kentucky (the "Property"). On October 29, 2019, Central Bank filed its First Amended Complaint adding Ditech as a party defendant.

After full briefing, and based on the record before it, including the Wains' own admissions, on December 11, 2020, this Court from the bench sustained Central Bank's Motion for Summary Judgement on its claims against the Wains. On January 20, 2021, this Court entered Partial Summary Judgment, Judgment on the Pleadings, and Order of Sale (the "Judgment"). The Judgment in favor of Central Bank awarded $358,412.72, plus interest from March 6, 2019, until paid, plus costs expended and attorneys' fees. The Judgment directed the Master Commissioner to sell the Property on February 8, 2021. The Judgment was final and appealable.

The Property was sold by the Master Commissioner on February 8, 2021.[3] On February 24, 2021, this Court entered its Order Confirming Sale. On March 12, 2021, the Court entered its Order for Delivery of Deed and Partial Distribution of Proceeds to the Master Commissioner for his costs and fees. This Order left the remainder of the proceeds—$605,035.42—with the Master Commissioner.

Following the confirmation of the sale, on March 16, 2021, NewRez was substituted as a defendant in this action in place of Ditech and authorized to file an amended answer and crossclaim (collectively, "Amended Answer"). NewRez entered its appearance based upon an unrecorded assignments of a mortgage granted to Ditech by the Wains on the Property. In its Amended Answer, NewRez alleged it was owned $324,261.97 in principal, plus interest at the rate of 5.875% from July 1, 2019, plus a deferred principal of $106,431.58, plus late fees, costs, and expenses, including attorneys' fees on the mortgage debt owed by the Wains.

---

[3] On February 17, 2021, after the Master Commissioner's sale, the Wains filed a Notice of Appeal of the Judgment. The Wains did not post a supersedeas bond to stay enforcement or execution of the Judgment.

On November 4, 2022, the Court of Appeals rendered its opinion affirming this Court's Judgment. The Wains have moved the Supreme Court of Kentucky to grant discretionary review. That motion remains pending.

In response, on April 15, 2021, the Wains filed an answer to NewRez's crossclaim and filed a crossclaim against NewRez. However, on April 28, 2021, the Wains filed Notice of Withdrawal of their crossclaim against NewRez. On May 27, 2021, the Wains were granted leave to file an Amended Answer asserting affirmative defenses to NewRez's crossclaim.[4]

For 2 years now, almost to the day, NewRez has taken no action on its crossclaim against the Wains. It has allowed this case to remain dormant to the detriment and damage to Central Bank.[5]

On March 17, 2023, Central Bank's counsel received communication from the Office of the Fayette County Master Commissioner (the "Commissioner") regarding the sale proceeds of $605,035.42, held by the Commissioner. The correspondence indicated that due to rule changes governing master commissioners, funds held by the Commissioner for 2 years would escheat to the State. Upon further communication with the Commissioner that the funds are the subject of this pending litigation, the Commissioner has agreed that the funds held by his office in this case are not subject to escheat. However, that communication brings attention to the fact that, for 2 years, NewRez has taken no action to enforce claims that it may have to those funds to the detriment and damage of Central Bank which has Judgment and has been adjudicated to have a lien thereon.

---

[4] Also, on May 27, 2021, NewRez served discovery requests on the Wains

[5] It now appears that NewRez may have assigned its mortgage to a new assignee. However, no successor assignee, **if any**, has made an appearance in this case.

## ARGUMENT

Central Bank has diligently pursued and advanced this litigation since it initiated this case in 2019. These efforts resulted in the entry of Judgment in favor of Central Bank, and the sale of the Property in February, 2021. However, since the sale of the Property, the inaction of NewRez has interfered with Central Bank receiving the proceeds that it is entitled to from the sale of the Property. This inaction is causing and will continue to cause harm to Central Bank, unless the Court intervenes. To remedy this situation, the Court must apply principles of equity and authorize the distribution of the sale proceeds first to satisfy the Judgment lien of Central Bank.

The Court retains broad powers of equity when legal remedies are inadequate. Such power exists when dilatory acts cause another party's harm. "This is a proper place for application of the well-known rule in equity that as between innocent parties he must suffer who, by his acts or laches, has made a loss possible." *Akers v. Cushman Constr. Co.*, 487 S.W.2d 60, 62 (Ky. 1972). In *Akers*, the court decided that equitable principles required satisfaction of liens that would otherwise be inferior, "as this situation is a creature of the [otherwise senior lienholder's] laches and negligence they must bear this loss." The *Akers* decision provides guidance. This Court may turn to equitable principles to prevent an unjust result suffered by an innocent party that is caused by the laches of another. The well-known rule in equity is "that as between two innocent persons he must suffer who, by his acts or latches, has made a loss possible." *Lincoln Bldg. & Loan Ass'n v Liberty Nat'l Bank & Trust Co.*, 227 S.W.2d 191, 193 (Ky. 1950).

As stated in *Louisville Asphalt Co. v Cobb*, 220 S.W.2d 110, 129 (Ky. 1949), under the doctrine of estoppel, the decision should be against the party "who was in a better position by reasonable diligence or care to have averted the loss which must be borne by one or the other."

Further, NewRez has waived its lien rights and interest in the sale proceeds. Under Kentucky law, a "waiver" is a voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which the party, at his option, might have demanded or insisted upon." *Barker v. Stearns Coal & Lumber Co.*, 291 Ky. 184, 163 S.W.2d 466, 470 (Ky. 1942).

NewRez is a represented party. It has taken no action to enforce its mortgage or have same adjudicated by this Court. It has not demanded or insisted upon the release or distribution of funds on its mortgage. It has taken *no action* of any kind for nearly *two years*. NewRez has sat on its rights. Whether it be called latches, waiver or estoppel, its inaction has caused damage to Central Bank. NewRez should now be barred from asserting rights superior to Central Bank.

As a result of NewRez's total and complete inaction for 2 years, Central Bank faces an unjust result beyond its control. The continued delay harms Central Bank. The Court should order a distribution of the sale proceeds first to Central Bank.

**CONCLUSION**

For the foregoing reasons, the Court should order the Master Commissioner to distribute from the sale proceeds first to Central Bank in the amount of $358,412,72 plus interest from March 6, 2019, costs and its attorneys' fees, and grant such other relief to which Central Bank may be entitled under the circumstances.

**NOTICE**

The parties will please take notice that this motion shall be heard before the Fayette Circuit Court on the 26th day of May, 2023, at 8:30 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

**FOWLER BELL PLLC**

*/s/ Christopher G. Colson*
Christopher G. Colson. Esq.
Kentucky Bar ID: 93328
Taft A. McKinstry, Esq.
Kentucky Bar ID: 46610
300 West Vine Street, Suite 600
Lexington, KY 40507-1751
(859) 252-6700
(859) 255-3735 fax
GGColson@FowlerLaw.com
TMcKinstry@Fowlerlaw.com

**ATTORNEYS FOR PLAINTIFF,**
**CENTRAL BANK & TRUST CO.**

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served through the Court's e-filing system upon the following, on this the 22nd day of May, 2023:

James H. Frazier, III, Esq.
201 E. Main Street, Suite 770
Lexington, Kentucky 40507
james@faycom.info
**MASTER COMMISSIONER**

David W. Hemminger, Esq.
hemmingerlawoffice@gmail.com
**ATTORNEY FOR DOUGLAS & ELISE WAIN**

Paul M. Nalepka, Esq.
KYE-Notifications@rslegal.com
**ATTORNEY FOR DITECH FINANCIAL, LLC**

Shannon O'Connell Egan, Esq.
Nathan H. Blaske, Esq.
Shannon.Egan@dinsmore.com
Nathan.Blaske@dinsmore.com
**ATTORNEYS FOR NEWREZ LLC**

*/s/ Christopher G. Colson*
**ATTORNEY FOR PLAINTIFF**

4893-0947-2869, v. 1/4300.01158

# EXHIBIT Q

**COMMONWEALTH OF KENTUCKY**
**FAYETTE CIRCUIT COURT**
**DIVISION 9**
**CASE NO. 19-CI-00812**

***Electronically Filed***

**CENTRAL BANK & TRUST CO.** **PLAINTIFF**

**vs**

**DOUGLAS A. WAIN, *et al.*** **DEFENDANTS**

---

**PROPOSED SUBSTITUTE DEFENDANT/CROSS-CLAIMANT U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST'S RESPONSE AND OBJECTION TO MOTION FOR DISTRIBUTION OF PROCEEDS**

---

Proposed Substitute Defendant/Cross-Claimant U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust ("U.S. Bank"), states as follows for its response and objection to Plaintiff Central Bank & Trust Co.'s ("Central Bank") Motion for Distribution of Proceeds ("Motion for Distribution").

## I. FACTS

On March 5, 2008, Douglas A. Wain and Elisa Wain (the "Wains") granted a Note in favor of Central Bank & Trust Co., d/b/a Central Bank Mortgage Co. ("Central Bank") in the original amount of $417,000.00 (the "Note") in exchange for a loan in that amount (the "Mortgage Loan").[1] The Wains granted a Mortgage as security for the Note in favor of Central Bank (the "Mortgage").[2] The Mortgage encumbered the property commonly known as 2711 Barbados Lane, Lexington,

---

[1] *Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing's Amended Answer and Cross-Claim* (3/16/21) ("*Cross-Claim*") at ¶ 1 and Ex. A.
[2] *Id.* at ¶ 8 and Ex. C.

RES 000001 of 000008

Kentucky 40509 (the "Property").[3] The Mortgage was recorded in the offices of the Clerk of this County in Mortgage Book 6319, Page 226, on March 11, 2008.[4]

Central Bank assigned the Mortgage to CitiMortgage by virtue of an Assignment recorded in Book 458, Page 249 on March 11, 2008.[5] CitiMortgage then assigned the Mortgage to Green Tree Servicing LLC by virtue of an Assignment recorded in Book 512, Page 631 on April 17, 2014.[6]

Central Bank initiated this foreclosure case on March 6, 2019, with regard to a loan secured by a junior mortgage on the Property.[7] Central Bank filed an amended complaint on November 13, 2019.[8] The Wains were named as Defendants.[9] Ditech Financial LLC f/k/a Green Tree Servicing LLC ("Ditech") was also named as a Defendant, and it filed an Answer to assert its interest in the Property by virtue of the Mortgage and to request that its interest in the Property be protected.[10] There is no dispute that Central Bank's mortgage is junior to the Mortgage because Central Bank executed a Subordination Agreement to that effect.[11]

Ditech assigned the Mortgage to New Residential Mortgage LLC ("New Residential") by virtue of an Assignment recorded in Book 547, Page 250 on March 25, 2020.[12]

On January 20, 2021, a summary judgment and order of sale (the "Judgment") was entered in favor of Central Bank.[13] The Judgment recognized that Central Bank's mortgage is junior in

---

[3] *Id.*
[4] *Id.* at ¶¶ 8, 9 and Ex. B.
[5] *Cross-Claim* at ¶ 10 and Ex. D.
[6] *Id.* at ¶ 10 and Ex. E.
[7] *Complaint* (3/6/19).
[8] *First Amended Complaint* (11/13/19).
[9] *Id.*
[10] *Id.*; *Answer* (12/2/19).
[11] *First Amended Complaint* (10/29/19) at ¶ 8 and Ex. C.
[12] *Cross-Claim* at ¶ 10 and Ex. F.
[13] *Partial Summary Judgment, Judgment On The Pleadings, And Order Of Sale* (1/20/21).

RES : 000002 of 000008

19-CI-00812 06/01/2023

priority to the Mortgage.[14] The Wains appealed from the Judgment on February 17, 2021.[15] Ultimately, the Judgment was affirmed by the Court of Appeals on November 4, 2022.[16]

On February 8, 2021, while the appeal was pending, the Property was sold to a third party at a Master Commissioner's Sale.[17] The sale was confirmed by an Order entered on February 24, 2021.[18] The Order Confirming Report Of Sale, For Delivery Of Deed And Partial Distribution Of Proceeds entered on March 12, 2021, indicates that the remaining sale proceeds in the amount of $605,035.42 are being held by the Master Commissioner, pending further orders of the Court.[19]

In the meantime, New Residential assigned the Mortgage to NewRez LLC f/k/a New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") by virtue of an Assignment recorded in Book 550, Page 332 on February 22, 2021.[20] On March 16, 2021, Shellpoint was substituted into the case in place of Ditech.[21] Because the Wains had defaulted on the Mortgage Loan after Central Bank filed this action, Shellpoint was granted leave to file an amended answer and a cross-claim against the Wains.[22] Shellpoint's Amended Answer and Cross-Claim were deemed filed on the same day.[23] As set forth in the Cross-Claim, the amount due from the Wains due to their default on the Mortgage Loan is the principal sum of $324,261.97, plus interest at the rate of 5.8750% per annum from July 1, 2019, together with a deferred principal balance of $106,431.58, plus late fees that continue to accrue, costs, attorney's fees, and other advances.[24]

---

[14] *Id.* at ¶ 3.
[15] *Notice of Appeal* (2/17/21).
[16] *Opinion Affirming* (11/4/22).
[17] *Report Of Sale Sale* (2/10/21).
[18] *Order Confirming Sale* (2/24/21).
[19] *Order Confirming Report Of Sale, For Delivery Of Deed And Partial Distribution Of Proceeds* (3/12/21).
[20] *Id.* at ¶ 11 and Ex. H.
[21] *Order Granting Motion to Substitute Party Defendant* (3/16/21).
[22] *Order Granting Motion for Leave to File Amended Answer and Cross-Claim* (3/16/21).
[23] *Id.*
[24] *Cross-Claim* at ¶¶ 5, 6.

RES : 000003 of 000008

In response, the Wains filed an Answer in which they generally denied the allegations of Shellpoint's Cross-Claim.[25] The Wains also filed a Cross-claim in which they alleged that Shellpoint violated the federal moratorium on foreclosures codified at 15 U.S.C. § 9056(c)(2).[26] The Wains ultimately withdrew their Cross-claim, and filed an Amended Answer in which they asserted that Shellpoint's Cross-claim "may be barred [] pursuant to the federal moratorium on foreclosures of federally backed mortgages codified at 15 U.S.C. § 9056(c)(2)."[27] Shellpoint and the Wains engaged in discovery until approximately November 4, 2021.

Shellpoint later assigned the Mortgage to U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust ("U.S. Bank") as evidenced by an Assignment recorded in Book 555, Page 599 on May 17, 2022.[28]

On November 9, 2022, counsel for Central Bank wrote to counsel for Shellpoint to advise that the Court of Appeals affirmed the Judgment and "[t]herefore, we are most interested in a distribution of the sale proceeds as soon as possible. Please advise of the status of your client's debt against the Wains in the Fayette Circuit Court action and when you will be moving for judgment against the Wains."[29] On November 11, 2022, the undersigned counsel responded that while the appeal was pending, the Mortgage Loan had been transferred and counsel did not have a referral from the assignee to proceed.[30]

The undersigned counsel was retained to assist U.S. Bank with this matter on or about April 14, 2023. On April 23, 2023, the undersigned counsel notified counsel for Central Bank of the

---

[25] *Answer and Crossclaim* (4/15/21).
[26] *Id.*
[27] *Notice of Withdrawal of Crossclaim* (4/28/21); *Amended Answer* (5/26/21).
[28] *Id.* at ¶ 11 and Ex. I.
[29] *See,* Exhibit A hereto.
[30] *Id.*

RES : 000004 of 000008

retention and that "we will soon be able to substitute it in for Shellpoint in the foreclosure and push forward on its claim for its share of the proceeds."[31]

On May 22, 2023, Central Bank filed its Motion for Distribution, admittedly only after having been contacted by the Fayette County Master Commissioner regarding the sale proceeds.[32] After choosing to wait for months for the appeal to be resolved, and despite knowing that Shellpoint had transferred the Mortgage Loan and that the undersigned had only recently been retained to assist Shellpoint's assignee, Central Bank alleged that "[f]or 2 years now, almost to the day, [Shellpoint] has taken no action on its crossclaim against the Wains. It has allowed this case to remain dormant to the detriment and damage to Central Bank."[33] Central Bank further argued that equity demands that the sale proceeds be distributed to it as though it were in first lien position.[34]

On May 25, 2023, U.S. Bank moved to be substituted into the case in place of Shellpoint.[35] U.S. Bank anticipates moving for summary judgment on its Cross-Claim and for distribution of its share of the sale proceeds within 30 days after being substituted in place of Shellpoint.

## II. LEGAL ANALYSIS

Central Bank's Motion for Distribution of the sale proceeds to it as though it has priority over U.S. Bank's *Mortgage* should be denied as a matter of law and equity.

First, lien priority determines the distribution of proceeds in a foreclosure sale. *See, e.g. Midland-Guardian Co. v. McElroy,* 563 S.W.2d 752 (1978). Kentucky is a "race-notice" jurisdiction and follows the common law rule of "first in time, first in right" for determining lien

---

[31] *See,* Exhibit B hereto.
[32] *Motion for Distribution of Sale Proceeds* (5/22/23)
[33] *Id.*, p. 3.
[34] *Id.*
[35] *Motion to Substitute Party Defendant/Cross-Claimant* (5/25/23).

RES : 000005 of 000008

priority. *Wells Fargo, Minnesota N.A. v. Commonwealth*, 345 S.W.3d 800, 804 (Ky. 2011). Essentially, "a prior interest in real property takes priority over a subsequent interest that was taken with notice, actual or constructive, of the prior interest." *Mortgage Electronic Registration Systems, Inc. v. Roberts*, 366 S.W.3d 405, 408 (Ky. 2012). A subordination agreement may reorder the priority of liens. *Id.* at 412. The legislature also has the authority to "create statutory liens and establish the priorities thereof." *Midland-Guardian Co. v. McElroy*, 563 S.W.2d 752, 754 (Ky. App. 1978). There is no dispute that U.S. Bank's interest in the Property by virtue of the Mortgage is senior in priority to Central Bank's interest by virtue of the Subordination Agreement. For this reason alone, Central Bank's Motion for Distribution should be denied.

Second, Central Bank has failed to establish that principles of equity require the reordering of lien priorities to U.S. Bank's detriment in this case. Central Bank's allegations that it "has diligently pursued and advanced this litigation since it initiated this case in 2019," and that "the inaction of [Shellpoint] has interfered with Central Bank receiving the proceeds that it is entitled to from the sale of the Property"[36] are simply untrue. Central Bank could have moved for distribution of the sale proceeds at any time after confirmation of the sale as there is no Civil Rule or Local Rule that would prohibit it from doing so or that would require the first lienholder to do so.

Furthermore, Central Bank admittedly waited until November 2022 – after the appeal from the Judgment had run its course – to begin taking steps to seek distribution of the sale proceeds by reaching out to the undersigned counsel. It learned then that the Mortgage had been assigned by Shellpoint and therefore that Shellpoint was unable to push the cross-claim forward. And, Central

RES : 000006 of 000008

---

[36] *Motion for Distribution*, p. 4.

Bank waited to take formal steps to seek distribution of the sale proceeds until May 2023, only *after* it was contacted by the Master Commissioner.

Finally, the cases on equitable principles cited by Central Bank do not support its argument for reordering of lien priority in the face of Kentucky's lien priority scheme. *Akers* is inapposite because in that case, the Kentucky Court of Appeals declined to find that the plaintiff creditors had a superior equitable lien where they failed to record it before the defendant creditor's mortgage was recorded. *Akers v. Cushman Constr. Co.*, 487 S.W.2d 60 (Ky. App. 1972). Here, U.S. Bank's Mortgage is clearly superior to Central Bank's judgment by virtue of the Subordination Agreement. The *Lincoln* case, regarding the equitable rule that "as between two innocent persons he must suffer who, by his acts or latches, has made a loss possible," does not help Central Bank because it is Central Bank that waited to move for distribution of the sale proceeds resulting from its own Judgment, not Shellpoint. *Lincoln Bldg. & Loan Ass'n v. Liberty Nat'l Bank & Trust Co.*, 227 S.W.2d 191, 193 (Ky. App. 1950). Finally, the doctrines of estoppel and waiver, discussed in *Louisville Asphalt Co.* and *Barker*, respectively, do not apply to bar Shellpoint from asserting an interest in the sale proceeds. *Louisville Asphalt Co. v. Cobb*, 220 S.W. 2d 110 (Ky. App. 1949); *Barker v. Stearns Coal & Lumber Co.*, 291 Ky. 184, 163 S.W.2d 466 (Ky. App. 1942). Rather, Shellpoint has assigned its interest to U.S. Bank, which has asked to be substituted in for Shellpoint so it can prosecute the cross-claim and seek distribution of the sale proceeds.

## III. CONCLUSION

Central Bank's demand that the sale proceeds be distributed to it as if it were in first lien position is contrary to Kentucky law on priorities. Furthermore, granting Central Bank's request in equity would result in a windfall to it when it subordinated its lien to the Mortgage and when it waited until May 2023 to seek distribution of the sale proceeds that resulted from its own

RES 000007 of 000008

Judgment. For these reasons, U.S. Bank respectfully requests that Central Bank's Motion for Distribution be denied and that the Court grant U.S. Bank's motion to be substituted in the case for Shellpoint so it may seek a summary judgment on its cross-claim and for distribution of the sale proceeds.

Respectfully submitted,

*/s/ Shannon O'Connell Egan*
Shannon O'Connell Egan (87296)
Nathan H. Blaske (90369)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8261
Fax: (513) 977-8141
Email: shannon.egan@dinsmore.com
nathan.blaske@dinsmore.com

*Counsel for Proposed Substitute Defendant/Cross-Claimant U.S. Bank Trust National Association, Not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust*

**CERTIFICATE OF SERVICE**

I certify that on the 1st day of June 2023, a true and accurate copy of the foregoing was served on all counsel of record set forth below electronically via the Kentucky E-Filing System:

- Hon. Gregory D. Pavey
- Hon. David W. Hemminger
- Hon. Paul M. Nalepka
- Hon. Christopher G. Colson
- Hon. Taft A. McKinstry

*/s/ Shannon O'Connell Egan*
Shannon O'Connell Egan (87296)

16374852.1

RES : 000008 of 000008

**From:** Egan, Shannon <Shannon.Egan@DINSMORE.COM>
**Sent:** Friday, November 11, 2022 12:14 PM
**To:** Pavey, Gregory D
**Cc:** Wiseman, Tim; Houston, Rhonda; Blaske, Nathan; Egan, Shannon
**Subject:** RE: Fayette Circuit Court No. 19-CI-812/Central Bank & Trust v. Douglas Wain/New Rez, et al.

Hi Greg – thank you for checking in and congratulations on the appeal. While it was pending, the Shellpoint mortgage loan was transferred to Selene Finance. We do not have a referral from it to proceed and I'm not aware of another attorney having been retained. When I hear back from Selene on this I will let you know. Thank you,
Shannon

Dinsmôre
**Shannon Egan**
Of Counsel
Dinsmore & Shohl LLP • Legal Counsel
255 East Fifth Street, Suite 1900, Cincinnati, OH 45202
T (513) 977-8261 • F (513) 977-8141

**From:** Pavey, Gregory D <Gregory.Pavey@skofirm.com>
**Sent:** Wednesday, November 9, 2022 11:36 AM
**To:** Egan, Shannon <Shannon.Egan@DINSMORE.COM>; Blaske, Nathan <Nathan.Blaske@DINSMORE.COM>
**Cc:** Steve Hall <shall@centralbank.com>; Wiseman, Tim <tim.wiseman@skofirm.com>; Houston, Rhonda <Rhonda.Houston@skofirm.com>
**Subject:** Fayette Circuit Court No. 19-CI-812/Central Bank & Trust v. Douglas Wain/New Rez, et al.

Shannon and Nathan,

At your earliest convenience, would you please advise me of the status of your client's attempts to obtain judgment against the Wains. The reason for our inquiry is that in the mail today we received the ruling of the Court of Appeals regarding the Wains appeal of the summary judgment and order of sale obtained by our client Central Bank & Trust Company. A copy of the opinion of the Court of Appeals is attached for your reference. The Court of Appeals ruled in favor of Central Bank and affirmed the lower court's summary judgment and order of sale. Therefore, we are most interested in a distribution of the sale proceeds as soon as possible. Please advise of the status of your client's debt against the Wains in the Fayette Circuit Court action and when you will be moving for judgment against the Wains.

Thank you, Greg

**Gregory D. Pavey**
**Member of the Firm**
300 West Vine Street, Suite 2100
Lexington, KY 40507-1801
Telephone 859-231-3000
Facsimile 859-246-3691
**E-mail** gregory.pavey@skofirm.com
**website:** skofirm.com

STOLL KEENON OGDEN

Stoll Keenon Ogden PLLC | Lexington | Louisville | Frankfort | Evansville | Indianapolis | skofirm.com

EXH : 000001 of 000002

... the sender that you received it and

---

NOTICE: This electronic mail transmission from the law firm of Dinsmore & Shohl may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

**From:** Egan, Shannon
**Sent:** Sunday, April 23, 2023 11:[illegible] AM
**To:** Gregory D. Pavey
**Cc:** Blaske, Nathan; Egan, Shannon
**Subject:** RE: Wain v. Central Bank (Jessamine County Case No. 23-CI-00097)

Hi Greg – hope you are doing well.

In the Wains' case in Jessamine County, will you please have future filings served only on us for Shellpoint and not Shellpoint also? Thank you!

Also, I think you'll be happy to know that we were just retained to represent the current mortgagee of the first mortgage so we will soon be able to substitute it in for Shellpoint in the foreclosure and push forward on its claim for its share of the proceeds.

Thanks!
Shannon

Dinsmôre
**Shannon Egan**
Of Counsel
Dinsmore & Shohl LLP • Legal Counsel
255 East Fifth Street, Suite 1900, Cincinnati, OH 45202
T (513) 977-8261 • F (513) 977-8141

EXH : 000001 of 000001

# EXHIBIT S

RENDERED: NOVEMBER 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0202-MR

DOUGLAS WAIN AND ELISA WAIN — APPELLANT

v.

APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-00812

CENTRAL BANK AND
TRUST COMPANY; DITECH FINANCIAL,
LLC; NEWREZ, LLC, D/B/A SHELLPOINT
MORTGAGE SERVICING, ASSIGNEE OF
DITECH FINANCIAL, LLC — APPELLEES

OPINION
AFFRIMING

** ** ** ** **

BEFORE: ACREE, JONES, AND MAZE, JUDGES.

MAZE, JUDGE: Douglas and Eliza Wain (collectively, the Wains) appeal from a judgment and order of sale entered by the Fayette Circuit Court in favor of Central Bank & Trust Company (Central Bank). The Wains argue that there were genuine

issues of material fact on their defense of unclean hands that precluded summary judgment. We agree with the trial court that the Wains failed to identify any facts which would have precluded Central Bank from foreclosing on the property. Hence, we affirm.

On June 28, 2006, the Wains and Central Bank executed a "Gold Line Equity Agreement" (the Agreement) in the principal amount of $350,000.00. The Agreement was secured by a second mortgage on their residence in Lexington. Beginning in August 2018, the Wains fell behind in their payments on the account. The parties agree that they engaged in discussions about options to bring the account current, but they disagree as to the content of those discussions.

The Wains point to correspondence between Douglas Wain and Central Bank employees Ashleigh Holden and Steve Hall. The Wains contend that they repeatedly asked for reconciliation statements showing the past-due amounts, but they did not receive a reply until November 2018. However, Central Bank points out that the Wains accessed their account online during this period and had ready access to the current information regarding the amounts due. The Wains also made several partial payments on the past due amounts through the online system.

On January 31, 2019, Hall sent a demand letter, advising the Wains that Central Bank had elected to accelerate payment and declare the entire loan